## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **Achaogen, Inc.,** | Case No. 19-10844 (BLS) |
| Debtor.[1] | RE: D.I. 13 |

**INTERIM ORDER (I) AUTHORIZING ACHAOGEN, INC. TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Achaogen, Inc., as a debtor and debtor in possession in the above-captioned case (the "Debtor"), for entry of an interim order (this "Interim Order") and a final order (the "Final Order") under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e), and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and rules 4001-1 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), seeking *inter alia:*

(a)    authorization for the Debtor to obtain postpetition financing in the form of a term loan facility (the "DIP Facility") as set forth in that certain Senior Secured Superpriority Debtor-in-Possession Loan and Security Agreement (the "DIP Credit Agreement")[2] attached hereto as **Exhibit 1** (as amended, supplemented, or otherwise modified from time to time), by and among

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 1 Tower Place, Suite 400, South San Francisco, CA 94080.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the DIP Credit Agreement.

the Debtor and Silicon Valley Bank (in such capacity, the "DIP Lender"), up to the aggregate principal amount of Twenty Five Million Dollars ($25,000,000), subject to the terms of this Interim Order, the Final Order, and all other agreements, documents, instruments, delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, including the Budget (as defined below) (collectively, together with the DIP Credit Agreement, the "DIP Loan Documents");

(b)    authorizing the continued use of Cash Collateral (as defined below) by the Debtor effective as of the Petition Date;

(c)    subject to the Carve Out and KEIP/KERP Plan Amount (as each such term is defined below), granting to the DIP Lender on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Loan Documents (collectively, and including all "Obligations" as defined in the DIP Credit Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in the Debtor's chapter 11 case (the "Chapter 11 Case");

(d)    subject to the Carve Out and KEIP/KERP Plan Amount, granting to the DIP Lender automatically perfected security interests in and liens on the DIP Collateral (as defined below) to the extent set forth herein;

(d)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order, in each case, to the extent set forth herein;

(e)    subject to the Carve Out and KEIP/KERP Plan Amount, granting adequate protection to the Prepetition Lender (as defined below);

2

(f)     scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order; and

(g)     granting related relief.

The Court having found that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court on [--] (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion, the *Declaration of Blake Wise in Support of First Day Relief* (the "First Day Declaration"); and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND CONCLUDED THAT:**

A.     Disposition.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections, reservations of rights, and/or other statements with respect to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled on the merits.

B.     Commencement of Chapter 11 Case.  On April 15, 2019 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its business as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors (the "Committee") or chapter 11 trustee has been appointed in the Chapter 11 Case.

C.     Jurisdiction and Venue.  This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3

The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Bankruptcy Local Rules 4001-1 and 9013-1(m).

D.    Adequate Notice.    On the Petition Date, the Debtor filed the Motion with this Court pursuant to Bankruptcy Rules 2002, 4001, and 9014, and represents that it provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery, or overnight delivery to the following parties and/or their respective counsel as indicated below (collectively, the "Notice Parties"):  (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's top twenty (20) unsecured creditors; (c) SVB, in its capacity as Prepetition Lender and DIP Lender; (d) all other known holders of prepetition liens, encumbrances or security interests against the Debtor's property; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Delaware Secretary of State; (h) the Delaware Secretary of the Treasury; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (j) any other party required to be provided notice under Local Rule 9013-1(m).

E.    Debtor's Stipulations on the Prepetition Obligations.    The Debtor acknowledges, admits, represents, stipulates, and agrees that:

(i)    *Prepetition Loan Agreement*:  As of the Petition Date, the Debtor was indebted and liable, without defense, counterclaim, or offset of any kind to the lenders under that certain Loan and Security Agreement, dated as of February 26, 2018 (as heretofore amended, supplemented, or otherwise modified, including by that certain Waiver and First Amendment to Loan and Security Agreement, dated as of April 12, 2019, the "Prepetition Loan Agreement" and,

4

together with all other agreements, documents and instruments executed and/or delivered in connection therewith, as all of the same have been supplemented, modified, extended, renewed, restated, and/or replaced at any time prior to the Petition Date, the "Prepetition Loan Documents"), among the Debtor, and Silicon Valley Bank (the "Prepetition Lender") in the aggregate principal amount of $15,000,000.00 (the "Prepetition Loan Facility") as of the Petition Date.  All obligations of the Debtor arising under the Prepetition Loan Agreement or any other Prepetition Loan Documents, including under the Prepetition Loan Facility, shall hereinafter be referred to collectively as the "Prepetition Loan Obligations".  Pursuant to the Final Order and as set forth herein, all of the outstanding Prepetition Loan Obligations will be repaid with proceeds of the DIP Facility upon entry of the Final DIP Order.

(ii)     The liens and security interests securing the Prepetition Loan Obligations are referred to herein as the "Prepetition Loan Liens" and the collateral to which such Prepetition Loan Liens attach, the "Prepetition Loan Collateral".

(iii)     *Value of the Prepetition Collateral*.  At all times prior to the Petition Date, the aggregate value of the Prepetition Loan Collateral exceeded the aggregate amount of the Prepetition Loan Obligations.

(iv)     *No Claims*.  The Debtor has no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Lender with respect to the Prepetition Loan Documents, the Prepetition Loan Obligations, the Prepetition Loan Liens, any prior financing transactions, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, 541, or 542 through 553, inclusive, of the Bankruptcy Code.

(v)    *Release.*  Subject to entry of the Final Order, the Debtor hereby stipulates and agrees that it forever, unconditionally and irrevocably releases, discharges and acquits the Prepetition Lender and each of its successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every kind whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the DIP Facility, the DIP Loan Documents, the Prepetition Loan Facility, and the Prepetition Loan Documents, any prior financing transaction between the Debtor and any Releasee, and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Lender and the Prepetition Lender; provided that the forgoing shall not release any claims against a Releasee that a court of competent jurisdiction determines results primarily from the bad faith, gross negligence, or willful misconduct of such Releasee.  The Debtor further waives and releases any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Loan Obligations and the DIP Obligations, which the Debtor now has or may claim to have, directly or indirectly against the Releasees, arising out of, connected with or relating to any and all acts, omissions, or events occurring prior to the Court entering this Interim Order.

