IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Achaogen, Inc.<br>                Debtor.[1] | Chapter 11<br><br>Case No. 19-10844 (BLS)<br><br>**Hearing Date**:<br>May 20, 2019 at 10:00 a.m. (ET)<br>**Objection Deadline**:<br>May 13, 2019 at 4:00 p.m. (ET) |

**DEBTOR'S APPLICATION TO (I) EMPLOY AND RETAIN MERU, LLC AND (II) DESIGNATE NICHOLAS K. CAMPBELL AS CHIEF RESTRUCTURING OFFICER *NUNC PRO TUNC* TO THE PETITION DATE**

Achaogen, Inc., the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby submits this application (the "Application") for entry of an order substantially in the form attached hereto as **Exhibit B** (the "Proposed Order"), pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtor to (i) employ and retain Meru, LLC ("MERU") and (ii) designate Nicholas K. Campbell as the Debtor's Chief Restructuring Officer (the "CRO"), *nunc pro tunc* to April 15, 2019 (the "Petition Date"), pursuant to the engagement letter by and among the Debtor and MERU (the "Engagement Letter"), which is attached hereto as **Exhibit A**. In support of this Application, the Debtor relies upon and incorporates by reference the *Declaration of Nicholas K. Campbell in Support of Debtor's Application to (I) Employ and Retain MERU, LLC and (II) Designate Nicholas K. Campbell as Chief Restructuring Officer Nunc Pro Tunc to the Petition Date*, which is attached hereto as **Exhibit C**

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 1 Tower Place, Suite 400, South San Francisco, CA 94080.

(the "Campbell Declaration"). In further support of this Application, the Debtor respectfully represents:

## Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Application pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 Case and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtor consents to the entry of a final judgment or order with respect to the Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The predicates for the relief requested herein are section 363 of the Bankruptcy Code and Bankruptcy Rule 2016.

## Background

**A.     General Background**

4. On April 15, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors (the "Committee") was appointed in this Chapter 11 Case on April 23, 2019. No trustee or examiner has been requested or appointed in this Chapter 11 Case.

5. The Debtor is a biopharmaceutical company focused on the development and commercialization of innovative antibiotic treatments against multi-drug resistant gram-negative infections. It has commenced this Chapter 11 Case to pursue a sale of substantially all of its assets pursuant to Section 363 of the Bankruptcy Code. Additional details regarding the Debtor's business and the facts and circumstances supporting the relief requested herein are set forth in *the Declaration of Blake Wise in Support of First Day Relief* [D.I. 3] (the "First Day Declaration") and incorporated herein by reference.[2]

### Relief Requested

6. By this Application, the Debtor seeks entry of the Proposed Order authorizing the Debtor to (a) employ and retain MERU and (b) designate Nicholas K. Campbell as the CRO, *nunc pro tunc* to the Petition Date, pursuant to the Engagement Letter.

### Basis for Relief

7. The Debtor seeks entry of the Proposed Order pursuant to section 363 of the Bankruptcy Code. Under applicable case law in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable exercise of the debtor's business judgment, such use should be approved. *See e.g.*, *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *see also United Retired Pilots Benefit Protection Ass'n v. United Airlines, Inc. (In re UAL Corp.)*, 443 F.3d 565, 571 (7th Cir. 2006); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

8.  The decision to employ and retain MERU and designate Mr. Campbell as CRO should be authorized because it is a sound exercise of the Debtor's business judgment. As detailed below, Mr. Campbell has extensive experience as a senior officer and advisor for many companies undertaking restructuring efforts, and the MERU personnel that will work on this matter (the "MERU Personnel") are well qualified and equipped to assist in CRO duties. MERU and Mr. Campbell, in his capacity as CRO, will provide services that are in the best interests of all parties in interest in this Chapter 11 Case.

## MERU's Qualifications

9.  The Debtor understands that the MERU Personnel have a wealth of experience in providing financial advisory and interim management services, and MERU enjoys an excellent reputation for services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

10. MERU Personnel have provided strategic advice to debtors, creditors, investors, and other entities in numerous chapter 11 cases. In the past 15 years, MERU Personnel have provided restructuring or crisis management services in the following cases: *In re Eastern Outfitters, LLC*, No. 17-10243 (LSS) (Bankr. D. Del. Feb. 9, 2017); *In re Appvion Paper, Inc.*, No. 17-12082 (KJC) (Bankr. D. Del. Oct. 1, 2017); *In re Verso Corporation*, No. 16-10163 (KG) (Bankr. D. Del. Jan. 26, 2016); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 8, 2014); *In re Allens, Inc.*, No. 13-73597 (BTB) (Bankr. W.D. Ark. Oct. 28, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 13, 2012); *In re Arcapita Bank B.S.C.(c)*, No. 12-11076 (SHL) (Bankr. S.D.N.Y. Mar. 19, 2012); *In re AMR*

4

*Corporation, et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 29, 2011); *In re Maronda Homes, Inc.*, No. 11-22418 (JKF) (Bankr. W.D. Pa. Apr. 18, 2011); *In re Vitro America, LLC*, No. 10-47473 (ML) (Bankr. N.D. Tex. Nov. 17, 2010); *In re Qimonda North America Corp., et al.*, No. 09-10589 (MFW) (Bankr. D. Del. Feb. 20, 2009); and *In re Mercedes Homes, Inc.*, No. 09-11191 (PGH) (Bankr. S.D. Fla. Jan. 26, 2009).

11. Mr. Campbell, a Managing Partner of MERU, has over 15 years of experience transforming underperforming and distressed companies through operational and financial restructurings, including chapter 11 and out-of-court restructurings. Mr. Campbell specializes in formulating and evaluating strategic business plans and capital structures, identifying operational and organizational issues, and serving in interim management roles. His typical clients comprise of middle market companies with annualized revenues of between $50 million and $4 billion. His experience spans the manufacturing, retail, technology, energy, education, construction, consumer packaged goods, transportation, homebuilding, retail, gaming, and financial services industries.

12. If the Application is approved, the MERU Personnel, each with substantial expertise in the areas discussed above, will provide services to the Debtor. Such personnel will work closely with the Debtor's management and other professionals throughout this Chapter 11 Case. By virtue of the expertise of its personnel, MERU is well qualified to provide services to the Debtor and represent the Debtor's interests in this Chapter 11 Case.

13. Accordingly, MERU has experience and expertise regarding the Debtor that will assist it in providing effective and efficient services in this Chapter 11 Case. The Debtor submits that retention of MERU and designation of Mr. Campbell as CRO is in the best interests of the Debtor's estate, creditors, and all other parties in interest, and should be granted in all respects.

## Services to be Rendered

14. On April 10, 2019, the Debtor and MERU entered into the Engagement Letter, which governs the relationship between them. The terms and conditions of the Engagement Letter were negotiated between the Debtor and MERU and reflect the parties' mutual agreement as to the substantial efforts that will be required under this engagement.

15. In connection with the engagement, MERU shall make Mr. Campbell available as the CRO, and, upon mutual agreement of MERU and the Debtor, MERU will provide the MERU Personnel to assist the CRO in the execution of his duties, as follows:[3]

   (a) Assist in the preparation of Bankruptcy Court required financial reporting and other Bankruptcy Court filings with the Debtor's retained professionals;

   (b) Manage the Debtor's restructuring process;

   (c) Advise the board of the directors of the Debtor (the "Board") on restructuring matters;

   (d) Develop, implement and oversee cash management strategies, tactics and processes;

   (e) Identify and execute upon additional cost reductions and operational improvement opportunities;

   (f) Advise, assist, and/or manage, as appropriate, communications and/or negotiations with outside stakeholders, including lenders (and their advisors), customers, suppliers and employees; and

   (g) Provide other services as requested or directed by the Board or other Debtor personnel as authorized by the Board and agreed to by MERU.

---

[3] Any description of the terms of the Engagement Letter contained in this Application is provided for convenience purposes only. In the event of any inconsistency between this Application and the Engagement Letter, the Engagement Letter shall control.

## Terms of Retention

16.   MERU's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

17.   The standard hourly rates of Mr. Campbell and the MERU Personnel working on this matter are as follows:

| Name | Title | Hourly Rate |
| --- | --- | --- |
| Nicholas K. Campbell | Managing Partner / CRO | $575 |
| Samir Saleem | Director / Assistant Controller | $425 |
| Mihai Cirstea | Vice President / Assistant Treasurer | $325 |

18.   MERU's standard hourly rates, subject to adjustment annually, are as follows:

| Position | Hourly Rate |
| --- | --- |
| Partners / Managing Partners | $575 – 700 |
| Senior Directors / Principals | $450 – 575 |
| Vice Presidents / Directors | $325 – 450 |
| Analysts / Associates | $200 - 325 |

19.   MERU's staffing (other than the CRO) may be amended from time to time to add or delete staff and be subject to the above rates.

20.   In addition to payment of hourly rates, the Debtor will reimburse MERU for its reasonable out-of-pocket expenses incurred in connection with the engagement, such as travel, lodging, duplicating, messenger and telephone charges.

21. MERU will submit weekly invoices to the Debtor, and the Debtor requests authority to pay, in the ordinary course of business, all reasonable amounts invoiced by MERU for its fees and expenses.

22. Upon approval of the relief requested, MERU will not be employed as a professional under section 327 of the Bankruptcy Code, and it will not submit fee applications pursuant to Bankruptcy Code sections 330 and 331. MERU will, however, file reports of compensation earned and expenses incurred on a monthly basis ("Compensation Reports"), and provide notice of the same to the U.S. Trustee and counsel to the Committee (the "Notice Parties") within 30 days of the end of each month. Compensation Reports will summarize the services provided, and identify the compensation earned and expenses incurred by MERU Personnel. Time records will (a) be attached to the Compensation Reports, (b) contain detailed time entries describing the task(s) performed and (c) be organized by project category. The Notice Parties will have 21 days after the date each Compensation Report is served upon them to object. Such compensation and expenses will be subject to Court review in the event an objection is filed. MERU will file its first Compensation Report by May 31, 2019, for the period covering April 15, 2019 through April 30, 2019.

23. Each month, MERU will file with the Court (and serve copies to the Notice Parties) a report reflecting the MERU Personnel that worked on the engagement for the previous month ("Staffing Reports"). Staffing Reports will include the names of all full- and part-time MERU Personnel that provided services in this Chapter 11 Case during the prior month and each individual's hourly billing rate. The Notice Parties will have 21 days after the date each Staffing Report is served upon them to object. The Staffing Reports and MERU's staffing decisions will

be subject to review by the Court in the event an objection is filed. MERU will file its first Staffing Report by May 31, 2019, for the period covering April 15, 2019 through April 30, 2019.

24. The Debtor and MERU agreed to an initial $250,000.00 retainer (the "Retainer"), which shall be deposited into the Professional Fee Account (as defined in the Final DIP Order), and payable to MERU promptly upon the Court's approval of this Application. The Retainer will be held by MERU as a retainer to be credited against any amounts due at the termination of the engagement with the Debtor and returned upon the satisfaction of all obligations under the Engagement Letter.

25. According to the Debtor's books and records, during the 90-day period prior to the Petition Date, the Debtor paid MERU $461,353.32 for professional services or expenses incurred under the Engagement Letter or otherwise.

26. The Debtor believes that the compensation structure described above and set forth in the Engagement Letter is comparable to compensation generally charged for similar chapter 11 engagements. Furthermore, the Debtor believes that the compensation structure is consistent with MERU's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in this Chapter 11 Case.

### Indemnification

27. The Engagement Letter contains standard indemnification language with respect to MERU's services, including, without limitation, an agreement by the Debtor to indemnify MERU and its affiliates and its and their partners, directors, officers, employees and agents from and against all claims, liabilities, losses, expenses, and damages arising out of or in connection with the engagement of MERU that is the subject of the Engagement Letter, except in the event of MERU's or the CRO's willful misconduct or bad faith.

28. The Debtor and MERU believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for MERU and comparable firms providing similar services.

29. The Debtor and MERU negotiated the terms and conditions of the indemnification provisions at arm's length and in good faith. Moreover, the indemnification provisions, viewed in conjunction with the terms in the Proposed Order, conform to the procedures approved in *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003). Accordingly, the indemnification provisions, viewed in conjunction with the terms of the Proposed Order, are reasonable and in the best interests of the Debtor, its estate, and creditors in light of the fact that the Debtor requires MERU's services to successfully complete a sale of the Debtor's assets.

## No Duplication of Services

30. The Debtor believes that MERU's services will complement, and not duplicate, the services rendered by other professionals retained in this Chapter 11 Case.

## MERU's Disinterestedness

31. To the best of the Debtor's knowledge, information, and belief, and except to the extent disclosed herein and in the Campbell Declaration, MERU (a) does not hold any interest materially adverse to the Debtor's estate, and (b) has no connection with the Debtor, its creditors, equity security holders, or other parties in interest in this Chapter 11 Case.

32. Although the Debtor respectfully submits that the retention of MERU is not governed by section 327 of the Bankruptcy Code, the Campbell Declaration discloses certain connections with creditors, equity security holders, and other parties in interest in this Chapter 11 Case. MERU does not believe that any of these matters represent an interest materially adverse

to the Debtor's estate or otherwise create a conflict of interest regarding the Debtor or this Chapter 11 Case. Therefore, the Debtor submits that MERU is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

33. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of MERU's retention are discovered or arise, the Debtors submit that MERU will use reasonable efforts to promptly file a supplemental declaration.

### Notice

34. The Debtor will provide notice of this Application to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to Silicon Valley Bank, N.A., as Prepetition Lender and DIP Lender; (d) the holders of the 20 largest unsecured claims against the Debtor on a consolidated basis; and (e) any party who has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Application, the Debtor respectfully submits that no further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

DocuSign Envelope ID: 8BB46FD3-06C4-4FC8-9E64-561359AFE7C0

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: April __, 2019
      29-Apr-2019

Respectfully submitted,

Achaogen, Inc.
Debtor and Debtor in Possession

By: *Blake Wise*
    Blake Wise
    Chief Executive Officer