IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **Achaogen, Inc.,** | Case No. 19-10844 (BLS) |
| Debtor.[1] | **Re: D.I. 30** |

ORDER (I) APPROVING THE SALE OF CERTAIN ASSETS OF
THE DEBTOR FREE AND CLEAR OF LIENS, ENCUMBRANCES,
CLAIMS AND INTERESTS, AND (II) GRANTING RELATED RELIEF

Upon the *Debtor's Motion for (I) an Order Pursuant To Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures for the Sale of Substantially All Assets of the Debtor; (B) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief; (II) an Order (A) Approving the Sale of the Debtor's Assets Free and Clear of Claims, Liens and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases; and (III) Certain Related Relief*, on April 15, 2019 [D.I. 30] (the "Sale Motion");[2] and the Bankruptcy Court having entered the *Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures for the Sale of Substantially All Assets of Debtor; (B) Approving Procedures for the Assumption and Assignment, Assignment or Rejection of*

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 1 Tower Place, Suite 400, South San Francisco, CA 94080.

[2] Unless otherwise indicated, capitalized terms used, but not defined, herein have the meaning ascribed to them in the Sale Motion, the Bidding Procedures or the Sale Agreement (as defined herein), as the context requires.

*Designated Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief,* on May 1, 2019 [D.I. 123] (the "Bidding Procedures Order"), which, among other things, (i) approved the Bidding Procedures for the sale of all or substantially all of the Debtor's assets, (ii) approved the form and manner of notice of the Auction and Sale Hearing (as each such term is defined below); (iii) approved the manner in which the notice of the assumption and assignment of the designated executory contracts and unexpired leases would be given; and the Debtor having solicited bids in accordance with the Bidding Procedures; and the Debtor having conducted the Auction in accordance with the Bidding Procedures; and the Debtor, following the conclusion of the Auction, having selected Heritage Global Partners, Inc. (the "Buyer") as having the highest or otherwise best Qualified Bid for certain equipment of the Debtor (the "Purchased Assets") set forth in an asset purchase agreement dated June 23, 2019 (the "Sale Agreement") and attached hereto as Exhibit A; and the Bankruptcy Court having conducted and concluded a hearing on June 25, 2019 (the "Sale Hearing"), to consider approval of the sale of the Purchased Assets free and clear of all Liens (as defined below), Claims (as defined in section 101(5) of title 11 of the United States Code (the "Bankruptcy Code")) and other interests; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale and upon the record of the hearing to consider approval of the Bidding Procedures (the "Bidding Procedures Hearing"), the Sale Hearing, the *Declaration of Blake Wise in Support of the First Day Relief* [D.I. 3], and the *Declaration of Philip C. Cassel in Support of Entry of the Sale Order* D.I. [___], and this Chapter 11 Case (as defined herein) and proceedings, and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

   A.    **Bankruptcy Petition**.  On April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing this case (this "Chapter 11 Case").

   B.    **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

   C.    **Final Order**.  This order ("Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Time is of the essence in closing the Sale, the Debtor and the Buyer intend to close the Sale as soon as practicable, and there is no just reason for delay in the implementation of this Sale Order.  Specifically, the Sale must be approved and consummated promptly in order to maximize the value to the Debtor, its estate, its creditors, and all other parties in interest.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

   D.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Sale Motion are sections 105, 363, 364, 365, and 541 of the Bankruptcy Code, Rules 2002, 6004, 6006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

---

[3] This Sale Order shall be deemed to incorporate all findings of fact and conclusions of law made on the record at the hearing for consideration of the entry of the Bidding Procedures Order and the Sale Hearing (as defined herein) pursuant to Bankruptcy Rule 7052. In addition, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate pursuant to Bankruptcy Rule 7052.

Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

E.    **Notice**.  As evidenced by the certifications of service previously filed with the Bankruptcy Court, and based on the representations of counsel at the Bidding Procedures Hearing and the Sale Hearing, proper, timely, adequate and sufficient notice of the Sale Motion, the Bidding Procedures Hearing, the Auction, the Sale Agreement, this Sale Order and the Sale Hearing have been provided in accordance with the Bidding Procedures Order, sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and the Bidding Procedures Order, and Local Rule 6004-1.  Such notice was good and sufficient and appropriate under the particular circumstances and all known creditors of the Debtor and other parties in interest in the Chapter 11 Case were offered a reasonable opportunity to object and be heard.  No other or further notice of the Sale Motion, including, without limitation, the Sale Agreement, the Auction, the Sale Hearing, or of the entry of this Sale Order was or is necessary or shall be required.

F.    The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.    No trustee or examiner has been appointed in the Chapter 11 Case.

H.    The disclosures made by the Debtor concerning the Sale Motion, the Sale Agreement, the Sale, the Buyer, and the Sale Hearing were good, complete and adequate.

I.    **Opportunity to Object**.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all creditors of the Debtor and other parties in interest in the Chapter 11 Case, including, without limitation, the following: (i) the United States Trustee for Region 3; (ii) counsel to the Creditors' Committee, the Prepetition Lender and DIP

Lender (as such terms are defined below); (iii) all parties asserting a security interest in the Purchased Assets to the extent any such interest is reasonably known to the Debtor; (iv) various federal, state, county and city tax and regulatory authorities; (v) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets or that have been identified by the Debtor or its advisors as a potential buyer of the Purchased Assets; (vi) local and state environmental authorities and the Environmental Protection Agency; (vii) local, state and federal authorities and agencies that have issued licenses or permits to the Debtor with respect to the operation and use of the Purchased Assets; (viii) all of the Debtor's known creditors, and (ix) all parties requesting notice pursuant to Bankruptcy Rule 2002.

J.    **Title in the Purchased Assets**.  The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.  The Debtor is the sole and lawful owner of the Purchased Assets.

K.    **Business Justification**.  The Debtor has demonstrated a sufficient basis and compelling circumstances to sell the Purchased Assets to the Buyer.  Such action is an appropriate exercise of the Debtor's business judgment and in the best interest of the Debtor, the estate and its creditors.  Such business reasons include, but are not limited to, the facts that (i) the Successful Bid set forth in the Sale Agreement constitutes the highest and best offer for the Purchased Assets and (ii) the Sale Agreement and the Closing will present the best opportunity to realize the value of the Purchased Assets.  Entry of this Sale Order (and all provisions hereof) is a condition precedent to the Buyer consummating the Sale Agreement.

L.    **Opportunity to Bid**.  The Debtor and its professionals marketed the Purchased Assets appropriately and conducted the marketing and sale process (including the Auction) as set

forth in the Sale Motion in good faith without collusion and in accordance with the Bidding

Procedures and the Bidding Procedures Order.  The marketing process set forth in the Bidding

Procedures and the Bidding Procedures Order was fair in substance and procedure and afforded a

full and fair opportunity for any party to make a higher or otherwise better offer to purchase the

Purchased Assets.  Based upon the record of these proceedings, all creditors of the Debtor, other

parties in interest in the Chapter 11 Case, and all prospective buyers have been afforded a

reasonable and fair opportunity to bid for the Purchased Assets.

M.   **Auction**.   The Debtor, in the exercise of its reasonable discretion, and in

consultation with (i) the Official Committee of Unsecured Creditors appointed in this Chapter 11

Case (the "Creditors' Committee") and (ii) Silicon Valley Bank, N.A., in its capacity as the

Prepetition Lender and DIP Lender (hereinafter, the "Prepetition Lender" and the "DIP Lender,"

respectively) under the Debtor in Possession Credit and Security Agreement dated as of April 15,

2019 (the "DIP Credit Agreement"), conducted an auction (the "Auction") which concluded on

June 4, 2019, for the Purchased Assets being purchased by the Buyer.  In conducting the

Auction, the Debtor has complied in all respects with the Bidding Procedures and Bidding

Procedures Order with respect to the Auction.

N.   **Highest or Otherwise Best Offer**.   The total consideration provided by the Buyer

for the Purchased Assets is the highest and otherwise best offer for the Purchased Assets

received by the Debtor.   At the conclusion of the Auction, the Debtor, in exercising its

reasonable discretion, following consultation with the Creditors' Committee, Prepetition Lender,

and DIP Lender determined that the Buyer submitted the highest or otherwise best offer for the

Purchased Assets, and that American Laboratory Trading Inc. (the "Back-up Bidder"), submitted

the second highest or otherwise best offer for the Purchased Assets, as more specifically

identified in its respective purchase agreement. Thus, the Debtor declared the Buyer the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures, the Bidding Procedures Order and the Sale Agreement, and designated the Back-up Bidder (subject to entering into definitive documentation), and such determinations constitute the valid and sound exercise of the Debtor's business judgment. The Debtor, the Buyer, the Back-up Bidder, and their respective agents and representatives, have complied in all respects with the Bidding Procedures and Bidding Procedures Order.

O.    **Good Faith Purchaser**.  The Sale Agreement and the Sale have been negotiated by the Debtor and the Buyer, and their respective agents and representatives, in good faith, at arms' length, and without collusion or fraud. The terms and conditions of the Sale Agreement, including the consideration to be paid by the Buyer to the Debtor for the Purchased Assets pursuant to the Sale Agreement , are fair and reasonable, and the Sale, including each part thereof with respect to the Buyer, is in the best interest of the Debtor, its estate, and its creditors.

P.    The Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code and any other applicable bankruptcy or non-bankruptcy law with respect to the sale and assignment of the Purchased Assets.

Q.    The Sale Agreement was not controlled by an agreement between or among potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Debtor and the Buyer have not engaged in any conduct that would cause or permit the Sale Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code. The Buyer is not an "affiliate" or "insider" of the Debtor as defined in section 101 of the Bankruptcy Code, and no common identity of incorporation, director, or

7

stockholder existed or will exist between the Buyer, on the one hand, and the Debtor, on the other hand, prior to or after the Closing Date.

R.    An injunction against creditors of the Debtor and third parties pursuing Liens and Claims against the Buyer is necessary to induce the Buyer to close the Sale; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtor's estate, and will benefit all creditors of the Debtor.

S.    The Buyer has acted in good faith in its negotiations with the Debtor, submitting a bid, and participating in the Auction, and finalizing the terms of the Sale Agreement.

T.    **Corporate Power and Authority**.  The Debtor has full corporate power and authority to execute and deliver the Sale Agreement and to perform all of its respective obligations thereunder, and the sale of the Purchased Assets has been duly and validly authorized by all corporate authority necessary to consummate the Sale.  No consents or approvals, other than as expressly provided for in the Sale Agreement, and the entry of this Sale Order, are required by the Debtor to consummate the Sale.

U.    **Free and Clear**.  The Buyer would not have entered into the Sale Agreement to acquire the Purchased Assets, and would exercise its right to terminate the Sale Agreement, if the sale of the Purchased Assets were to be transferred to it other than free and clear of all Liens and Claims, or if the Buyer would, or in the future could, be liable for any such Liens or Claims.  A sale of the Purchased Assets other than one free and clear of all Liens and Claims would adversely impact the Debtor's estate, and would yield substantially less value for the Debtor's estate, with less certainty than the Sale.  Therefore, the Sale contemplated in the Sale Agreement is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

V.    **Satisfaction of 363(f) Standards**. The Debtor may sell and assign the Purchased Assets free and clear of all Liens and Claims because, with respect to each creditor asserting a Lien or Claim , one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Liens or Claims who did not object or who withdrew their objections to this Sale Order are deemed to have consented to the Sale Motion and the sale and assignment of the Purchased Assets to the Buyer pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Liens or Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens or Claims, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such holders allege a Lien or Claim in the same order of priority, with the same validity, force and effect that such holder had prior to the Sale, and subject to any claims and defenses the Debtor and its estate may possess with respect thereto; *provided*, that the Debtor will cause the proceeds of the Sale to be remitted pursuant to paragraph 27 of this Sale Order.

W.    **No Successor Liability**. The transactions contemplated under the Sale Agreement do not amount to a consolidation, merger, or de facto merger of the Buyer with the Debtor and/or the Debtor's estate, there is not substantial continuity between the Debtor and the Buyer, there is no common identity between the Debtor and the Buyer, there is no continuity of enterprise between the Debtor and the Buyer, the Buyer is not a mere continuation of the Debtor or its estate, and the Buyer does not constitute a successor to the Debtor or its estate in any way. The Buyer would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" or similar theories.

X.    **No Fraudulent Transfer**.  The Sale is not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession or the District of Columbia.  Neither the Debtor nor the Buyer have entered into the Sale Agreement or is consummating the Sale with any fraudulent or otherwise improper purpose.

Y.    **Fair Consideration**.    The consideration provided for by the Buyer for the Purchased Assets indicated in the Sale Agreement is the highest and best available under the circumstances and constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code or any similar state or federal law), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession or the District of Columbia.

Z.    **Compliance with Bankruptcy Code**.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been or will be complied with the Sale as of the Closing Date.

AA.    **Sale Transaction Not a Sub Rosa Plan**.  The sale of the Purchased Assets, outside of a plan of reorganization pursuant to the Sale Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  The Sale does not constitute a *sub rosa* chapter 11 plan.

BB.    The Sale contemplated by the Sale Agreement is in the best interest of the Debtor, its estate, its creditors, interest holders and all other parties in interest in the Chapter 11 Case; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Relief Granted**.  The relief requested in the Sale Motion is hereby granted in its entirety.

2.    **Objections Overruled**.  All objections and responses to the Sale Motion, the Auction, this Sale Order or the relief granted herein (including all reservations of rights included therein) that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3.    **Notice**.  Notice of the Sale Motion, the Auction, the Sale Hearing and the Sale was fair and equitable under the circumstances and complied in all respects with the Bidding Procedures, sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007 and Local Rule 6004-1.

4.    **Prior Findings of Fact and Conclusions of Law**.  The Bankruptcy Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

5.    **Approval**.  The Sale Agreement (and all ancillary documents related thereto) is hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtor and the Buyer are hereby authorized, empowered and directed to fully perform under, consummate, and implement the terms of the Sale Agreement and to execute, deliver and perform under, any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Sale Agreement and this Sale Order, including, without limitation, deeds, assignments, patents, stock powers, transfers of

membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Debtor or the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Sale Agreement, without any further corporate action or orders of the Bankruptcy Court.  Notwithstanding anything set forth in this Sale Order to the contrary, all rights, duties and obligations of the Buyer may be assigned to a designee (including an Affiliate) of the Buyer in accordance with the Sale Agreement; *provided*, that the Buyer is, and shall remain, primarily and irrevocably responsible for the full performance of the Buyer's duties and obligations under the Sale Agreement notwithstanding any such designation or the terms thereof.

6.    **Good Faith**.  The Buyer is a good faith purchaser of the Purchased Assets set forth in the Sale Agreement and is hereby granted and entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Sale Agreement or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Sale Order and the Sale Agreement, as the case may be.

7.    **Section 363(n) of the Bankruptcy Code**.  The Sale approved by this Sale Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) or any other section of the Bankruptcy Code.

8.    **Documentation**.  The Debtor is authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Sale contemplated by the Sale Agreement, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation, by-laws, or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtor may determine are necessary or appropriate, and all such officials are hereby authorized to accept the foregoing.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

9.    **Cooperation**.  The Debtor is hereby authorized and directed to cooperate with the Buyer as reasonably requested by the Buyer or as required of the Debtor under the Sale Agreement, and take all actions and execute all documents which the Buyer reasonably and in good faith determines is necessary or desirable to ensure that the Sale related to the Buyer is consummated in accordance with the Sale Agreement, and the Debtor is authorized to make such modifications or supplements reasonably acceptable to the Debtor and the Buyer to any bill of sale or other document or instrument executed or to be executed in connection with the Closing to facilitate such consummation as contemplated by the Sale Agreement.

10.    **Duty to Close**.  Neither the Debtor nor the Buyer shall have any obligation to proceed with the Closing until all conditions precedent to their respective obligations to proceed have been met, satisfied or waived in accordance with the terms of the Sale Agreement; *provided*, the Debtor shall consult in good faith with the DIP Lender and the Creditors' Committee prior to waiving any conditions precedent with respect thereto.

11.    **Valid Transfer**.  Effective as of the Closing of the Sale, the sale of the Purchased Assets by the Debtor to the Buyer pursuant to the terms of the Sale Agreement shall constitute a legal, valid and effective transfer of the Purchased Assets, notwithstanding any requirement for approval or consent by any person, and shall vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets, free and clear of all Liens and Claims pursuant to section 363(f) of the Bankruptcy Code constitutes a legal, valid, and effective assignment and delegation of any and all obligations, liabilities.  Upon the occurrence of the Closing, this Sale Order shall be considered and constitute, for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Purchased Assets to the Buyer pursuant to the Sale Agreement and/or a bill of sale or assignment transferring indefeasible right, title and interest in the Purchased Assets and all other rights and interests associated with or appurtenant to such Purchased Assets, including, without limitation, warranty rights, and other non-executory contract rights, to the Buyer all to the extent set forth in the Sale Agreement.

12.    **Free and Clear**.  Upon the occurrence of the Closing under the Sale Agreement, the Debtor shall be, and hereby is, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell, assign, convey, and transfer the Purchased Assets to the Buyer.  Except, and solely, to the extent specifically provided in the Sale Agreement or this Sale Order, the sale and assignment of the Purchased Assets, to the Buyer

pursuant to the Sale Agreement vests the Buyer with all right, title and interest of the Debtor in and to the Purchased Assets, free and clear of any and all Liens, Claims, and liabilities of any kind or nature whatsoever, whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise, with all such Liens and Claims to attach only to the proceeds of the sale and assignment of such Purchased Assets with the same priority, validity, force, and effect as they now have in or against such Purchased Assets; *provided*, that the Debtor will cause the proceeds of all Sale to be remitted pursuant to paragraph 27 of this Sale Order. The Sale Motion shall be deemed to have provided sufficient notice as to the sale and assignment of the Purchased Assets free and clear of all Liens and Claims in accordance with Local Rule 6004-1. Following the Closing, no holder of any Lien or Claim on any of the Purchased Assets subject to the Closing may interfere with the Buyer's enjoyment of the Purchased Assets based on or related to such Lien or Claim, or any actions that the Debtor may take or fail to take in its Chapter 11 Case and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale.

13.     The term "Lien" as used in this Sale Order shall include, without limitation, all liens, interests, rights, encumbrances, rights of offset, recoupment rights, reversionary rights, assignment rights, rights to specific performance, restrictions, leases, option rights or claims, obligations, liabilities, indentures, loan agreements, guaranties, demands, contractual commitments or interests in respect of the Debtor or any property of the Debtor, equity interests, licenses, instruments, conditional sale rights or other title retention agreements, rights of first refusal, reversionary rights, consent rights, contract rights, rights of recovery, reimbursement

rights, contribution claims, indemnity rights, regulatory violations, judgments, decrees of any court or foreign or domestic governmental or quasi-governmental entity, debts arising in any way in connection with any agreements, acts or failures to act and reclamations rights whether choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected including, without limitation, the following: (i) any "Lien" as such term is defined the Sale Agreement; (ii) any employment or labor agreements; (iii) all mortgages, deeds of trust, hypothecations, pledges, security interests or charges of any kind or nature; (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of the Debtor; (v) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitations, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (1974), as amended, (b) the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, as amended, (c) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, (d) the Federal Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, as amended, (e) the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, as amended, (f) the Worker Adjustment and Retraining Act of 1988, 29 U.S.C. §§ 2101 *et seq.*, (g) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, as amended, (h) the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, as amended, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with any of the Debtor or any of its respective predecessors; (vi) any claims that might arise under or pursuant to any bulk sales or similar law; (vii) any claims that might arise under or pursuant to any tax statutes or ordinances,

including, without limitation, the Internal Revenue Code of 1986, as amended; (viii) any claims that might arise under or pursuant to theories of successor liability, including any theories on product liability grounds; and (ix) any environmental or other liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the Closing Date or relating to a period on or prior to the Closing Date, whether arising before or after the Closing Date.

14.     The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Liens and Claims shall be self-executing and, without limiting the obligations of the Debtor under the Sale Agreement or hereunder including under paragraph 16 hereof, neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

15.     With regard to the forms of, timing, and other terms concerning the consideration to be provided by the Buyer to the Debtor as set forth in the Sale Agreement, the Buyer is directed to comply with its respective obligations thereunder, and the Debtor, any liquidating trustee appointed in this Chapter 11 Case, and their successors and assigns, are hereby authorized to enforce all such provisions. As further set forth in paragraph 33 hereof, the Bankruptcy Court shall retain exclusive jurisdiction with regard to any and all issues, disputes, controversies, causes of action, and/or claims with regard to, or arising under, such provisions, including, without limitation, the enforcement thereof .

16.     **Authorization to Creditors**. On and immediately after the Closing Date, each of the Debtor's applicable creditors is authorized to execute such documents and take all other

actions as may be reasonably necessary to release its Liens, if any, in the Purchased Assets subject to such Sale, as such Liens may otherwise exist. If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens* or other documents, instruments, notices or agreements evidencing any Lien against or in the Purchased Assets shall not have delivered to the Debtor before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets subject to the Sale, then with regard to the Purchased Assets, (i) the Debtor and the Buyer are authorized and directed to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to such Purchased Assets and (ii) the Debtor or the Buyer is authorized and directed to file, register or otherwise record a certified copy of this Sale Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Purchased Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

17.    **Authorization to Government Agencies**.    Each and every Governmental Authority, filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets, is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Sale Agreement or this Sale Order. All such entities described above in this paragraph are

authorized to strike all recorded Liens against the Purchased Assets from their records, official and otherwise.

18.    **No Successor Liability**.  The Buyer and its affiliates, predecessors, successors, assigns, members, partners, directors, officers, employees, principals and shareholders (or equivalent) are not and shall not be (i) deemed a "successor" in any respect to the Debtor or its estate as a result of the consummation of the Sale contemplated by the Sale Agreement or any other event occurring in the Chapter 11 Case under any theory of law or equity, (ii) deemed to have, de facto or otherwise, merged, or consolidated with or into the Debtor or its estate, (iii) deemed to have a common identity with the Debtor, (iv) deemed to have a continuity of enterprise with the Debtor, or (v) deemed to be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor.  Except as otherwise expressly provided in this Sale Order and/or the Sale Agreement the transfer of the Purchased Assets to the Buyer under the Sale Agreement shall not result in the Buyer or its affiliates, predecessors, successors, assigns, members, partners, directors, officers, employees, or principals and shareholders (or equivalent) (i) having any liability or responsibility for any claim against the Debtor or against an insider of the Debtor, (ii) having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Lien, or (iii) having any liability or responsibility to the Debtor except as is expressly set forth in the Sale Agreement or this Sale Order.  The Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation described in the foregoing sentence, and the Sale Motion shall be deemed to have provided sufficient notice as to the Sale and assignment of the Purchased Assets free and clear of all such liabilities and obligations in accordance with Local Rule 6004-1.

19.    **Examples of No Successor Liability**. Without limiting the generality, effect or scope of the foregoing, as a result of and following the Closing, the Buyer and its affiliates, predecessors, successors, assigns, members, partners, directors, officers, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, transferee liability, continuity of enterprise, mere continuation, labor law, bulk sales law, employment or benefits law, alter ego, veil piercing, escheat, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtor or any obligations of the Debtor relating to the period prior to the Closing Date whether arising before or after the Closing Date, including, without limitation, United States or foreign pension liabilities or liabilities on account of any federal, state or other taxes arising, accruing or payable under, out of, in connection with, or in any way relating to or calculated or determined with respect to or based in whole or in any part upon the operation of the Purchased Assets or the on or prior to such Closing Date or any taxes in connection with, or in any way related to, the cancellation of debt of the Debtor or its Affiliates.  The consideration given by the Buyer shall constitute valid and valuable consideration for the release of any potential claims of successor liability against the Buyer which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens and Claims, against the Debtor or the Purchased Assets.

20.    **Injunction**. Subject to paragraph 30, all persons and entities, including, but not limited to, the Debtor, employees, former employees, all debt security holders, equity holders, licensors, administrative agencies, governmental units (as defined in section 101(27) of the

Bankruptcy Code), tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, other parties in possession of the Purchased Assets at any time, trade creditors and all other creditors holding any Liens or Claims of any kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the Purchased Assets (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the operation of the Debtor's business, on or prior to the Closing Date, the Sale (other than the Buyer's obligations under this Sale Order and the Sale Agreement, and all other ancillary agreements, documents or instruments entered into in connection with the Sale Agreement), or the transfer of the Purchased Assets to the Buyer shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against the Buyer or any of its respective affiliates, predecessors, successors, or assigns or any of its respective current and former members, officers, directors, employees, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), its property or the Purchased Assets.  In connection with the foregoing, actions that are barred hereby include, without limitation: (i) the commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment, collection, or recovery of any judgment, award, decree or order, (iii) the creation, perfection, or enforcement of any Lien, Claim, interest, or encumbrance, (iv) the assertion of any right of setoff, subrogation, recoupment, reversion,

assignment or specific performance of any kind, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Sale Order, any actions contemplated or taken in respect hereof, or the Sale Agreement, and (vi) the revocation, termination or failure or refusal to renew any Governmental Authorization or other license, permit, registration, or governmental authorization or approval to operate any of the Purchased Assets or conduct the businesses associated with such Purchased Assets. Following the Closing Date, no Person that was the holder of a Lien on, in or against the Purchased Assets prior to the Closing Date shall interfere with the Buyer's title to, license of, or use and enjoyment of the Purchased Assets based on or related to such Lien, or any actions that the Debtor may take in the Debtor's case.

21.    **No Bulk Sale; No Brokers**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale or the other transactions contemplated under the Sale Agreement or this Sale Order.  Other than Cassel Salpeter & Co., LLC ("Cassel"), no broker, finder, or financial advisor was involved in consummating the Sale or the other transaction, and, other than Cassel, no commissions are due to any person or entity in connection with the Sale or the other such transactions.  The Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale or the other transactions based upon any arrangement made by or on behalf of the Debtor; *provided*, that the Debtor is authorized to apply proceeds of the Sale to the fees and expenses of Cassel in accordance with the order of this Court approving Cassel's engagement including, without limitation, any provisions in such order regarding determination of the value of any consideration received by the Debtor.

22.    **Fees and Expenses; Indemnity**.    Any amounts payable or otherwise reimbursable by the Debtor under the Sale Agreement or any of the documents delivered by the Debtor in connection with the Sale Agreement, including without limitation (i) any allowed claims for breach thereof, (ii) any amounts relating to the indemnity provided by the Debtor under the Sale Agreement, if any, and (iii) any purchase price or other adjustments, shall be paid under the terms of and in the manner provided in the Sale Agreement without further order of the Bankruptcy Court, as an allowed administrative claim in an amount equal to such payment in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall not be discharged, modified, or otherwise affected by any reorganization plan for the Debtor, except by written agreement with the Buyer or its successors or assigns (such agreement to be provided in such Buyer's or its successor's or assign's respective sole discretion).

23.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Sale Agreement or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtor and the Buyer that the Sale Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order.   Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

24.    **Lease**.  Notwithstanding anything in this Sale Order or the Sale Agreement to the contrary, that certain lease dated as of August 12, 2016, as amended by that certain First Amendment to Lease dated as of April 7, 2017, Second Amendment to Lease dated as of July 20, 2017, Third Amendment to Lease dated as of August 17, 2017, and that certain Fourth Amendment to Lease dated as of November 29, 2018 (collectively, as amended, the "Lease"),

between AP3-SF2 CT South LLC (the "Landlord") and the Debtor for certain premises (the "Premises") in that certain building located at One Tower Place, South San Francisco, California, any leasehold estate created by the Lease, any subleases or sublease estates related thereto, any security deposits or letters of credit related to the Lease or any sublease, or any fixtures constituting a portion of the Premises within, on, or about the Premises is not, and shall not be deemed to be, assumed by the Debtor, assumed by the Debtor and assigned to the Buyer, sold by the Debtor to the Buyer, or rejected by the Debtor, pursuant to this Sale Order or any of the underlying agreements with the Buyer, and the respective rights, remedies, defenses, powers, duties, and obligations of the Debtor and the Landlord arising under, or in connection with, the Lease and Premises are hereby preserved. The Debtor shall retain all rights afforded to it under the Bankruptcy Code to assume, assume and assign, or reject the Lease and/or any subleases related thereto notwithstanding entry of this Sale Order.

25.     **Landlord Indemnity; Insurance**.  Heritage shall pay for any and all loss and damage to any portion of the property located at One Tower Place, South San Francisco, California 94080 (the "Property"), and all improvements thereon, and any injury to and/or death of any persons whatsoever, solely to the extent arising wholly or in part from the access to and activities upon the Property by Heritage and/or Heritage's employees, agents, vendors or contractors (collectively, "Heritage's Agents"), and shall keep the Property free and clear of all mechanics' and materialmen's liens and claims for labor and/or materials arising out of any activity upon the Property by Heritage or Heritage's Agents.  Heritage shall defend, indemnify and hold the Landlord, and its members, managers, partners, agents, officers, directors, employees and affiliates free and harmless against all claims, liens, losses, damages, injuries or death, and against all consequent costs and expenses (including, without limitation, attorneys'

fees and expenses and all costs of enforcement of this indemnity) of whatever kind or nature, to the extent arising in whole or in part from any activity upon the Property by Heritage or Heritage's Agents; *provided*, that the foregoing shall not apply to (i) the mere discovery (as opposed to the exacerbation by Heritage or Heritage's Agents) of any pre-existing condition at the Property or (ii) ordinary wear and tear occasioned during the reasonable removal of the Heritage Purchased Assets in accordance with industry standards.

26.    In addition, prior to entering the Property, Heritage shall provide the Landlord with evidence of insurance in form, substance and amount as may be reasonably required by the Landlord in connection with Heritage's entry into, and removal from, the Property of the Heritage Purchased Assets, and Heritage shall maintain such insurance at its own cost until such time as Heritage no longer has access to the Property for such purpose. The Debtor shall comply with the applicable provisions of the Lease, applicable laws and regulations, and shall obtain all required permits and approvals, in connection with the removal and disposal of any hazardous materials related to the removal of the Heritage Purchased Assets from the Property. For the avoidance of doubt, the Heritage Purchased Assets do not include any of the Included Furniture or Optional Furniture referenced and defined in Section 18 of the Debtor's sublease to Sana Biotechnology, Inc. dated October 25, 2018, and the Debtor is not selling or transferring the same to Heritage pursuant to the Heritage Sale Agreement or this Sale Order.

27.    **No Waiver of Rights Under the DIP Loan Documents and Prepetition Loan Documents.** Nothing in this Sale Order shall be deemed to waive, release, extinguish, or estop the Debtor, its estate or its creditors from asserting, or impairing or diminishing such rights to assert, any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any assets of the Debtor remaining after the completion of the

Closing. All proceeds from the consummation of the Sale shall be treated in accordance with the provisions of the DIP Credit Agreement and the applicable order of the Bankruptcy Court approving the Debtor's post-petition financing (collectively, the "DIP Order"), including, but not limited to, the provisions in the DIP Order governing the use of Cash Collateral (as defined therein); *provided*, notwithstanding anything to the contrary contained in this Sale Order or in the Sale Document, from and after the closing of the Sale, the Debtor is hereby authorized and directed to hold all cash proceeds of the Sale in a segregated account and, pending further order of the Bankruptcy Court, such proceeds shall not be used for any purpose, other than for payment of obligations arising under the key employee retention plan that was approved by the Bankruptcy Court. *Provided however, the Debtor may use the cash proceeds of the Sale for operations with the consent of the ~~DIP~~ Committee and DIP Lender.* Nothing in this Sale Order shall (i) be deemed a waiver of the rights and remedies of the DIP Lender under the DIP Credit Agreement, any documents relating thereto, or the DIP Order; (ii) affect in any way the validity, perfection, priority or enforcement of the liens and claims granted to the DIP Lender under or pursuant to the DIP Credit Agreement and DIP Order; (iii) affect or limit in any way the validity, perfection, priority or enforcement of the Prepetition Loan Liens, the Prepetition Loan Obligations, the Prepetition Loan Collateral (each as defined in the DIP Order), or the Adequate Protection Liens, Adequate Protection Obligations, Adequate Protection Claims, (each as defined in the DIP Order) or any other rights and protections granted to the Prepetition Lender under the Prepetition Loan Agreement (as defined in the DIP Order) and the DIP Order; or (iv) affect in any way the validity or priority of the KEIP/KERP Plan Amount (as defined in the DIP Order), all of which shall attach to the proceeds of the Sale. For the avoidance of doubt, nothing herein shall affect the Creditors' Committee's rights to commence a Challenge or other rights as set forth in the DIP Order. Notwithstanding anything to the contrary in the Bidding Procedures, Bidding Procedures Order, DIP Loan

Agreement, or DIP Order, the date by which the Sale approved pursuant to this Sale Order must be closed is fifteen (15) days after the date of entry of this Sale Order.

28.    **Back-Up Bid**.    The Back-up Bid submitted by the Back-up Bidder shall remain open and irrevocable as set forth in the Bidding Procedures and Bidding Procedures Order, and in the event that the Successful Bidder shall fail to close for whatever reason on the Purchased Assets, the Debtor and the Back-up Bidder shall close on the Sale, subject to final negotiations on the Back-up Bidder's bid and executing a sale agreement with the Back-up Bidder, within the time period set forth in the Bidding Procedures and Bidding Procedures Order.

29.    **Good Faith Deposits**.    Notwithstanding anything to the contrary in the Bidding Procedures or Bidding Procedures Order, the good faith deposit of the Back-up Bidder shall be retained by the Debtor in the event that the Back-up Bidder, in the reasonable discretion of the Debtor, and after five (5) business days' written notice to the Back-up Bidder, shall fail to proceed with, or consummate, its bid, including, without limitation, by failing to negotiate in good faith with the Debtor, failing to execute its asset purchase agreement, or failing to close on the sale in accordance with the terms of its asset purchase agreement which is the subject of its bid.

30.    **Binding Order**.    This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtor, the Buyer, the Back-up Bidder, and their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's estate or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of the Debtor (whether known or unknown), all non-Debtor parties to all Governmental Authorities, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state, and

local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.  The Sale Agreement and the Sale shall not be subject to rejection or avoidance under any circumstances.  This Sale Order and the Sale Agreement shall inure to the benefit of the Debtor, its estates, its creditors, the Buyer and its respective successors and assigns.

31.     **No Stay of Order**.  The provisions of Bankruptcy Rules 6004 and 6006, and to the extent applicable under Bankruptcy Rules, Rules 54(b) and 62(a) of the Federal Rules of Civil Procedure, staying the effectiveness of this Sale Order for fourteen (14) days are hereby waived, and this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Any party desiring to appeal this Sale Order must exercise due diligence in filing an appeal, pursuing a stay and obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

32.     **Lift of Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Bankruptcy Court, to allow the Buyer to deliver any notice provided for in the Sale Agreement and allow the Buyer to take any and all actions permitted under the Sale Agreement.

33.     **Retention of Jurisdiction**.  The Bankruptcy Court shall retain exclusive jurisdiction to (i) interpret, implement and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the Sale Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection

therewith, in all respects, (ii) decide any disputes concerning this Sale Order, the Sale Agreement or the rights and duties of the parties hereunder or thereunder or any issues relating to the Sale Agreement and this Sale Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, and (iii) enforce the injunctions set forth herein.

34.    **Subsequent Plan Provisions**.    Unless otherwise provided herein, nothing contained in any chapter 11 plan confirmed in the Debtor's case or any order confirming any such plan or any other order in the Debtor's case (including any order entered after any conversion of this case into a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Sale Agreement or this Sale Order and, to the extent of any such conflict, subject to this paragraph 34, the terms of this Sale Order and the Sale Agreement shall control.

35.    **Further Assurances**.    From time to time, as and when requested by the other, the Debtor and the Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale with respect to the Buyer, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Buyer its right, title and interest in and to the Purchased Assets, subject to the provisions of the Sale Agreement.

36.    **Provisions Related to Governmental Authorities**.    Notwithstanding any provision to the contrary in the Sale Motion, this Sale Order, and any implementing Sale

documents (collectively, the "Documents") nothing shall: (i) authorize the assumption, sale, assignment or other transfer to the Buyer of any agreements, grants, grant funds, licenses, permits, authorizations, contracts, leases, agreements or other interests of the federal government (collectively, "Federal Interests"), without compliance by the Debtor and/or the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (ii) be interpreted to set cure amounts or require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (iii) affect the government's rights to offset or recoup any amounts due under, or relating to, the Federal Interests or the rights of the Debtor to assert all available defenses thereto, including, without limitation, that any or all such rights are barred under applicable law, are hereby preserved; or (iv) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, except to the extent set forth in 28 U.S.C. Section 1334 (as limited by any other provisions of the United States Code).  In addition, nothing in the Documents (i) releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order or (ii) divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

37.    **Governing Terms**.  To the extent this Sale Order is inconsistent with the Bidding Procedures Order or any other prior order or pleading in this Chapter 11 Case, or the terms of the Sale Agreement (including all ancillary documents executed in connection with such Sale Agreement), this Sale Order shall govern.

38.    **Headings**.  The headings in this Sale Order are for purposes of reference only and shall not limit or otherwise affect the meaning of the Sale Order.

Wilmington, Delaware

Dated: June 25, 2019

<br><br>

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE