**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Achaogen, Inc. | Case No. 19-10844 (BLS) |
| Debtor.[1] | **Hearing Date:**<br>**September 5, 2019 at 2:00 p.m. (ET)**<br>**Objections Due:**<br>**August 27, 2019 at 4:00 p.m. (ET)** |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER EXTENDING THE**
**EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY**
**FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), extending the period during which the Debtor has the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by four months from August 13, 2019 to December 13, 2019, and extending the period during which the Debtor has the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") by approximately four months from October 14, 2019 to February 14, 2020.  In support of the Motion, the Debtor respectfully represents as follows:

---

[1]     The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 548 Market Street, #70987, San Francisco, California 94104-5401.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.   This is a core proceeding under 28 U.S.C. § 157(b).   Venue of this case and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Debtor consents pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The statutory bases for the relief requested herein is section 1121(d) of the Bankruptcy Code and Local Rule 9006-2.

## GENERAL BACKGROUND

4.      On April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code thereby commencing this case (the "Chapter 11 Case").   The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   An official committee of unsecured creditors (the "Committee") was appointed in this Chapter 11 Case on April 23, 2019. No trustee or examiner has been appointed in this Chapter 11 Case.

5.      A description of the Debtor's business and the facts and circumstances leading to this Chapter 11 Case are set forth in *the Declaration of Blake Wise in Support of First Day Relief* [D.I. 3] (the "First Day Declaration") and incorporated herein by reference.

6.      On the Petition Date, the Debtor filed a motion for court approval of certain bidding procedures (the "Bidding Procedures") designed for the Debtor to maximize

value for its assets through an expedited sale process [D.I. 30].  By order entered on May 1, 2019 [D.I. 123] (the "Bidding Procedures Order"), the Court approved the Bidding Procedures for the purpose of soliciting the highest and best offers to purchase all or substantially all of the Debtor's assets.

7.    In accordance with the Bidding Procedures, the Debtor commenced an auction (the "Auction") for substantially all of its assets on June 3, 2019, at 10:00 a.m. (prevailing Pacific Time).

8.    On June 13, 2019, the Debtor filed the *Notice of Completion of Auction and Selection of Successful Bidder* [D.I. 266] (the "Notice of Auction Results"), which designated Cipla USA Inc. ("Cipla") as the Successful Bidder for the Debtor's rights to ZEMDRI (Plazomicin) and related assets and liabilities other than the China License Rights (as defined in the Cipla Plazomicin Sale Agreement).   The Notice of Auction Results also designated the following Successful Bidders: Qilu Antibiotics Pharmaceutical Co., Ltd. ("Qilu") for the Debtor's China License Rights to ZEMDRI, Unity Biotechnology, Inc. ("Unity") for the Tie2 antibody program, and Heritage Global Partners, Inc. ("Heritage") for certain of the Debtor's equipment.

9.    On June 12, 2019, at 10:00 a.m. (prevailing Pacific Time), the Debtor commenced a separate auction for the C-Scape program assets ("C-Scape").  Subsequently, on June 18, 2019, the Debtor filed the *Notice of Completion of C-Scape Auction and Selection of Successful Bidder* [D.I. 285] that designated Cipla as the Successful Bidder for C-Scape.

10.    As a result of these auctions, the Debtor entered into the following agreements: (a) an asset purchase agreement dated June 20, 2019, with Cipla (the "Cipla Plazomicin Sale Agreement") for the Debtor's rights to ZEMDRI (Plazomicin) and related assets and liabilities, other than the China License Rights (as defined in the Cipla Plazomicin Sale

Agreement), (b) an asset purchase agreement dated June 20, 2019, with Cipla (the "Cipla C-Scape Sale Agreement," and together with the Cipla Plazomicin Sale Agreement, the "Cipla Sale Agreements") for C-Scape, (c) an asset purchase agreement dated June 21, 2019, with Unity (the "Unity Sale Agreement"), and (d) an asset purchase agreement dated June 23, 2019 with Heritage (the "Heritage Sale Agreement"). At the same time, the Debtor continued to negotiate a license agreement with Qilu for the Debtor's China License Rights to ZEMDRI.[2]

11.    The Court entered orders approving the Heritage Sale Agreement [D.I. 309] and the Unity Sale Agreement [D.I. 327] on June 26, 2019 and July 1, 2019, respectively. Subsequently, on July 23, 2019, the Court entered an order approving the Cipla Plazomicin Sale Agreement [D.I. 371]. The Sales (as defined in the applicable Sale Orders) closed on June 27, 2019, July 3, 2019, and July 23, 2019, respectively. The Debtor has reduced its workforce to one employee, and—having sold its plazomicin business—is no longer operating as a going concern.

12.    The Debtor has not yet consummated, however, sales of its C-Scape Assets or its China License Rights. To that end, Cipla and Qilu have each indicated they are not in a position to consummate their respective transactions. The Debtor believes the sale of these assets would maximize value for the estate and is in the best interests of the Debtor, its creditors and other parties in interest. Accordingly, the Debtor intends to seek out and consummate alternative transactions that will maximize the value of these assets for the benefit of its creditors and estate.

---

[2]    This paragraph is for summary purposes only and is qualified in its entirety by reference to the applicable sale agreements. In the case of any inconsistency between this Motion and one of the sale agreements, the applicable sale agreement will govern.

13.     On July 29, 2019, following extensive good faith and arm's-length negotiations, the Debtor entered into a stipulation with its landlord and two sublessees to reject its headquarter lease and related subleases (the "Lease Stipulation").  Pursuant to the Lease Stipulation, the Debtor vacated its headquarter offices and rejected the Lease, Atreca Sublease, and Sana Sublease (as such terms are defined in the Lease Stipulation).  The Court entered an order approving the Lease Stipulation on July 31, 2019 [D.I. 398].

## **RELIEF REQUESTED**

14.     By this Motion, the Debtor seeks the entry of an order pursuant to section 1121(d) of the Bankruptcy Code *extending* (a) the Exclusive Filing Period by four months through and including December 13, 2019, and (b) the Exclusive Solicitation Period by approximately four months through and including February 14, 2020, without prejudice to the Debtor's right to seek further extensions of the Exclusive Periods.

## **BASIS FOR RELIEF**

15.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a plan.  Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of such plan.  Pursuant to section 1121(d)(1) of the Bankruptcy Code, "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and

after notice and hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."[3]

16.    Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement" with its creditors.   H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); *In re Public Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility.").   To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors.  *See, e.g.*, *McLean*, 87 B.R. at 833–34; *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

17.    The decision to extend a debtor's exclusive periods is left to the bankruptcy court's sound discretion, guided by the facts and circumstances of each case.  *See, e.g.*, *First Am. Bank of N.Y. v. S.W. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).  Courts consider a variety of factors in determining whether "cause" exists to warrant an extension of the exclusive periods, including: (a) the size and complexity of the case; (b) the debtor's progress in resolving issues facing the estate; and (c) whether an extension of time will harm the debtor's creditors.  *See, e.g., In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409–10 (E.D.N.Y. 1989) (listing factors); *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997) (citing *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D.

---

[3]    Such extensions are capped by section 1121(d)(2) of the Bankruptcy Code, which limits any extension of the exclusive filing period to eighteen (18) months after the petition date and any extension of the solicitation period to twenty (20) months after the petition date.

Tex. 1996)).  The existence of good faith progress and the need for additional time to continue

such progress are particularly significant factors that establish cause for extending the exclusive

periods under section 1121(d) of the Bankruptcy Code.  *See Express One Int'l, Inc.*, 194 B.R. at

101; *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986).

18.    Cause exists to extend the Exclusive Periods in this Chapter 11 Case.

First, the Debtor and its professionals have made significant progress in moving this case to a

successful completion, including spending considerable time addressing numerous issues

involving creditors and other parties in interest.  Notably, since the Petition Date, the Debtor has,

among other things: (a) procured postpetition financing; (b) prepared and filed its Schedules of

Assets and Liabilities and Statement of Financial Affairs; (c) conducted a sale process, inclusive

of two auctions, to find the highest and best bidders for the sale of all or substantially all of the

Debtor's assets; (d) consummated three Sales (as defined in the respective Sale Orders) for the

purchase of certain of the Debtor's assets, including its global plazomicin business; (e) obtained

Court orders (i) to approve the Lease Stipulation, (ii) to approve a sale process of certain *di

minimis* assets located at the Debtor's headquarters, (iii) to establish deadlines for filing proofs of

claim or requests for payment of administrative claims, (iv) to reject certain contracts and leases

following the Sales, and (v) for various other administrative and customary relief, such as

retention of various professionals and authority to maintain the Debtor's existing cash

management system; and (f) negotiated extensively and successfully resolved myriad issues with

the Committee, the U.S. Government, the DIP Lender, and other parties in interest.

19.    As a result, the Debtor respectfully submits that, the Debtor, who has been

diligently advancing all aspects of this Chapter 11 Case with its advisors, should be afforded

additional time as requested herein to, among other activities, (1) consummate sales of the C-

Scape Assets and China License Rights, (2) review, administer and potentially object to claims,

and (3) work with its principal creditors and other stakeholders to conclude this Chapter 11 Case in a manner that serves the best interests of the Debtor, its estate and its creditors. The extension request is reasonable, and is consistent with the efficient prosecution of the Chapter 11 Case in that it will provide the Debtor with additional time to sell its remaining assets to maximize value for its estate and creditors, as well as negotiate and draft a plan of liquidation, and solicit acceptances thereof. Consequently, the relief requested herein is necessary. Allowing the Exclusive Periods to lapse now would defeat the very purpose of section 1121 and deprive the Debtor and its creditors of the benefit of a meaningful and reasonable opportunity to negotiate and confirm a consensual plan.

20. Second, no creditors or other parties in interest will be harmed by extending exclusivity at this time. This is the Debtor's first motion to extend the Exclusive Periods. The Debtor—who has been working hand-in-hand with both its secured/DIP Lender and the Committee throughout this case—has and continues to proceed with diligence and intends to use the extended Exclusive Periods to advance the goal of concluding this bankruptcy case for the benefit of its creditors and other parties in interest. As such, the Debtor submits that creditors will not be prejudiced by an extension of the Exclusive Periods.

21. For all the foregoing reasons, the Debtor submits that sufficient cause exists to extend the Exclusive Filing Period through and including December 13, 2019, and the Exclusive Solicitation Period through and including February 14, 2020.

### AUTOMATIC EXTENSION UNDER LOCAL RULE 9006-2

22. Pursuant to Local Rule 9006-2, the Exclusive Periods shall automatically be extended until the Court acts on this Motion, without the necessity for entry of a bridge order.

## NOTICE

23.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the buyers of the Debtor's assets; (c) counsel to the Committee; (d) counsel to the DIP Lender; and (e) any other party that has requested notice pursuant to Local Rule 2002-1(b).   The Debtor respectfully submits that no further notice of this Motion is required under the circumstances.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form of the Proposed Order attached as **Exhibit A**, and grant such other relief as is just and proper under the circumstances.

Dated:  August 13, 2019
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Tel.: (302) 658-9200
Fax: (302) 658-3989
dabbott@mnat.com
aremming@mnat.com
mtalmo@mnat.com
ptopper@mnat.com

- and -

Richard L. Wynne (CA 120349) *admitted pro hac vice*
Erin N. Brady (CA 215038) *admitted pro hac vice*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
richard.wynne@hoganlovells.com
erin.brady@hoganlovells.com

- and -

Christopher R. Bryant (NY 3934973) *admitted pro hac vice*
John D. Beck (TX 24073898) *admitted pro hac vice*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
chris.bryant@hoganlovells.com
john.beck@hoganlovells.com

*Counsel for Debtor and Debtor in Possession*