## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Achaogen, Inc. | Case No. 19-10844 (BLS) |
| Debtor.[1] | **Hearing Date**: **TBD** **Objections Due**: **November 19, 2019 at 4:00 p.m. (ET)** |

## MOTION TO SELL
## CERTAIN ASSETS TO REVAGENIX, INC.

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion") for entry of an order under sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing Debtor's entry into the Agreement (as defined below) for the immediate sale of the Early Research Assets,[2] including the files contained within folders on the Seller's Box Drive, with folder names containing or substantially similar to or pertaining to the following specific small molecule research programs: 1) "NAG", 2) "ES-AG", and 3) "LpxC" (collectively, the "Folders" and with the Early Research Assets, the "Documents") to Revagenix, Inc. (the "Purchaser" and together with the Debtor, the "Parties"). In support of this Motion, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 548 Market Street, #70987, San Francisco, California 94104-5401.

[2] Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Agreement (as defined below).

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the Bankruptcy Code, as supplemented by Rules 6004 and 9014 of the Bankruptcy Rules.

## General Background

3.      On April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code thereby commencing this case (the "Chapter 11 Case").  The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors (the "Committee") was appointed in this Chapter 11 Case on April 23, 2019. No trustee or examiner has been appointed in this Chapter 11 Case.

4.      A description of the Debtor's business and the facts and circumstances leading to this Chapter 11 Case are set forth in the *Declaration of Blake Wise in Support of First Day Relief* [D.I. 3] (the "First Day Declaration") and incorporated herein by reference.

5.      On the Petition Date, the Debtor filed a motion for court approval of certain bidding procedures (the "Bidding Procedures") designed for the Debtor to maximize value for its assets through an expedited sale process [D.I. 30].  By order entered on May 1, 2019 [D.I. 123] (the "Bidding Procedures Order"), the Court approved the Bidding Procedures for the purpose of soliciting the highest and best offers to purchase all or substantially all of the Debtor's assets.

2

6.      In accordance with the Bidding Procedures, the Debtor commenced an auction (the "Auction") for substantially all of its assets on June 3, 2019, at 10:00 a.m. (prevailing Pacific Time).

7.      On June 13, 2019, the Debtor filed the *Notice of Completion of Auction and Selection of Successful Bidder* [D.I. 266] (the "Notice of Auction Results"), which designated Cipla USA Inc. ("Cipla") as the Successful Bidder for the Debtor's rights to ZEMDRI (Plazomicin) and related assets and liabilities other than the China License Rights (as defined in the Cipla Plazomicin Sale Agreement).  The Notice of Auction Results also designated the following Successful Bidders: Qilu Antibiotics Pharmaceutical Co., Ltd. ("Qilu") for the Debtor's China License Rights to ZEMDRI, Unity Biotechnology, Inc. ("Unity") for the Tie2 antibody program, and Heritage Global Partners, Inc. ("Heritage") for certain of the Debtor's equipment.

8.      On June 12, 2019, at 10:00 a.m. (prevailing Pacific Time), the Debtor commenced a separate auction for the C-Scape program assets ("C-Scape").  Subsequently, on June 18, 2019, the Debtor filed the *Notice of Completion of C-Scape Auction and Selection of Successful Bidder* [D.I. 285] that designated Cipla as the Successful Bidder for C-Scape.

9.      As a result of these auctions, the Debtor entered into the following agreements: (a) an asset purchase agreement dated June 20, 2019, with Cipla (the "Cipla Plazomicin Sale Agreement") for the Debtor's rights to ZEMDRI (Plazomicin) and related assets and liabilities, other than the China License Rights (as defined in the Cipla Plazomicin Sale Agreement), (b) an asset purchase agreement dated June 20, 2019, with Cipla (the "Cipla C-Scape Sale Agreement," and together with the Cipla Plazomicin Sale Agreement, the "Cipla Sale Agreements") for C-Scape, (c) an asset purchase agreement dated June 21, 2019, with Unity (the

3

"Unity Sale Agreement"), and (d) an asset purchase agreement dated June 23, 2019 with Heritage (the "Heritage Sale Agreement" and with the Cipla Sale Agreements and Unity Sale Agreements, the "Sale Agreements").  At the same time, the Debtor continued to negotiate a license agreement with Qilu for the Debtor's China License Rights to ZEMDRI.

10.    The Court entered orders approving the Heritage Sale Agreement [D.I. 309] and the Unity Sale Agreement [D.I. 327] on June 26, 2019 and July 1, 2019, respectively.  Subsequently, on July 23, 2019, the Court entered an order approving the Cipla Plazomicin Sale Agreement [D.I. 371]. The Sales (as defined in the applicable Sale Orders) closed on June 27, 2019, July 3, 2019, and July 23, 2019, respectively.  The Debtor has reduced its workforce to one employee, and—having sold its plazomicin business—is no longer operating as a going concern.

11.    The Debtor has not yet consummated, however, sales of its C-Scape Assets or its China License Rights.  To that end, Cipla and Qilu have each informed the Debtor that neither will be consummating their respective transactions.  Cipla has further indicated that it is not in a position to consummate the sale of the China License Rights, for which it was designated the Back-up Bidder.  Accordingly, the Debtor is pursuing alternative transactions that will maximize the value of these assets for the benefit of its creditors and estate.  None of the foregoing transactions contemplates a sale of the Documents.

12.    Several weeks ago, Ryan Cirz, a former Achaogen employee—approached the Debtor about acquiring the Documents.  In doing so, Mr. Cirz explained that as a scientist who has worked in the anti-infectives space for over sixteen (16) years, most of that time directly with Achaogen, he has and continues to remain committed to the field.  He further explained that he wishes to purchase the Documents to preserve certain early-stage research and scientific

findings, including data and know-how, set forth therein.  This information was not acquired or slated to be acquired as part of the Auctions or Sale Agreements.

13.    No other parties—in the Auction context or otherwise—have expressed any interest in the Documents or the information contained therein, and the Documents would in all likelihood be abandoned and destroyed at the conclusion of this case if not for the sale of the Documents to Mr. Cirz (the "Sale").  As such, in light of Mr. Cirz's offer, the Debtor (upon consultation with Silicon Valley Bank, N.A. (the "DIP Lender") and the Committee) concluded it was appropriate and in the best interest of the Debtor's estate and stakeholders to sell the Documents to Mr. Cirz.  Mr. Cirz thus formed the Purchaser, and the Parties negotiated the Sale to Purchaser for consideration of $5,000.  The terms and conditions of such negotiations are memorialized in that certain asset purchase agreement dated October 22, 2019 (the "Agreement"), which is attached hereto as **Exhibit A**.  The Debtor's DIP Lender and the Committee do not object to the proposed Sale.

## Relief Requested

14.    By this Motion, the Debtor seeks entry of an order authorizing the Sale of the Documents to Purchaser.

## Basis for Relief Requested

15.    As illustrated by the terms of the Agreement, the Sale will provide value for the Debtor's creditors that would not exist otherwise.  Moreover, the Sale will preserve valuable early-stage research and scientific findings related to antibiotic treatments against multi-drug resistant gram-negative infections.  The Sale of the Documents will further the fight against superbugs in aiding the research for the development of antibiotics that combat deadly bacterial infections.  Therefore, the Debtor believes that the Agreement presents the best opportunity for

the Debtor to preserve and maximize the value of the Documents for the benefit of the Debtor, its estate and its creditors.

16.     The Court's general equitable powers are codified in section 105(a) of the Bankruptcy Code.  Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."  11 U.S.C. § 105(a).

17.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  In pertinent part, Bankruptcy Rule 6004 states that, "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

18.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).

19.     The proposed Sale fits squarely within the parameters of the sound business judgment test.  The Agreement is the product of arm's length negotiations and brings value to the Debtor's bankruptcy estate and creditors that would not otherwise be available.  The

proposed Sale further preserves important early research, and promotes future research, related to the development of antibiotics to fight superbugs. Although the Documents were available for purchase as part of the Auction, no party other than Purchaser has expressed any interest in purchasing them. Under the circumstances, and given that the Documents would otherwise be abandoned and destroyed, the consideration to be paid under the Agreement (while nominal) is both fair and reasonable. And although the Purchaser is an entity wholly owned by Mr. Cirz, one of the Debtor's former employees, Mr. Cirz is no longer an employee and was at no time during his employment an insider. Finally, the DIP Lender and Committee have been consulted with respect to the proposed Sale, and do not object. Therefore, the Debtor believes that the Sale should be approved as a sound exercise of the Debtor's business judgment.

### Waiver of Bankruptcy Rule 6004(h)

20.    Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). To preserve the value of the Debtor's estate and limit the costs of administering and preserving the Documents, it is important that the Debtor close the Sale and fulfill its obligations under the Agreement as soon as possible. Accordingly, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Notice

21.    Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Purchaser; (c) counsel to the

Committee; (d) counsel to Silicon Valley Bank, N.A., in its capacity as Prepetition Lender and DIP Lender; and (e) any other party that has requested notice pursuant to Local Rule 2002-1(b). The Debtor respectfully submits that no further notice of this Motion is required under the circumstances.

### **No Prior Request**

22.    No previous request for the relief sought in this Motion has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests the Court enter an Order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested in this Motion and granting such other and further relief as may be just and proper.

Dated: November 5, 2019
        Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Tel.: (302) 658-9200
Fax: (302) 658-3989
dabbott@mnat.com
aremming@mnat.com
mtalmo@mnat.com
ptopper@mnat.com

- and -

Richard L. Wynne (CA 120349) *admitted pro hac vice*
Erin N. Brady (CA 215038) *admitted pro hac vice*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
richard.wynne@hoganlovells.com

erin.brady@hoganlovells.com

- and -

Christopher R. Bryant (NY 3934973) *admitted pro hac vice*
John D. Beck (TX 24073898) *admitted pro hac vice*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
chris.bryant@hoganlovells.com
john.beck@hoganlovells.com

*Counsel for Debtor and Debtor in Possession*