**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Achaogen, Inc. | Case No. 19-10844 (BLS) |
| Debtor.[1] | **Requested Hearing Date:**<br>**January 9, 2020 at 10:30 a.m. (ET)**<br>**Requested Objections Due:**<br>**January 7, 2020 at 12:00 p.m. (ET)** |

**MOTION FOR ENTRY OF AN ORDER (I) APPROVING
THE SALE OF THE CHINA PURCHASED ASSETS OF
THE DEBTOR TO XUANZHU (HK) BIOPHARMACEUTICAL
LIMITED FREE AND CLEAR OF LIENS, ENCUMBRANCES,
CLAIMS AND INTERESTS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion")[2] for entry of an order, substantially in the form attached hereto as Exhibit A (the "Sale Order"), (a) approving the asset purchase agreement (the "Xuanzhu Sale Agreement") by and between Achaogen, Inc. and Xuanzhu Biopharmaceutical Limited ("Xuanzhu"), dated as of December 29, 2019, for the sale (the "Sale") of the China Purchased Assets (as defined in the Stipulation (as defined herein)), (b) providing that the Sale will be free and clear of Liens, encumbrances, Claims and interests, and (c) granting related relief, including approving that certain *Stipulation Amending the Cipla Sale Documents* (the "Stipulation") entered into between the Debtor, Xuanzhu and Cipla USA Inc. ("Cipla") in order to rescind the transfer of the China Purchased Assets to enable the Debtor to transfer such assets to Xuanzhu. In support of this Motion, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 548 Market Street, #70987, San Francisco, California 94104-5401.

[2] Unless otherwise indicated, capitalized terms used, but not defined herein, have the meanings ascribed to them in the Bidding Procedures, the Bidding Procedures Order, the Stipulation, or Xuanzhu Sale Agreement (as such terms are defined herein), as applicable.

**Jurisdiction**

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.    Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.    The statutory predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1.

**Background**

**General Case Background**

4.    On April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code thereby commencing this case (the "Chapter 11 Case").  The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors (the "Committee") was appointed in this Chapter 11 Case on April 23, 2019. No trustee or examiner has been appointed in this Chapter 11 Case.

5.    A description of the Debtor's business and the facts and circumstances leading to this Chapter 11 Case are set forth in the *Declaration of Blake Wise in Support of First Day Relief* [D.I. 3] (the "First Day Declaration") and incorporated herein by reference.

**The Prior Sale and Auction Process**

6.    On the Petition Date, the Debtor filed a motion for court approval of certain bidding procedures (the "Bidding Procedures") designed for the Debtor to maximize value for its assets through an expedited sale process [D.I. 30].  By order entered on May 1, 2019 [D.I. 123] (the "Bidding Procedures Order"), the Court approved the Bidding Procedures for the purpose of soliciting the highest and best offers to purchase all or substantially all of the Debtor's assets.

7.    In accordance with the Bidding Procedures, the Debtor commenced an auction (the "Auction") for substantially all of its assets on June 3, 2019, at 10:00 a.m.

8.    At the conclusion of the Auction, the Debtor designated (i) Cipla as the Successful Bidder for the global rights to ZEMDRI (Plazomicin) and the Debtor's assets related thereto, subject to a license of the China Assets (as defined in the Stipulation) (the "Global Rights") and (ii) Qilu Antibiotics Pharmaceutical Co., Ltd. ("Qilu") as the Successful Bidder for a license of the China Assets.  Additionally, the Debtor designated Cipla as the Back-up Bidder for the China Assets.  *See Notice of Completion of Auction and Selection of Successful Bidder* [D.I. 266] (the "Notice of Auction Results").

9.    Thereafter, on or about June 20, 2019, the Debtor entered into an asset purchase agreement with Cipla (the "Cipla Plazomicin Sale Agreement") for the Global Rights (including the China Purchased Assets, subject to the Debtor's right to license the China Assets.[3]

---

[3] The Debtor also entered into a number of other asset purchase agreements for certain of its assets, including entering into an asset purchase agreement with Cipla dated June 20, 2019 for the C-Scape program assets.

In order to effectuate the Debtor's license of the China Assets to Qilu, the Cipla Plazomicin Sale Agreement provided that the Debtor, as licensor, would enter into a license agreement with Qilu—or, if requested by the Debtor, another third party—for the China Assets (the "License Agreement"), and that upon the payment by Qilu of a one-time licensing fee to the Debtor and the effectiveness of the License Agreement, the Debtor would immediately assign to Cipla, and Cipla would immediately assume, the rights and only those obligations of the Debtor, as licensor, under the License Agreement.  When Cipla and the Debtor executed the Cipla Plazomicin Sale Agreement, the Debtor was still negotiating a license agreement with Qilu for the China Assets.

10.     On or about July 1, 2019, the Debtor ceased most of its operations, dismissing all but a few of its remaining employees.

11.     On July 23, 2019, the Court entered an order (the "Cipla Sale Order" and with the Cipla Plazomicin Sale Agreement, the "Cipla Sale Documents") approving the Cipla Plazomicin Sale Agreement [D.I. 371]. The Debtor and Cipla consummated the transaction the same day.

12.     Qilu, as the Successful Bidder for the China Assets, and Cipla, as the Back-up Bidder for the China Assets, thereafter failed to close their respective transactions for the China Assets.

**The Xuanzhu Proposal**

13.     In light of the failure of Qilu and Cipla to close their respective transactions, the Debtor had no choice but to immediately seek out an alternative buyer for the China Purchased Assets—both to mitigate its damages and to maximize the value of such assets. The Debtor's investment banker, Cassel Salpeter & Co LLC, contacted ten potential buyers, five

of which expressed an interest in acquiring the China Purchased Assets. This effort continued for nearly ten weeks.

14.     As part of this effort, in or about August 2019, the Debtor contacted Xuanzhu, advising that the transaction for the China Assets had not closed and that the Debtor was seeking to identify a party that would be interested in acquiring the China Assets if the relevant parts of the Cipla transaction could be reversed. Xuanzhu had first become aware of the China Assets in or about November 2018, and aggressively pursued the opportunity through April 2019 when Achaogen filed the Chapter 11 Case, but had declined to proceed with a purchase of the assets. Upon further consideration and review of the opportunity, Xuanzhu then presented a written proposal to the Debtor to purchase (as opposed to licensing) the China Purchased Assets. Xuanzhu's proposal (i) contemplated that Xuanzhu would pay consideration of $4.5 million to acquire the China Purchased Assets (without assuming any executory contracts) and (ii) requested certain bid protections.

15.     Xuanzhu's proposal—which provided significantly less consideration than the offers the Debtor had previously accepted from Cipla and Qilu—was the only acceptable offer the Debtor received during the renewed marketing period. Thus, the Debtor, in consultation with the DIP Lender and the Committee, determined that the Xuanzhu proposal was the highest and best, viable offer for the China Purchased Assets, and decided to move forward with Xuanzhu's proposal.

16.     On October 15, 2019, the Debtor entered into a letter of intent ("LOI") with Xuanzhu, which among other things, provided Xuanzhu with certain bid protections including a $200,000 expense reimbursement and $225,000 break-up fee. The Court approved the Debtor's entry into the LOI on October 31, 2019 [D.I. 516], and entered orders extending the

LOI's protections in subsequent orders entered on November 26, 2019 [D.I. 531] and December 19, 2019 [D.I. 545].

17.    On December 29, 2019, the Debtor entered into an asset purchase agreement with Xuanzhu memorializing the terms and conditions for the purchase and sale of the China Purchased Assets (the "Xuanzhu Sale Agreement").    A copy of the Xuanzhu Sale Agreement is attached to the Sale Order as Exhibit A.

**The Cipla Stipulation**

18.    Xuanzhu's proposal contemplates that it will purchase—as opposed to license—the Chinese Purchased Assets, which consist of (i) the "China Intellectual Property" (including, without limitation, the "Company China IP Registrations", the "Company Owned China Intellectual Property" and the "Company Used China Intellectual Property") (as such terms are defined in the Xuanzhu Sale Agreement), and (ii) all other Purchased Assets relating only to the "China Plazomicin Business," other than the Excluded IP (each as defined in the Xuanzhu Sale Agreement).  As such, and because the Cipla Sale Order effectuated the transfer of the China Plazomicin Business to Cipla, it became necessary to rescind the transfer of these assets to Cipla.  The Debtor, Cipla and Xuanzhu thus negotiated the Stipulation.  A copy of the Stipulation is attached to the Sale Order as Exhibit B.  The Stipulation provides that so long as (i) the Court approves the Xuanzhu Sale Agreement (as defined below) and the Stipulation and (ii) the transactions under the Xuanzhu Sale Agreement (as defined below) close (the "Xuanzhu Closing"), then immediately prior to the Xuanzhu Closing, the sale and transfer of the portion of the China Purchased Assets that occurred under the Cipla Plazomicin Sale Agreement shall be automatically rescinded in their entirety and shall have no further force or effect (the "China

Purchased Assets Rescission").[4]  As a result of the China Purchased Assets Rescission, the Debtor will be able to transfer the China Purchased Assets to Xuanzhu.

19.     The Debtor is requesting that the Court approve the Xuanzhu Sale Agreement and the Stipulation, which will both mitigate the Debtor's damages, and maximize the value of the China Purchased Assets for itself, its estate and its creditors.

**Local Rule 6004-1 Requirements**

20.     In accordance with Local Rule 6004-1(b)(iv), the Debtor notes the following regarding the Sale:

a.     <u>No Sale to an Insider</u>. Xuanzhu is not an insider of the Debtor within the meaning set forth in section 101(31) of the Bankruptcy Code.

b.     <u>Agreements with Management</u>. No agreements with management have been entered into in connection with the Sale.

c.     <u>Releases</u>. The Sale will not include any release of any party.

d.     <u>Private Sale/No Competitive Bidding</u>.  Although the Debtor is not by this Motion proposing a bidding process or an Auction, the China Purchased Assets have already been the subject of an exhaustive marketing process. As detailed herein, the Debtor believes the Xuanzhu Sale Agreement constitutes the best, and potentially only, opportunity for the Debtor to maximize the value of the China Purchased Assets for the benefit of the Debtor's estate and creditors. Further, the Debtor maintains the ability to entertain higher or otherwise better offers for the China Purchased Assets.

e.     <u>Closing and Other Deadlines</u>. The proposed Sale contemplates that (i) the Sale Order must be entered by no later than January 10, 2020 and (ii) the Sale must close by no later than January 10, 2020.

f.     <u>Good Faith Deposit</u>.  Xuanzhu has deposited U.S. $2,000,000 by wire transfer to US Bank, National Association, as master escrow agent.

---

[4] Notwithstanding anything in this Motion or the Stipulation, each of the Debtor, Cipla and Xuanzhu expressly reserves all of the respective claims, rights at law and/or equity, entitlements, remedies, causes of action and/or defenses that it has or may have with respect to the Auction, the Cipla Sale Documents, the License Agreement, and/or actions or inactions that any of the other Parties have taken, may take or will seek to take in the future with respect to the Debtor or its assets during the course of this chapter 11 case.

g.      Interim Arrangements with Proposed Buyer.    There are no interim arrangements with Xuanzhu.

h.      Use of Sale Proceeds. The proceeds of the Sale shall be applied in accordance with the Final DIP Order and paragraph 27 of the Sale Order.

i.      Tax Exemption. The anticipated terms of the Sale do not address the use of tax exemptions.

j.      Record Retention. The Debtor will retain property necessary for the wind down.  *See* Xuanzhu Sale Agreement § 10.15.

k.      Sale of Avoidance Actions. The anticipated terms of the Sale do not involve the sale of avoidance actions. *See* Sale Order ¶ 28.

l.      Requested Findings as to Successor Liability. The proposed Sale Order includes a finding that the Sale will not subject Xuanzhu to any liability whatsoever (including any successor liability) with respect to the operation of the Debtor's business.  *See* Sale Order ¶¶ X, 21–22.

m.      Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests. By this Motion the Debtor is requesting authority to transfer good title in, to and under the China Purchased Assets free and clear of all liens, to the fullest extent permissible under section 363(f) of the Bankruptcy Code. *See* Sale Order ¶¶ W, 12.

n.      Credit Bid. Credit bidding is inapplicable.

o.      Relief from Bankruptcy Rule 6004(h). By this Motion the Debtor is requesting relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h).  *See* Sale Order ¶ 31.

21.      As set forth above and in the *Declaration of Nicholas K. Campbell, Chief Restructuring Officer of the Debtor, in Support of the (I) Sale of the China Purchased Assets of the Debtor to Xuanzhu (HK) Biopharmaceutical Limited and (II) Entry of the Sale Order* (the "Campbell Declaration"), filed contemporaneously herewith, the Debtor, in its business judgment, believes that the Xuanzhu Sale Agreement represents the highest and best offer it will obtain for the Sale of the China Purchased Assets.

**Relief Requested**

22.     By this Motion, the Debtor seeks entry of an order approving the Xuanzhu Sale Agreement, (b) providing that the Sale will be free and clear of Liens, encumbrances, Claims and interests, and (c) granting related relief, including approving the Stipulation.

**Basis For Relief Requested**

23.     As detailed in the Xuanzhu Sale Agreement, the proposed sale will provide value and crucial funding for the Debtor's bankruptcy estate where value may not otherwise exist.  The Debtor conducted a fulsome marketing process both before and after filing this Chapter 11 Case to identify parties interested in purchasing, among other things, the China Purchased Assets.  Although the Auction resulted in a Successful Bidder and a Back-up Bidder for the China Purchased Assets, both failed to consummate their respective transactions.  During a renewed marketing period, the Debtor received interest from five (5) parties; however, Xuanzhu was the only party who submitted a bid acceptable to the Debtor from a monetary and timing perspective.  Therefore, given the circumstances, the Debtor believes that the Xuanzhu Sale Agreement presents the best, and potentially only, opportunity for the Debtor to maximize the value of the China Purchased Assets by bringing in $4.5 million to the benefit of the Debtor's bankruptcy estate and creditors.

**A.     The Sale and Stipulation Reflect a Sound Exercise of the Debtor's Business Judgment.**

24.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title." 11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004 states that, "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

25.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).

26.     The proposed Sale and Stipulation are a sound exercise of the Debtor's business judgment.  After the Successful Bidder and Back-up Bidder failed to close their respective transactions for the China Purchased Assets, the Debtor was left with a valuable asset at a time that it was barely operating and starving for liquidity.  The Debtor promptly canvassed the market for potential purchasers, and Xuanzhu was the only party who put forth an actionable offer.  After due consideration of the terms of the Xuanzhu offer, the Debtor concluded that Xuanzhu's offer was the highest and best offer for the China Purchased Assets and proceeded to negotiate the definitive terms of the transaction.  The resulting Xuanzhu Sale Agreement is the product of arm's-length negotiations between the Debtor and Xuanzhu, and includes consideration to be paid under the Xuanzhu Sale Agreement which, while less than that offered

by the Successful Bidder or Backup Bidder, is both fair and reasonable under the circumstances. Similarly, the Stipulation is the product of arm's length negotiations among the Debtor, Xuanzhu and Cipla and, moreover, is a necessary component of the proposed Sale as it will effectuate the China Purchased Assets Rescission and enable the Debtor to transfer the China Purchased Assets to Xuanzhu. Further, the DIP Lender and the Committee have been consulted with respect to the proposed transaction and support entry of the Sale Order.  In light of the foregoing, the Debtor believes that each of the Xuanzhu Sale Agreement and Stipulation should be approved as a sound exercise of the Debtor's business judgment.

**B.    The Debtor May Sell the China Purchased Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests.**

27.    In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim, or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f).

28.    The Debtor's DIP Lender has consented to the Sale.  All parties asserting a lien on the Debtor's assets will be served with the Motion and the proposed Xuanzhu Sale Agreement and will have the opportunity to object and be heard.  Furthermore, bankruptcy courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g., In re Trans World Airlines, Inc.,* 2001 WL

1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). Considering that any remaining objections to this Motion must be resolved by consent of the objecting party or a determination by the Bankruptcy Court, the Debtor expects that it can satisfy at least the second and fifth subsections of section 363(f) of the Bankruptcy Code.

29.      Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f). *See, e.g., In re Trans World Airlines, Inc.,* 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corporation* v. *Chambersburg Beverage, Inc. (In re White Motor Credit Corp.),* 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). The Debtor will serve notice of the Motion on holders of all such interests and each will have an opportunity to object to the Sale. Accordingly, the Debtor requests that the Sale be approved "free and clear," with any liens, claims, encumbrances and interests to attach to the proceeds of the Sale with the same validity, extent and priority, and subject to the same rights and defenses, as existed immediately prior to the Sale. All net proceeds of the Sale will be remitted pursuant to paragraph 27 of the Sale Order.

## C.      The Sale Has Been Proposed in Good Faith.

30.      The Debtor additionally requests that the Bankruptcy Court find that Xuanzhu be entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale of the China Purchased Assets. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale ... under such authorization to an entity that purchased . . . such property in good faith, whether or not such

> entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

31.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. By its terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets.

32.     Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbotts Dairies of Pa. Inc.,* 788 F.2d 143, 147 (3d Cir. 1986).  To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Bedford Springs Hotel, Inc.,* 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.,* 186 B.R. 813, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."  *In re Pisces Leasing Corp.,* 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus. Machinery Corp.,* 572 F.2d at 1198 (7th Cir. 1978)).

33.     As required by section 363(m) of the Bankruptcy Code, both the Debtor and Xuanzhu have acted in good faith in negotiating the Xuanzhu Sale Agreement.  There is no evidence of fraud or collusion.  To the contrary, as discussed throughout this Motion, the Sale of the China Purchased Assets will be the culmination of (i) extensive pre- and postpetition marketing processes, (ii) an Auction, (iii) a second round of postpetition marketing following

Qilu's and Cipla's failure to consummate their respective transactions, and (iv) a negotiated sale agreement among sophisticated parties.  Xuanzhu is not an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations were conducted on an arm's-length, good faith basis.

34.     As required by Bankruptcy Rule 2002, all parties with an interest in the China Purchased Assets will receive notice of this Motion and the proposed Sale and will be provided an opportunity to be heard.  The Debtor submits that, under the facts and circumstances of this Chapter 11 Case, such notice is adequate and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code.   Under the circumstances, Xuanzhu should be afforded the benefits and protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

### Waiver of Bankruptcy Rule 6004(h)

35.     Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). To preserve the value of the Debtor's estate and limit the costs of administering the China Purchased Assets, it is important that the Debtor close the proposed sale and fulfill its obligations under the Xuanzhu Sale Agreement as soon as possible.   Accordingly, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Notice

36.     Notice of this Motion will be provided to: (a) the Office of the United

States Trustee for the District of Delaware; (b) counsel to Xuanzhu; (c) counsel to the Committee; (d) counsel to the DIP Lender; (e) counsel to Cipla; (f) counsel to Qilu; (g) all parties asserting a security interest in the China Purchased Assets to the extent any such interest is reasonably known to the Debtor; (h) the Department of Health and Human Services; (i) all entitites known to have expressed an interest in a transaction with respect to the China Purchased Assets or that have been identified by the Debtor or its advisors as a potential buyer of the China Purchased Assets; (j) local, state and federal authorities and agencies that have issued licenses or permits to the Debtor with respect to the operation and use of the China Purchased Assets; and (k) any other party that has requested notice pursuant to Local Rule 2002-1(b).  The Debtor respectfully submits that no further notice of this Motion is required under the circumstances.

**WHEREFORE**, the Debtor respectfully requests the Court grant the relief requested in this Motion and such other and further relief as the Court may deem just and proper.

Dated: December 29, 2019
       Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Tel.: (302) 658-9200
Fax: (302) 658-3989
dabbott@mnat.com
aremming@mnat.com
mtalmo@mnat.com
ptopper@mnat.com

- and -

Richard L. Wynne (CA 120349) *admitted pro hac vice*
Erin N. Brady (CA 215038) *admitted pro hac vice*

HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
richard.wynne@hoganlovells.com
erin.brady@hoganlovells.com

- and -

Christopher R. Bryant (NY 3934973) *admitted pro hac vice*
John D. Beck (TX 24073898) *admitted pro hac vice*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
chris.bryant@hoganlovells.com
john.beck@hoganlovells.com

*Counsel for Debtor and Debtor in Possession*