(vi)    *No Control.*  Neither the DIP Lender nor the Prepetition Lender controls the Debtor or its properties or operations, has authority to determine the manner in which any of the Debtor's operations are conducted or is a control person or insider of the Debtor or any of its affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Loan Documents, the Prepetition Loan Facility, and/or the Prepetition Loan Documents.

(vii)    Cash Collateral.  Any and all of the Debtor's cash including cash and other amounts on deposit or maintained in any account or accounts by the Debtor, whether subject to control agreements or otherwise, and any amount generated by the collection of accounts receivable or other disposition of the Prepetition Loan Collateral, and the proceeds of any of the foregoing, whether existing on the Petition Date or thereafter, constitutes the cash collateral (within the meaning of section 363(a) of the Bankruptcy Code) of the Prepetition Lender (the "Cash Collateral").

F.    [Reserved].

G.    Use of DIP Facility and Cash Collateral.  The Debtor has an immediate and critical need to use the DIP Facility and Cash Collateral to preserve and operate its business and effectuate a restructuring of its business, which will be used in accordance with the terms of this Interim Order and the Budget.  Upon entry of the Final Order, outstanding Prepetition Loan Obligations, in the aggregate amount of $15,000,000.00, will be repaid with proceeds of the DIP Facility.  The remaining Ten Million Dollars ($10,000,000.00) available under the DIP Facility will be used in accordance with the Budget for operating expenses, to effectuate the sale of the Debtor's assets, and to provide adequate protection in accordance with this Interim Order and the Final Order.  The adequate protection provided herein and other benefits and privileges

contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to avoid the objection of the Prepetition Lender. Without the use of the DIP Facility and Cash Collateral, the Debtor will not have sufficient liquidity to be able to (i) pay its vendors, (ii) fund employee wages, benefits, and related obligations, (iii) pay for the necessary services and materials to maintain compliance with regulatory requirements, (iv) pay for use of its business equipment, (v) fund its sale process, and (vi) continue to operate its business during the pendency of the Chapter 11 Case. Moreover, the provisions of the DIP Credit Agreement and the Interim Order were extensively negotiated and are the most favorable terms that the Debtor was able to obtain. Approval of the DIP Facility will ensure the Debtor is able to maintain its operations, pursue the Chapter 11 Case, and maximize the value of its estate for the benefit of all stakeholders. Absent authorization to immediately use a portion of the DIP Facility and Cash Collateral, the Debtor's estate and its creditors would suffer immediate and irreparable harm.

H.     <u>Roll-Up of Prepetition Loans</u>. Upon entry of the Final Order, without any further action by the Debtor or any other party, outstanding principal, interest, and other amounts under the Prepetition Loan Facility, in the aggregate amount of $15,000,000.00, will be repaid with proceeds from the DIP Facility. The replacement and refinancing (or "roll-up") of the Prepetition Loan Obligations shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP Lender (who is the Prepetition Lender) to commit to and fund the DIP Facility, and provide other consideration to the Debtor, under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Loan Obligations. The Prepetition Lender would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens (as defined below), and the DIP Lender would not be willing to provide the DIP Facility or extend credit to the Debtor

thereunder without the roll up of the Prepetition Loan Obligations into the DIP Obligations or the Term Loan Commitment Fees (as defined below). Moreover, the replacement and refinancing of all outstanding amounts under the Prepetition Loan Facility into DIP Obligations will enable the Debtor to obtain urgently needed financing critical to administering this Chapter 11 Case and funding its operations. All security agreements in respect of the Prepetition Loan Obligations being refinanced shall continue in full force and effect in favor of the DIP Lender.

I.    Other Financing Unavailable. As discussed in the First Day Declaration, the Debtor is unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(l) of the Bankruptcy Code or (b) under section 364(c)(l) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of its estate under section 364(c)(2) of the Bankruptcy Code or (y) a junior lien on encumbered assets of its estate under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(l) of the Bankruptcy Code from sources other than the DIP Lender on terms more favorable than the terms of the DIP Facility. The only source of secured credit available to the Debtor on commercial terms, other than the continued use of Cash Collateral, is the DIP Facility, and the Prepetition Lender would not give its consent to the Debtor to have its liens and security interests primed by a third party DIP financing source. Financing on a postpetition basis is not otherwise available without granting the DIP Lender: (1) perfected security interests in and liens on the DIP Collateral; (2) superpriority claims and liens; (3) the other protections set for in this Interim Order; and (4) a full refinancing of the outstanding Prepetition Loan Obligations.

J.    Best Financing Presently Available. The DIP Lender will as of the Petition Date provide the Debtor with financing solely on the terms and conditions set forth in this Interim Order (and, subject to entry by the Court, the Final Order) and the applicable DIP Loan

9

Documents. After considering all of its alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of this Interim Order (and, subject to entry by the Court, the Final Order) and the DIP Loan Documents, represents the best financing presently available. The DIP Lender has acted in good faith and therefore is entitled to the good faith protections under section 364(e) of the Bankruptcy Code. The DIP Lender's claims, superpriority claims, security interests, liens, and other protections granted pursuant to this Interim Order (and, subject to entry by the Court, the Final Order) and the applicable DIP Loan Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order, the Final Order, or any other order, as provided in section 364(e) of the Bankruptcy Code.

K.     Good Cause for Immediate Entry.  Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2.  In particular, the authorization granted herein for the Debtor to enter into the DIP Facility, to continue using Cash Collateral and to obtain interim financing, including on a priming lien basis as set forth herein, is necessary to avoid immediate and irreparable harm to the Debtor and its estate.  Entry of this Interim Order is in the best interest of the Debtor, its estate, and creditors. The terms of the DIP Facility are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.     Arm's Length Negotiation.  The Debtor, the DIP Lender, and the Prepetition Lender have negotiated the terms and conditions of the DIP Facility and this Interim Order in good faith and at arm's length, and any credit extended and loans made to the Debtor pursuant to

this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

M.    <u>Adequate Protection for the Prepetition Lender</u>.  The Prepetition Lender has acted in good faith regarding the DIP Facility and the Debtor's continued use of the Prepetition Loan Collateral (including the Cash Collateral) to fund the administration of the Debtor's estate and continued operation of its business, in accordance with the terms hereof.  The Prepetition Lender has consented to the Debtor's use of the Prepetition Loan Collateral, including the Cash Collateral, in accordance with the terms hereof.  The Prepetition Lender is entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to §§ 361, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court at the Interim Hearing, as of the Petition Date the terms of the proposed adequate protection arrangements and of the use of the Prepetition Loan Collateral are fair and reasonable, reflect the Debtor's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; <u>provided</u>, that nothing in this Interim Order or the other DIP Loan Documents shall prejudice, limit, or otherwise impair the rights of the Prepetition Lender to seek new, different, or additional adequate protection.

N.    <u>Order of the Court</u>.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Motion Granted</u>.  The Motion is granted on an interim basis, subject to the terms set forth herein.  Any objections, reservations of rights, and/or other statements with respect to

11

the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Interim Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and/or 9014.

2.     <u>Authority to Enter Into DIP Facility</u>. The Debtor is hereby authorized to incur and perform the obligations arising from and after the date of this Interim Order under the DIP Facility, on the terms set forth in this Interim Order, including entry into, execution and delivery of the DIP Credit Agreement attached hereto as **Exhibit 1** and such additional documents, instruments, and agreements as may be reasonably required by the DIP Lender to implement the terms or effectuate the purposes of and transactions contemplated by this Interim Order, the Final Order (when entered by the Court) and the DIP Credit Agreement (collectively, this Interim Order, the Final Order, the DIP Credit Agreement, and such additional documents, instruments, and agreements, the "<u>DIP Loan Documents</u>"). The Debtor is authorized to execute and deliver the DIP Loan Documents and borrow money under the DIP Facility, on an interim basis, up to an aggregate principal amount not to exceed Four Million Three Hundred Thousand Dollars ($4,300,000.00) during the period prior to entry of the Final Order, on the terms set forth in this Interim Order and the DIP Loan Documents.

3.     <u>DIP Liens.</u> As used herein, "<u>DIP Collateral</u>" shall include all prepetition and postpetition tangible and intangible property and assets, whether real or personal of the Debtor, including, without limitation, all assets and property pledged under the DIP Loan Documents, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods,

investment property, inventory, deposit accounts, and all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), books, records, plants, equipment, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, and all proceeds, rents, profits, products, and substitutions, if any, of any of the foregoing; _provided_ that DIP Collateral shall not include any Bankruptcy Recoveries, but, subject to entry of the Final Order, the DIP Collateral shall include the proceeds of any Bankruptcy Recoveries. Notwithstanding anything to the contrary contained herein or in the DIP Loan Documents, the DIP Collateral shall not include any right, title, or interest in: (a) that certain lease dated as of August 12, 2016 (as amended, the "Lease") between AP3-SF2 CT South LLC (the "Landlord") and the Debtor for certain premises (the "Premises") in that certain building located at One Tower Place, South San Francisco, California, any leasehold estate created by the Lease, or any fixtures within[constituting a portion of the premises], on, or about the Premises; (b) any sublease of the Premises or the Lease (or any portion thereof), any related sublease rents, or any subleasehold estate created by any such sublease; and/or (c) any letter of credit (or the proceeds thereof) or security deposits related to the Lease or any sublease of the Premises; provided, that the term "DIP Collateral" shall include the economic value of the proceeds of any sale or other disposition of, and any other proceeds or products of, each of (a), (b) and (c) of this sentence. Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge

agreements, financing statements, mortgages, or other similar documents, or by possession or control, subject to the Carve Out and KEIP/KERP Plan Amount, the following security interests and liens are hereby granted to the DIP Lender:

(a)     Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Obligations are secured by a perfected first priority priming security interest and lien on all DIP Collateral (such security interest and lien, the "Priming Lien"), to the extent that such property and assets are subject to liens that secure the obligations of the Debtor under the Prepetition Loan Documents (collectively, the "Primed Liens");

(b)     The Priming Lien shall be senior (i) in all respects to the Primed Liens and (ii) to any liens granted to provide adequate protection in respect of any of the Primed Liens;

(c)     The Primed Liens shall be primed by and made subject and subordinate to the Priming Liens;

(d)     Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Obligations are secured by a perfected first priority security interest and lien on all DIP Collateral of the Debtor (other than Bankruptcy Recoveries (as defined below)) to the extent such property and assets are not subject to valid, perfected, and non-avoidable liens as of the Petition Date (it being agreed and understood that the Final Order shall grant, for the benefit of the DIP Facility, a perfected security interest pursuant to this clause in any recoveries of Debtor, by settlement or otherwise, in respect of claims and causes of action to which Debtor may be entitled to assert by reason of any avoidance or other power vested in or on behalf of a debtor or the estate of a debtor under chapter 5 of the Bankruptcy Code ("Bankruptcy Recoveries"));

(e)     Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Obligations are secured by a perfected junior-priority security interest and lien on all DIP Collateral of the

Debtor to the extent that such property and assets are subject to valid, perfected, and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date, or to valid and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code (other than the existing Prepetition Loan Liens, which existing liens will be primed by this Interim Order), junior to the priority of such liens in favor of such third parties; and

(f)     The foregoing liens and security interests are referred to herein as "DIP Liens".

4.     DIP Superpriority Claims.  In addition to the liens and security interests granted to the DIP Lender pursuant to this Interim Order, subject and subordinate to the Carve Out and the KEIP/KERP Plan Amount, and in accordance with sections 364(c)(1), 503, and 507 of the Bankruptcy Code, all of the DIP Obligations (including, without limitation, all DIP Extensions of Credit (as defined below)), shall constitute allowed superpriority administrative expense claims of the DIP Lender (the "DIP Superpriority Claims") with priority over any and all administrative expenses of the Debtor, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 1113, 1114, or any other provisions of the Bankruptcy Code.

5.     Continuation of Prepetition Loan Liens.  The liens granted to the Prepetition Lender under the Prepetition Loan Documents shall continue in full force and effect and shall continue to secure the obligations of the Debtor under the Prepetition Loan Documents, provided that such liens are Primed Liens and junior to the DIP Liens.

6.    Roll Up.  Upon entry of the Final Order, without any further action by the Debtor or any other party, and as a condition to the provision of further liquidity under the DIP Facility, Prepetition Loan Obligations, in the aggregate amount of $15,000,000.00, shall be repaid with proceeds of the DIP Facility in accordance with the terms of the DIP Credit Agreement and Final Order.

7.    Use of Cash Collateral and DIP Extensions of Credit.  Subject to Paragraph 24 of this Interim Order, the Debtor is hereby authorized to use Cash Collateral and the proceeds of any borrowings under the DIP Facility in accordance with the DIP Credit Agreement and the other terms and conditions set forth in this Interim Order and the DIP Loan Documents and subject to and in accordance with the Budget (as defined below).

8.    DIP Extensions of Credit.  All loans made to or for the benefit of the Debtor on or after the Petition Date in accordance with the DIP Loan Documents are herein referred to as the "DIP Extensions of Credit".  The DIP Extensions of Credit:  (a) shall be evidenced by the books and records of the DIP Lender; (b) shall bear interest payable and incur fees at the rates set forth in the applicable provisions of the DIP Credit Agreement; (c) shall be secured in the manner specified herein and in the DIP Loan Documents; (d) shall be payable in accordance with the DIP Loan Documents and Interim Order; and (e) shall otherwise be governed by the terms set forth in this Interim Order and the other DIP Loan Documents.  The DIP Lender shall have no obligation to make any DIP Extension of Credit or any other financial accommodation hereunder unless all conditions precedent to making DIP Extensions of Credit under the DIP Credit Agreement have been satisfied or waived in accordance with the DIP Credit Agreement.

9.    Adequate Protection for the Prepetition Lender.  In addition to all the existing security interests and liens previously granted to the Prepetition Lender, as adequate protection

16

for, and to secure the payment of an amount equal to the diminution of the value of the Prepetition Loan Collateral, due to the Debtor's sale, use, or lease of such Prepetition Loan Collateral, and as an inducement for the Prepetition Lender to permit the Debtor's use of the Cash Collateral as provided for in this Interim Order, the Prepetition Lender is hereby granted, subject to the Carve Out and the KEIP/KERP Plan Amount, the following adequate protection (the "Adequate Protection Obligations"), pursuant to sections 361, 363(e), 364(d)(1), and 507 of the Bankruptcy Code:

(a) ***Adequate Protection Liens.*** Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the following security interests and liens are hereby granted to the Prepetition Lender: A valid, binding, continuing, enforceable, fully-perfected replacement (and if applicable, new) security interest in and lien on the DIP Collateral (the "Adequate Protection Liens"). The Adequate Protection Liens are junior to the liens securing the DIP Facility.

(b) ***Adequate Protection Claims.*** An allowed administrative expense claim against the Debtor with priority over all other administrative claims in the Case (subject only to the Carve Out and the KEIP/KERP Plan Amount), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtor, excluding the Carve Out and the KEIP/KERP Plan Amount. The Adequate Protection Claims are junior to the DIP Superpriority Claims.

(c)    ***Payment of Interest.*** As additional adequate protection, so long as any Prepetition Loan Obligations remain outstanding, the Debtor is authorized and directed to pay interest on the Prepetition Loan Obligations in accordance with the Prepetition Loan Documents.

(d)    ***Fees and Expenses.*** As additional adequate protection, the Debtor is authorized and directed to pay:  (i) immediately upon the entry of this Interim Order, the reasonable and documented professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the Prepetition Lender arising prior to the Petition Date; and (ii) in regular course, all reasonable and documented out-of-pocket fees and expenses incurred by the Prepetition Lender arising on or after the Petition Date, subject to paragraph 19 of this Interim Order.  The Prepetition Lender (and each of its professionals) shall not be required to comply with U.S. Trustee fee guideline or file applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges.

10.    Budget.    The budget annexed hereto as **Exhibit 2** (as it may be updated periodically in accordance with this Interim Order and the DIP Loan Documents, the "Budget"), hereby is approved.  Beginning on the first Friday following the Petition Date (as defined in the DIP Credit Agreement), and then no later than the Friday of each subsequent calendar week, the Debtor shall deliver to the DIP Lender an updated, proposed Budget (each, a "Proposed Budget") for the following 13-week period, which shall be in form and substance satisfactory to the DIP Lender.  A Proposed Budget shall become the new Budget upon approval by the DIP Lender (which must be in writing) and, if no such approval is received, the prior approved budget shall continue in place and the DIP Lender and the Debtor shall negotiate in good faith regarding the

18

terms of the Proposed Budget. The Debtor shall not permit the amount of its actual disbursements (excluding payment of all Bank Expenses (as defined in the DIP Credit Agreement)) for any week to exceed one hundred fifteen percent (115.0%) of the disbursements shown in the Budget for such week and on an aggregate basis, and the Debtor shall not permit the actual cash receipts for any week to be less than eighty-five percent (85.0%) of the cash receipts shown in the Budget for such week and on an aggregate basis (the "Budget Variances"; all references in this Interim Order and the DIP Loan Documents to "Budget" shall mean the Budget as it is subject to the Budget Variances). The Debtor shall also deliver with each updated Budget a variance report reflecting on a line item and an aggregate basis, Debtor's actual unrestricted cash receipts and cash disbursements compared to the Budget for such immediately preceding week and for the period commencing on the Petition Date through and including the end of the week immediately preceding the date of the variance report. For the avoidance of doubt, for purposes of calculating the Budget Variances, any unused amounts set forth in the Budget for any period of determination may be carried forward and used during subsequent periods.

11.    Weekly Reporting. The Debtor will deliver a weekly reporting package to the DIP Lender, which shall consist of a Proposed Budget, the variance report, and any other reporting required by the DIP Loan Documents.

12.    Cash Management. The Debtor shall maintain its cash management arrangements in a manner consistent with that described in the orders approving the Debtor's motion for authorization to maintain its existing cash management system, which orders shall be in form and substance acceptable to the DIP Lender.

13.    <u>Validity of DIP Loan Documents</u>.  The DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms thereof.  No obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under this Interim Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

14.    <u>Preservation of Liens and Rights Granted Under this Interim Order</u>.  Except as otherwise expressly provided for herein (including with respect to the Carve Out and the KEIP/KERP Plan Amount), or permitted under the DIP Credit Agreement, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lender or to the Prepetition Lender, respectively, shall be granted or allowed while any portion of (a) the DIP Facility (or any refinancing thereof in accordance with the DIP Loan Documents) or the commitments thereunder or the DIP Obligations remain outstanding, or (b) the Prepetition Loan Obligations remain outstanding.  Subject to the Carve Out and the KEIP/KERP Plan Amount, the DIP Liens, the Adequate Protection Liens, and the Prepetition Loan Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor.

15.    <u>Automatic Effectiveness of Liens</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the Debtor to

grant the liens and security interests to the DIP Lender and the Prepetition Lender contemplated by this Interim Order and the DIP Loan Documents.

16.    <u>Automatic Perfection of Liens</u>.  The DIP Liens and the Adequate Protection Liens granted pursuant to this Interim Order shall constitute valid, enforceable, nonavoidable, and duly perfected first priority security interests and liens (subject to the priorities set forth in this Interim Order).  The DIP Lender and the Prepetition Lender shall not be required to file or serve financing statements, notices of lien, mortgage deeds, deeds of trust or similar instruments which otherwise may be required under federal, state or local law in any jurisdiction, or take any action, including taking possession or control, to validate and perfect the DIP Liens and the Adequate Protection Liens, respectively, pursuant to this Interim Order.  The failure by the Debtor to execute any documentation relating to the DIP Liens or the Adequate Protection Liens or deliver possessory collateral shall in no way affect the validity, enforceability, perfection, or priority of such liens.  The DIP Lender and the Prepetition Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder and under the DIP Credit Agreement, the Prepetition Loan Agreement, or this Interim Order.  Whether or not the DIP Lender or the Prepetition Lender shall file such financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments or otherwise take any action to validate, perfect, or confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to challenge, dispute or subordination

(except as a result of the relative lien priorities set forth in this Interim Order), at the time and as of the date of entry of this Interim Order.

17.    <u>Other Automatic Perfection Matters</u>.  To the extent that the Prepetition Lender is the secured party under any account control agreements, listed as loss payee or additional insured under any of the Debtor's insurance policies or is the secured party under any Prepetition Loan Document, the DIP Lender is also deemed to be the secured party under such account control agreements, loss payee, or additional insured under the Debtor's insurance policies and the secured party under each such Prepetition Loan Document (in any such case with the same priority of liens and claims thereunder relative to the priority of the Prepetition Loan Liens and Adequate Protection Liens, and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement, but subject in all respects to the terms of this Interim Order)), and shall, subject to the terms of this Interim Order, act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Interim Order and/or the Final Order, as applicable, and the other DIP Loan Documents. Security interests in and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished by possession or control by a secured party will be delivered, upon written request, to the DIP Lender, provided that the DIP Lender continues to retain a properly perfected lien on such DIP Collateral by virtue of this Interim Order even if such other party fails to timely deliver possession to the DIP Lender.

18.    <u>Protection of DIP Lender's Rights</u>.

(a)    A "Termination Event" means:  (i) the Debtor shall violate the terms of this Interim Order; (ii) the occurrence of an Event of Default (including without limitation a breach of any Milestone as defined in the DIP Credit Agreement), (ii) the Term Loan Maturity

Date of the DIP Facility, (iii) this Interim Order ceasing to be in full force and effect for any

reason, (iv) Debtor shall file, propose, or support confirmation of a chapter 11 plan that is not

reasonably acceptable to the DIP Lender or Prepetition Lender, and (v) all or substantially all of

the assets of the Debtor are sold without the prior written consent of the DIP Lender or the

Prepetition Lender (each a "Termination Event").   Upon the occurrence and during the

continuance of a Termination Event, five (5) business after the delivery, by the DIP Lender to the

Debtor or its counsel (via email or otherwise), of a written notice (the "Remedies Notice") of the

occurrence of a Termination Event (the "Remedies Notice Period"), unless such Termination

Event is cured by the Debtor or waived by the DIP Lender, the DIP Lender may (1) declare

(a) the commitment of the DIP Lender as to the DIP Facility to be terminated, whereupon such

commitments and obligation shall be terminated; (b) all DIP Obligations immediately due and

owing, without presentment, demand, protest or other notice of any kind, all of which are hereby

expressly waived by the Debtor, whereupon all DIP Obligations shall be immediately due and

payable; and (c) subject to the Carve Out and the KEIP/KERP Plan Amount, that the Debtor

shall have no right to request or use any proceeds of any DIP Extensions of Credit, other than

towards the satisfaction of the DIP Obligations; and (2) and exercise all rights and remedies

provided in this Interim Order and the DIP Loan Documents, as applicable.  Immediately upon

the delivery of the Remedies Notice, to the extent not previously provided, the Debtor shall

provide a line-by-line itemization of the Budget to the DIP Lender.  During the Remedies Notice

Period, (i) the Debtor and DIP Lender shall have the rights and obligations set forth in, and shall

act in accordance with, section 9.1 of the DIP Credit Agreement; and (ii) the Debtor, United

States Trustee, and/or Committee may contest the existence or continuation of an Event of

Default, or the DIP Lender's right to assert remedies in connection with an Event of Default set

forth in a Remedies Notice, or any such other issue that may be relevant to the Bankruptcy Court or the parties, by filing of an expedited motion in the Bankruptcy Court. Nothing in the DIP Loan Documents or this Interim Order shall limit the ability of Debtor and other parties-in-interest to timely request any such expedited hearing on a motion seeking such a finding.

19.    DIP Fees and Expenses.  The Debtor is authorized and directed to pay all reasonable and documented fees and expenses of the DIP Lender in connection with the DIP Facility, as applicable, as provided in the applicable DIP Loan Documents, whether or not the transactions contemplated hereby are consummated, whether or not incurred prepetition or postpetition. A copy of any invoice submitted by the DIP Lender to the Debtor for the foregoing purpose shall also be delivered contemporaneously to the U.S. Trustee and counsel to the Committee, if any (each, a "Fee Notice"). The DIP Lender (and each of its professionals) shall not be required to comply with U.S. Trustee fee guideline or file applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges. Subject to the U.S. Trustee or a Committee, if any, filing a written objection with this Court to any such fees and expenses within ten (10) days after receipt of a Fee Notice, the Debtor shall pay such invoice. To the extent a timely filed objection is filed by the U.S. Trustee or the Committee, if any, the Debtor shall (a) pay such portion of the fees and expenses to which no objection is interposed and (b) pay any remaining fees and expenses as ordered by the Bankruptcy Court (or upon withdrawal or resolution of the objection). Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination or disgorgement.

20.    Term Loan Commitment Fees; Interest.  The DIP Lender shall be entitled to receive the following commitment fees: (i) a non-refundable commitment fee of One Million

Five Hundred Thousand Dollars ($1,500,000.00) (the "<u>Initial Term Loan Commitment Fee</u>"), which shall be deemed earned as of entry of this Interim Order and shall be due at the Term Loan Maturity Date; and (ii) a non-refundable commitment fee of One Million Five Hundred Thousand Dollars ($1,500,000.00) (the "<u>Final Term Loan Commitment Fee</u>" and, together with the Initial Term Loan Commitment Fee, the "<u>Term Loan Commitment Fees</u>"), which shall be deemed earned as of entry of the Final Order and shall be due at the Term Loan Maturity Date; <u>provided</u>, that the Term B Final Payment (as defined in the Prior Loan Agreement) shall be waived as of the entry of the Final Order (which, for the avoidance of doubt, shall authorize the Debtor's repayment in full of the Prepetition Loan Obligations and approve the Final Term Loan Commitment Fee). The Debtor is authorized and directed to pay the Term Loan Commitment Fees at the Term Loan Maturity Date. The Debtor is authorized and directed to pay interest on the DIP Loan Obligations in accordance with the terms of the DIP Credit Agreement.

21.    <u>Debtor's Right to Draw under DIP Facility</u>. Subject to the Carve Out and the KEIP/KERP Plan Amount, unless otherwise agreed to by the DIP Lender in writing in accordance with this Interim Order and the DIP Credit Agreement, the Debtor's right to draw under the DIP Facility (a) shall be suspended upon the occurrence and during the continuation of any Event of Default pursuant to the DIP Credit Agreement, and (b) shall terminate upon the Term Loan Maturity Date.

22.    <u>Milestones</u>. As a condition to the DIP Facility and the use of Cash Collateral, the Debtor shall comply with the Milestones. The Milestones can only be modified or waived by the DIP Lender in writing in accordance with the provisions of the DIP Credit Agreement.

23.    <u>Termination of Consent to Use of Cash Collateral</u>.

(a)    Subject to the Carve Out and the KEIP/KERP Plan Amount, the Remedies Notice Period, and opportunity to cure set forth in Paragraph 18(a) of this Interim Order, the consent of the DIP Lender and the Prepetition Lender to the use of Cash Collateral may be terminated following the occurrence of a Termination Event and expiration of the Remedies Notice Period, and any prior consent of the DIP Lender or Prepetition Lender to the Debtor's use of Cash Collateral shall be deemed automatically withdrawn upon expiration of the Remedies Notice Period.

24.    <u>Modifications of DIP Loan Documents</u>.    The Debtor and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any modifications of the DIP Loan Documents (other than this Interim Order) that are not materially adverse to the Debtor's estate or creditors without further notice, motion, or application to, order of or hearing before, this Court.    Any material modification or amendment to the DIP Loan Documents shall only be permitted pursuant to an order of this Court (which may be sought within (3) Business Days), <u>provided</u>, <u>however</u>, that any forbearance from, or waiver of, (a) a breach by the Debtor of a covenant, representation or any other agreement or (b) a default or an Event of Default (including breach of any Milestone), in each case under the DIP Loan Documents, shall not require an order of this Court.

25.    <u>DIP Lender and Prepetition Lender Authorization</u>.    Notwithstanding any provision of the Prepetition Loan Documents or the DIP Loan Documents, the DIP Lender and the Prepetition Lender are hereby authorized to make any and all account transfers requested by the Debtor in accordance with the Budget and this Interim Order, and is further authorized to take any other action reasonably necessary to implement the terms of this Interim Order.

26.    <u>Waiver of Requirement to File Proofs of Claim</u>.   The DIP Lender and the Prepetition Lender shall not be required to file proofs of claim in the Chapter 11 Case or any successor case in order to maintain their respective claims for payment of the obligations under their respective loan documents.  The statements of claim in respect of the DIP Obligations and the Prepetition Loan Obligations set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

27.    <u>Carve Out</u>.

(a)    <u>Carve Out</u>. For purposes of this Interim Order: (i) "<u>Carve Out</u>" means all Obligations, Prepetition Loan Obligations and Reinstated Prior Obligations and the repayment of any of the foregoing, and the Liens and Superpriority Claims of the DIP Lender shall be subject to and subordinate to a carve out for payment of: (A) all fees required to be paid pursuant to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code prior to or after delivery by the DIP Lender of a Carve Out Trigger Notice plus interest at the statutory rate, <u>plus</u> (B) all reasonable fees and expenses up to $20,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, <u>plus</u> (C) subject to the Budget, all unpaid Case Professional Fees and Expenses (excluding any success or completion fees payable to the Committee Case Professionals) incurred at any time prior to delivery by the DIP Lender of a Carve Out Trigger Notice, <u>plus</u> (D) Case Professional Fees and Expenses (excluding any success or completion fees payable to the Committee Case Professionals) in an aggregate amount not to exceed the applicable Carve Out Cap incurred after delivery by the DIP Lender of the Carve Out Trigger Notice, <u>plus</u> (E) all earned and unpaid advisory, success, transaction, completion or other fees and expenses payable to the Investment Banker pursuant to

27

the Investment Banker Agreement incurred at any time that are allowed by the Bankruptcy Court, (ii) "Carve Out Cap" means an aggregate amount of Case Professional Fees and Expenses in accordance with the Budget not to exceed $250,000.00; provided, that the Carve Out Cap shall be reduced on a dollar-for-dollar basis by any payments of any Case Professional Fees and Expenses made after delivery of the Carve Out Trigger Notice in respect of fees and expenses incurred after delivery of the Carve Out Trigger Notice, (iii) "Case Professional Fees and Expenses" means, all accrued and unpaid fees, disbursements, costs and expenses incurred by Case Professionals in accordance with the Budget and allowed by the Bankruptcy Court at any time; provided, that the term "Case Professional Fees and Expenses" shall not include any advisory, success, transaction, completion or other fees and expenses payable or paid to the Investment Banker; and (iv) "Carve Out Trigger Notice" means a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtor, its counsel, the United States Trustee, and lead counsel to any Committee, stating that the Carve Out Cap has been invoked, which notice may be delivered at any time following the occurrence of any Event of Default under the DIP Credit Agreement.

(b)    Carve Out Reserve.  Until the Term Loan Maturity Date, the Debtor shall deposit cash on a weekly basis into an account designated by the Debtor at the DIP Lender for such purpose (the "Carve Out Account") in an amount equal to the "Carve Out" line item shown in the Budget for that week.  Proceeds deposited into the Carve Out Account shall be held in trust and used solely for purposes of the Carve Out in accordance with this Interim Order and the Final Order.  The funds on deposit in the Carve Out Account shall be used to fund Carve Out expenses before any other funds of the Debtor may be used for such purpose.  Any excess cash held in the Carve Out Account that is not used to fund Carve Out expenses in accordance with

this Interim Order and Final Order, as applicable, shall be remitted to the DIP Lender. The DIP Lender and the Prepetition Lender shall each have a security interest in any residual interest in the Carve Out Account. On the day on which a Carve Out Trigger Notice is given by the DIP Lender to the Debtor with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall (i) constitute a demand to the Debtor to utilize all available cash held by the Debtor to fund any deficit in the Carve Out Reserve in an amount equal to the difference between the Carve Out Reserve balance and the amount anticipated to be need to fully fund the Carve Out (the "Carve Out Reserve Deficit"), and (ii) only to the extent such cash on hand is insufficient for the foregoing purpose, be deemed a draw request and notice of borrowing by the Debtor for DIP Loans (as defined in the DIP Loan Documents) under the available commitments under the DIP Facility, in an amount equal to the Carve Out Reserve Deficit (any such amounts actually advanced shall constitute DIP Loans).

(c)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Case Professional Fees and Expenses shall not reduce the Carve Out.

(d)    No Direct Obligation to Pay Allowed Professional Fees. Neither the DIP Lender nor the Prepetition Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Case Professional incurred in connection with the Chapter 11 Case or any successor case under any chapter of the Bankruptcy Code. Without limiting the Debtor's rights under Paragraph 38(b)(ii), nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Lender in any way, to pay compensation to, or to reimburse expenses of, any Case Professional or to guarantee that the Debtor has sufficient funds

to pay such compensation or reimbursement.  The DIP Lender and the Prepetition Lender reserve all rights to object to the payment or reimbursement of any fees or disbursements of any Case Professional or other parties seeking substantial contribution incurred in connection with the Chapter 11 Case or any successor case under any chapter of the Bankruptcy Code.

(e)    Payment of Carve Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Case Professional Fees and Expenses shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the obligation secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

(f)    Funding of KEIP.  Notwithstanding anything to the contrary contained herein or in any of the DIP Loan Documents, the Debtor's proposed key employee incentive plan shall be funded only from proceeds of a sale of the DIP Collateral that are in excess of $25,000,000.00.

28.    Prohibition on Use of Collateral; Investigation Budget.  A "Termination Event" shall occur if the Debtor directly or indirectly investigates, asserts, or prosecutes (a) any claims or causes of action arising under or related to the DIP Loan Documents, the Prepetition Loan Obligations, or any other financing provided to the Debtor by the Prepetition Lender, or the liens or security interests securing the obligations under any of the foregoing or to pursue a Challenge (as defined in this Interim Order); provided that the Debtor may respond to good faith inquiries from the Committee, if any, or any other party in interest with standing, or (b) any Challenge or raise any defenses to the Prepetition Loan Obligations or the DIP Obligations.  No portion of the

DIP Facility, the DIP Collateral (including the Prepetition Loan Collateral and the Cash Collateral), the Carve Out, or any disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs, or expenses incurred by any party in interest in connection with the foregoing (a) and (b) of this paragraph; provided that not more than $25,000 in the aggregate of proceeds of any Cash Collateral or any proceeds of the DIP Facility or the DIP Collateral may be used to pay any allowed fees of the Committee, if any, or professionals retained by the Committee and incurred in connection with investigating the matters covered by the stipulations contained in recital Paragraph E of this Interim Order (the "Investigation Budget").

29.    Stipulations Regarding Prepetition Loan Obligations and the Prepetition Loan Liens Binding on Parties in Interest.  Subject to entry of the Final Order, the stipulations and admissions contained in this Interim Order, including, without limitation, in recital Paragraph E of this Interim Order, shall be binding on the Debtor's estate and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) and all parties in interest, including, without limitation, any Committee, unless (a) any Committee, or another party in interest (other than the Debtor) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (a "Challenge") challenging the amount, validity or enforceability of the Prepetition Loan Obligations, the perfection or priority of the Prepetition Loan Liens or otherwise asserting any objections, claims or causes of action (including, without limitation, any actions for preferences, fraudulent conveyances, or other avoidance power claims), or the "roll-up" of the Prepetition Loan Obligations on behalf of the Debtor's estate against the Prepetition Lender relating to the Prepetition Loan Obligations or the Prepetition Loan Liens from the later of (a) seventy-five (75)

days after entry of this Interim Order and (b) with respect to any Committee, sixty (60) days after the formation of the Committee (if any).  If no such Challenge is timely commenced and sustained as of such dates then, without further order of the Court, to the extent not theretofore indefeasibly repaid, satisfied, or discharged, as applicable, (x) the claims, liens and security interests of the Prepetition Lender shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Chapter 11 Case and any subsequent chapter 7 case and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise, and (y) without further order of the Court, the Debtor and its estate shall be deemed to have released any and all claims or causes of action against the Prepetition Lender with respect to the Prepetition Loan Documents or any related prior transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations and admissions contained in this Interim Order, including, without limitation, in recital Paragraph E of this Interim Order, shall be binding on the Debtor's estate, the Committee, and all parties in interest.  If any such Challenge is timely commenced and/or sustained, the stipulations contained in recital Paragraph E shall nonetheless remain binding on the Debtor's estate, any Committee and all parties in interest, except to the extent that such stipulations were expressly challenged in such Challenge.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee appointed or formed in the Chapter 11 Case, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, any Challenges, without prior express Court approval.

30.    Limitation on Charging Expenses Against Collateral.  Subject to entry of the Final Order, (i) no costs or expenses of administration of this Chapter 11 Case, a successor case or any other future proceeding that may result therefrom, including liquidation in bankruptcy or other

proceedings under the Bankruptcy Code shall be charged against or recovered from the DIP Collateral or the Prepetition Loan Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity and (ii) the Debtor (and any successor thereto, including any representatives thereof, including any trustee appointed in this Chapter 11 Case or any successor case) shall be deemed to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy Code as they may related to or be asserted against the DIP Lender, the Prepetition Lender, the DIP Collateral or the Prepetition Loan Collateral. Nothing contained in this Interim Order, shall be deemed a consent by the DIP Lender or the Prepetition Lender to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral or the Prepetition Loan Collateral under 506(c) of the Bankruptcy Code or otherwise.

31.    _Payments Free and Clear_. Any and all payments or proceeds remitted to the DIP Lender or the Prepetition Lender pursuant to the provisions of this Interim Order or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to the entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code, and solely in the case of payments made or proceeds remitted after the delivery of a Carve Out Trigger Notice, subject to the Carve Out in all respects. No payments authorized by this Interim Order shall be subject to recharacterization, avoidance, subordination or disgorgement.

32.    _No Marshaling/Applications of Proceeds_. Subject to entry of the Final Order, the DIP Lender and the Prepetition Lender shall not be subject to the equitable doctrine of 'marshaling' or any other similar doctrine with respect to any of the DIP Collateral or the

Prepetition Loan Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Loan Documents notwithstanding any other agreement or provision to the contrary.

33.    Section 552(b).  Subject to entry of the Final Order, the DIP Lender and the Prepetition Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender or the Prepetition Lender in any respect.

34.    Limitation of Liability.  Nothing in this Interim Order, the DIP Loan Documents, or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Lender, or any of their successors or predecessors, of any liability for any claims arising from the prepetition or postpetition activities of the Debtor or any affiliate of the Debtor.

35.    Indemnification.  The Debtor shall indemnify and hold harmless the DIP Lender and its successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with the DIP Loan Documents, which indemnification is hereby authorized and approved.

36.    Credit Bidding.  Subject to entry of the Final Order, the DIP Lender and the Prepetition Lender shall have the unqualified right to credit bid (i) up to the full amount of their respective obligations in any sale of the DIP Collateral (or any part thereof), (ii) subject to paragraph 29 of this Interim Order, with respect to the Prepetition Lender, any Prepetition Loan Obligations or the Adequate Protection Claim, and (iii) any unpaid amounts due and owing to the

DIP Lender or the Prepetition Lender under this Interim Order, without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

37.    <u>Monitoring of Collateral</u>.    During normal business hours and after advanced written notice to the Debtor's counsel (email shall suffice), the Prepetition Lender and the DIP Loan Lender, and their representatives, consultants and advisors, shall be given reasonable access to the Debtor's books, records, assets and properties for purposes of monitoring the Debtor's business and the value of the DIP Collateral.

38.    <u>No Third Party Rights</u>.    This Interim Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the DIP Lender, the Prepetition Lender, and the Debtor, and their respective successors and assigns.

39.    <u>Rights Preserved</u>.    Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly the DIP Lender's or the Prepetition Lender's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek new, different or additional adequate protection, as applicable.  Nothing contained in this Interim Order shall be deemed a finding by the Court or an acknowledgement by the Prepetition Lender that the adequate protection granted in this Interim Order does in fact adequately protect the Prepetition Lender against any diminution in value of the Prepetition Loan Collateral.

40.    <u>Protection under Section 364(e) of the Bankruptcy Code</u>.    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or

Adequate Protection Obligations owing to the DIP Lender or the Prepetition Lender, as applicable, incurred prior to the actual receipt by such entities of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations or Adequate Protection Obligations owing to the DIP Lender or the Prepetition Lender, as applicable.    Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations or Adequate Protection Obligations owing to the Prepetition Lender by the Debtor prior to the actual receipt by the Prepetition Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the Prepetition Lender shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order and the other DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and Adequate Protection Obligations owing to the Prepetition Lender.

41.    <u>Binding Nature of Order</u>.  The provisions of this Interim Order shall be binding upon the Debtor and its successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of the Debtor's estate or with respect to its property).

42.    <u>Survival of Order</u>.  Solely with respect to the DIP Lender and the Prepetition Lender, the provisions of this Interim Order and any actions taken pursuant hereto (a) shall survive the entry of any order:  (i) confirming any plan of restructuring in the Chapter 11 Case; (ii) converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; or (iii) dismissing the Chapter 11 Case; and (b) shall continue in full force and effect

notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority as provided by this Interim Order until (x) all of the DIP Obligations are indefeasibly paid or otherwise satisfied in full and discharged in accordance with the DIP Loan Documents and (y) the obligations owed to the Prepetition Lender are paid or otherwise satisfied in full.  The DIP Obligations shall not be discharged by the entry of any order confirming any plan in the Chapter 11 Case that does not provide for payment in full of the DIP Obligations or such other treatment of the DIP Obligations as may be agreed to by the DIP Lender.

43.    <u>Priority of Terms</u>.  To the extent of any conflict between or among the Motion, the DIP Loan Documents, and this Interim Order, the terms and provisions of this Interim Order shall govern.

44.    <u>Entry of Interim Order; Effect</u>.  This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in the Chapter 11 Case.  Any findings of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

45.    <u>Final Hearing</u>.  The Final Hearing is scheduled for [May 8], 2019, at [11:00a.m (ET)] before this Court.  Any objections by creditors or other parties in interest to any relief sought at the Final Hearing to be granted pursuant to the Final Order shall be deemed waived unless timely filed and served.  The Debtor shall promptly serve notice of entry of this Interim Order and the Final Hearing on the appropriate parties in interest in accordance with the Bankruptcy Rules and the

Bankruptcy Local Rules. Without limiting the foregoing, the Debtor shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties. The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of a Final Order shall be filed with the United States Bankruptcy Court for the District of Delaware by no later than 4:00 p.m. (prevailing Eastern Time) on [May 1], 2019.

46. <u>Retention of Jurisdiction</u>. Notwithstanding any provision in the DIP Loan Documents or the Prepetition Loan Documents, this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order, the DIP Facility or the DIP Loan Documents.

Dated: April 16, 2019
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE