# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **Achaogen, Inc.,** | Case No. 19-10844 (BLS) |
| Debtor.[1] | **Re: D.I. 550** |

### ORDER UNDER SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND RULES 6004 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) APPROVING THE SALE OF THE CHINA PURCHASED ASSETS OF THE DEBTOR TO XUANZHU (HK) BIOPHARMACEUTICAL LIMITED FREE AND CLEAR OF LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS AND GRANTING RELATED RELIEF, AND (II) APPROVING THE STIPULATION AMENDING THE CIPLA SALE DOCUMENTS

Upon (I) the Debtor's *Motion for Entry of an Order (I) Approving the Sale of the China Purchased Assets of the Debtor to Xuanzhu (HK) Biopharmaceutical Limited Free and Clear of Liens, Encumbrances, Claims and Interests and (II) Granting Related Relief* on December 29, 2019 [D.I. 550-2] (the "Motion") and (II) the *Stipulation Amending the Cipla Sale Documents*, attached hereto as Exhibit B (the "Stipulation" and with the Motion, the "Sale Motion");[2] and the Debtor having selected Xuanzhu (HK) Biopharmaceutical Limited ("Buyer") as having the highest or otherwise best bid for the China Purchased Assets (as defined in the Stipulation) set forth in the asset purchase agreement dated December 29, 2019 (along with the corresponding exhibits and schedules, the "Xuanzhu Sale Agreement"), attached hereto as Exhibit A; and Buyer having agreed to assume the Assumed Liabilities of the Debtor identified in the Xuanzhu Sale

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 548 Market Street, #70987, San Francisco, CA 94104.

[2] Unless otherwise indicated, capitalized terms used, but not defined herein, have the meanings ascribed to them in the Sale Motion, the Bidding Procedures, the Bidding Procedures Order or the Xuanzhu Sale Agreement (as defined herein), as applicable. No provisions, including defined terms, contained in the Xuanzhu Sale Agreement, or any other agreement, document, instrument or otherwise entered into or delivered in connection therewith, shall be binding on or applicable to any other buyer of the Debtor's assets, except as otherwise set forth in this Sale Order.

Agreement pursuant to the terms and conditions set forth in the Xuanzhu Sale Agreement; and the Bankruptcy Court having commenced a hearing on January 9, 2020, to consider approval of (i) the sale of the China Purchased Assets under the Xuanzhu Sale Agreement (the "Sale") free and clear of all Liens (as defined below), Claims (as defined in section 101(5) of title 11 of the United States Code (the "Bankruptcy Code")) and other interests, and (ii) the assumption and assignment of certain liabilities; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale; and the Court having determined that the legal and factual bases set forth at the Sale Hearing and in the Sale Motion, the Stipulation, the Declaration of Blake Wise in Support of the First Day Relief [D.I. 3], the Declaration of James S. Cassel in Support of Entry of the Sale Order D.I. [552],the Declaration of Nicholas K. Campbell in Support of Entry of the Sale Order D.I. [553], and the Declaration of F. Leslie Boyd, Ph.D., In Support of the Entry of Order Approving Sale of Debtor's Assets to Xuanzhu (HK) Biopharmaceutical Limited D.I. [554], and this Chapter 11 Case (as defined herein) and proceedings, and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    **Bankruptcy Petition**.  On April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing this case (this "Chapter 11 Case").

B.    **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*

---

[3] This Sale Order shall be deemed to incorporate all findings of fact and conclusions of law made on the record at the Sale Hearing (as defined herein) pursuant to Bankruptcy Rule 7052. In addition, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate pursuant to Bankruptcy Rule 7052.

dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     **Final Order**.  This order ("Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Since time is of the essence in closing the Sale referenced herein, the Debtor and Buyer intend to close the Sale as soon as practicable given that there is no just reason for delay in the implementation of this Sale Order.  Specifically, the Sale must be approved and consummated promptly, and by no later than January 10, 2020, in order to maximize the value to the Debtor, its estate, its creditors, and all other parties in interest. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

D.     **Statutory Predicates**.  The statutory predicates for the relief sought in the Sale Motion are sections 105, 363, 364, 365, and 541 of the Bankruptcy Code, Rules 2002, 6004, 6006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

E.     **Notice**.  As evidenced by the certifications of service previously filed with the Bankruptcy Court, proper, timely, adequate and sufficient notice of the Sale Motion, the Xuanzhu Sale Agreement, this Sale Order and the Sale Hearing, have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.  Such notice was good and sufficient and appropriate under the particular circumstances and all known creditors of the Debtor and other parties in interest in the Chapter 11 Case were offered a reasonable opportunity to object and be

3

heard.  No other or further notice of the Sale Motion, including, without limitation, the Xuanzhu Sale Agreement, the Sale Hearing, or of the entry of this Sale Order was or is necessary or shall be required.

F.      The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.      No trustee or examiner has been appointed in the Chapter 11 Case.

H.      The disclosures made by the Debtor concerning the Sale Motion, the Xuanzhu Sale Agreement, the Sale, Buyer, and the Sale Hearing were good, complete and adequate.

I.      **Opportunity to Object**.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all creditors of the Debtor and other parties in interest in the Chapter 11 Case, including, without limitation, the following: (i) the United States Trustee for Region 3; (ii) counsel to the Committee, the Prepetition Lender and DIP Lender (as such terms are defined below); (iii) all parties asserting a security interest in the China Purchased Assets to the extent any such interest is reasonably known to the Debtor; (iv) various federal, state, county and city tax and regulatory authorities, including the Department of Health and Human Services; (v) all entities known to have expressed an interest in a transaction with respect to the China Purchased Assets or that have been identified by the Debtor or its advisors as a potential buyer of the China Purchased Assets; (vi) local and state environmental authorities and the Environmental Protection Agency; (vii) local, state and federal authorities and agencies that have issued licenses or permits to the Debtor with respect to the operation and use of the China Purchased Assets; (viii) the contract counterparties whose contracts are identified as being assigned; (ix) all of the Debtor's known creditors, (x) all parties requesting notice pursuant to

Bankruptcy Rule 2002, (xi) Cipla USA Inc. ("Cipla") and (xii) Qilu Antibiotics Pharmaceutical Co., Ltd. ("Qilu").

J.      **Debtor's Ownership of the China Purchased Assets**.   Pursuant to the Cipla Plazomicin APA and Cipla Plazomicin Sale Order (the "Cipla Sale Documents"), the Debtor agreed to transfer to Cipla the global rights and assets with respect to the Plazomicin Business (as defined in the Cipla Plazomicin APA), including the China Purchased Assets (other than the China Trademarks), subject to the right of the Debtor to grant a license of the China Purchased Assets to a third party (that would be assumed by Cipla) (the "Cipla Transaction").  The terms of the Cipla Sale Documents also provided the Debtor with the right to license the China Purchased Assets to a third party if the Successful Bidder and Back-up Bidder for such assets were unwilling to close their respective transactions.  Following the Auction (as further discussed below), Qilu, as the Successful Bidder for the China Purchased Assets, and Cipla, as the Back-up Bidder for the China Purchased Assets, thereafter failed to close their respective transactions for the China Purchased Assets.  Thereafter, in or about August 2019, Buyer was contacted by the Debtor and advised that the transactions for the China Purchased Assets had not closed and that the Debtor was seeking to identify a party that would be interested in licensing or acquiring the China Purchased Assets if the relevant parts of the Cipla Transaction could be reversed.  Buyer then presented a written proposal to the Debtor to purchase the China Purchased Assets (rather than license such assets), which led to (i) the parties' negotiation and execution of a letter of intent ("LOI") dated October 15, 2019, (ii) the entry by the Bankruptcy Court of an order on October 31, 2019 [D.I. 516] (as amended on December 19, 2019 [D.I. 545], the "LOI Order") which approved certain provisions in the LOI until January 10, 2020, and (iii) the negotiation and entry into the Xuanzhu Sale Agreement for the sale of the China Purchased Assets.  To

effectuate the structure of the sale to Buyer, on December 29, 2019, (i) the Debtor, Cipla and Buyer entered into the Stipulation to, among other things, rescind the Debtor's transfer of the China Purchased Assets, and (ii) Cipla and Buyer entered into the License and Mutual Support Agreement (the "Support Agreement"), each subject to the Bankruptcy Court's entry of this Sale Order.

K.    **Title in the China Purchased Assets**.  The China Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.  The Debtor is the sole and lawful owner of the China Purchased Assets.

L.    **Business Justification**.  The Debtor has demonstrated a sufficient basis and compelling circumstances to sell the China Purchased Assets to Buyer pursuant to the terms and conditions of the Xuanzhu Sale Agreement.  Such action is an appropriate exercise of the Debtor's business judgment and in the best interest of the Debtor, the estate and its creditors. Such business reasons include, but are not limited to, the fact that (i) the Debtor is no longer operating, and thus cannot otherwise monetize the China Purchased Assets; (ii) the Buyer's bid set forth in the Xuanzhu Sale Agreement constitutes the highest and best offer for the China Purchased Assets; and (iii) the Xuanzhu Sale Agreement and the Closing will present the best opportunity to realize the value of the China Purchased Assets.  Entry of this Sale Order (and all provisions hereof) is a condition precedent to Buyer consummating the Xuanzhu Sale Agreement.  The Buyer's agreement to purchase the China Purchased Assets is conditioned upon its ability to consummate the proposed transaction by no later than January 10, 2020.

M.    **Sale Process**.  In accordance with the Debtor's Bidding Procedures (the "Bidding Procedures") approved by this Court on May 1, 2019 [D.I. 123] (the "Bidding Procedures

Order"), the Debtor and its professionals marketed the China Purchased Assets appropriately by conducting an extensive marketing and sale process in good faith without collusion.  Pursuant to the Bidding Procedures Order, the Debtor, in the exercise of its reasonable discretion and in consultation with (a) the Official Committee of Unsecured Creditors (the "Committee") appointed in this Chapter 11 Case and (b) Silicon Valley Bank, N.A., in its capacity as the Prepetition Lender and DIP Lender (hereinafter, the "Prepetition Lender" and the "DIP Lender," respectively) under the Debtor in Possession Credit and Security Agreement dated as of April 15, 2019 (the "DIP Credit Agreement"), conducted an auction (the "Auction") for a sale of the Debtor's assets.  At the conclusion of the Auction, the Debtor designated multiple buyers as the winning bidders for certain assets, including Qilu as the Successful Bidder for a license for the China Purchased Assets.  The Debtor also designated Cipla as the Back-up Bidder for the same asset; *provided*, *that*, in the event Qilu could not close, Cipla, as the Back-up Bidder was to purchase, rather than license, the China Purchased Assets.  Qilu and Cipla thereafter failed to close their respective transactions for the China Purchased Assets.[4]

     N.     **Highest or Otherwise Best Offer**.  The Debtor, in the exercise of its reasonable discretion and in consultation with the Committee and the DIP Lender, began a second marketing effort for the China Purchased Assets (the "Second Round Marketing Effort").  This Second Round Marketing Effort lasted approximately ten (10) weeks.  Within that time frame, the Debtor's investment banker, Cassel Salpeter & Co., LLC ("Cassel"), contacted approximately ten (10) potential buyers; five (5) of which expressed an interest in acquiring the China Purchased Assets, but only Buyer proceeded to submit a bid that the Debtor viewed as acceptable.  Based on the foregoing, the Debtor determined that Buyer's bid represented the

---

[4] The Sale is subject to the reservation of rights set forth in paragraph 29 below.

highest and best offer for the China Purchased Assets.  Thus, the Debtor entered into the Xuanzhu Sale Agreement with Buyer for the China Purchased Assets and entered into the Stipulation with Buyer and Cipla to facilitate the Sale.  Such determinations and actions constitute the valid and sound exercise of the Debtor's business judgment.

O.   **Opportunity to Bid**. The marketing process set forth in the Bidding Procedures and the Bidding Procedures Order, and the Second Round Marketing Effort described in Paragraph N above, was fair in substance and procedure and afforded a full and fair opportunity for any party to make a higher or otherwise better offer to purchase the China Purchased Assets. In addition, Buyer memorialized its proposal to purchase the China Purchased Assets in the LOI, which was publicly filed with the Bankruptcy Court on October 22, 2019 (as Exhibit A to D.I. 504), for approval of its proposed break-up fee, expense reimbursement and related provisions. Since that time, the Debtor has not received any other bids or expressions of interest for the China Purchased Assets.  Based upon those circumstances and the record of these proceedings, all creditors of the Debtor, other parties in interest in the Chapter 11 Case, and all prospective buyers have been afforded a reasonable and fair opportunity to bid for the China Purchased Assets.

P.   **Good Faith Purchaser**.  The Xuanzhu Sale Agreement, the Stipulation and the Sale have been negotiated by the Debtor and Buyer, and their respective agents and representatives, in good faith, at arms' length, and without collusion or fraud.  The terms and conditions of the Xuanzhu Sale Agreement, including the consideration to be paid by Buyer to the Debtor pursuant to the Xuanzhu Sale Agreement for the China Purchased Assets, are fair and reasonable, and the Sale, including each part thereof with respect to Buyer, and the Stipulation are in the best interest of the Debtor, its estate, and its creditors.

Q.      Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code and any other applicable bankruptcy or non-bankruptcy law with respect to the sale of the China Purchased Assets that Buyer is acquiring pursuant to the Xuanzhu Sale Agreement.

R.      The Xuanzhu Sale Agreement was not controlled by an agreement between or among potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Debtor and Buyer have not engaged in any conduct that would cause or permit the Xuanzhu Sale Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.  Buyer is not an "affiliate" or "insider" of the Debtor as defined in section 101 of the Bankruptcy Code, and no common identity of incorporation, director, or stockholder existed or will exist between Buyer, on the one hand, and the Debtor, on the other hand, immediately prior to or after the Closing Date.

S.      An injunction against creditors of the Debtor and third parties pursuing Liens, Claims and Excluded Liabilities against Buyer is necessary to induce Buyer to close the Sale; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtor's estate, and will benefit all creditors of the Debtor.

T.      **Corporate Power and Authority**.  The Debtor has full corporate power and authority to execute and deliver each of the Xuanzhu Sale Agreement and the Stipulation and to perform all of its obligations thereunder, and the sale of the China Purchased Assets has been duly and validly authorized by all corporate authority necessary to consummate the Sale.  No consents or approvals, other than as expressly provided for in the Xuanzhu Sale Agreement, and the entry of this Sale Order, are required by the Debtor to consummate the Sale.

U.        **Transfer and Sale of Assumed Liabilities; Assumption and Assignment in Best Interest**.    The transfer and sale of the Assumed Liabilities by the Debtor and the assignment thereof to Buyer, pursuant to the terms of the Xuanzhu Sale Agreement and this Sale Order, are integral to the Xuanzhu Sale Agreement and in the best interest of the Debtor, its estate and its creditors, and represent the reasonable exercise of sound and prudent business judgment by the Debtor.    Accordingly, such transfer and sale to Buyer and the assumption and assignment of the Assumed Liabilities are reasonable, enhance the value of the Debtor's estate, and do not constitute unfair discrimination.    As among the Debtor and Buyer, nothing in this Sale Order shall enlarge or restrict any obligations of the Debtor or Buyer under the Xuanzhu Sale Agreement with respect to the Assumed Liabilities.

V.        **Free and Clear**.    Buyer would not have entered into the Xuanzhu Sale Agreement to acquire the China Purchased Assets, and would exercise its right to terminate the Xuanzhu Sale Agreement, if the sale of the China Purchased Assets were to be transferred to it other than free and clear of all Liens, Claims and Excluded Liabilities (other than the Assumed Liabilities, the Stipulation and the Support Agreement), or if Buyer would, or in the future could, be liable for any such Liens, Claims or Excluded Liabilities (other than the Assumed Liabilities, the Stipulation and the Support Agreement).    A sale of the China Purchased Assets other than one free and clear of all Liens, Claims and Excluded Liabilities (other than the Assumed Liabilities, the Stipulation and the Support Agreement) would adversely impact the Debtor's estate, and would yield substantially less value for the Debtor's estate, with less certainty than the Sale.    Therefore, the Sale contemplated in the Xuanzhu Sale Agreement is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

W.      **Satisfaction of 363(f) Standards**.  The Debtor may sell and assign the China Purchased Assets free and clear of all Liens, Claims and Excluded Liabilities, because, with respect to each creditor asserting a Lien, Claim or Excluded Liability, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of Liens, Claims or Excluded Liabilities who did not object or who withdrew their objections to this Sale Order are deemed to have consented to the Sale Motion and the sale and assignment of the China Purchased Assets to Buyer pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Liens, Claims, or Excluded Liabilities who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims or Excluded Liabilities, if any, attach to the proceeds of the Sale ultimately attributable to the China Purchased Assets in which such holders allege a Lien, Claim or Excluded Liability in the same order of priority, with the same validity, force and effect that such holder had prior to the Sale, and subject to any claims and defenses the Debtor and its estate may possess with respect thereto and paragraph 27 of this Sale Order; *provided*, that the Debtor will cause the proceeds of the Sale to be remitted pursuant to paragraph 27 of this Sale Order.

X.      **No Successor Liability**. The transactions contemplated under the Xuanzhu Sale Agreement do not amount to a consolidation, merger, or de facto merger of Buyer with the Debtor and/or the Debtor's estate, there is not substantial continuity between the Debtor and Buyer, there is no common identity between the Debtor and Buyer, there is no continuity of enterprise between the Debtor and Buyer, Buyer is not a mere continuation of the Debtor or its estate, and Buyer does not constitute a successor to the Debtor or its estate in any way.  Buyer

would not have acquired the China Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" or similar theories.

Y.   **No Fraudulent Transfer**.  The Sale is not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession or the District of Columbia.  Neither the Debtor nor Buyer has entered into the Xuanzhu Sale Agreement or is consummating the Sale with any fraudulent or otherwise improper purpose.

Z.   **Fair Consideration**.  The consideration provided for by Buyer for the China Purchased Assets indicated in the Xuanzhu Sale Agreement constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code or any similar state or federal law), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession or the District of Columbia.

AA.   **Compliance with Bankruptcy Code**.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been or will be complied with in respect of the Sale as of the Closing Date.

BB.   **Sale Transactions Not a *Sub Rosa* Plan**.  The sale and assignment of the China Purchased Assets and Assumed Liabilities outside of a plan of reorganization pursuant to the Xuanzhu Sale Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  The Sale does not constitute a *sub rosa* chapter 11 plan.

CC.    The Sale contemplated by the Xuanzhu Sale Agreement is in the best interest of the Debtor, its estate, its creditors, interest holders and all other parties in interest in the Chapter 11 Case; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Relief Granted**.  The relief requested in the Sale Motion is hereby granted in its entirety.  The Sale and the Stipulation are approved.

2.    **Objections Overruled**.  All objections and responses to the Sale Motion, this Sale Order or the relief granted herein (including all reservations of rights included therein) that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice; provided, however, that the reservations of rights set forth in footnote 4 and in paragraph 29 herein shall survive entry of this Sale Order.

3.    **Notice**.  Notice of the Sale Motion, the Sale, the Xuanzhu Sale Agreement, the Sale Hearing and the Stipulation was fair and equitable under the circumstances and complied in all respects with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007 and Local Rule 6004-1.

4.    **Prior Findings of Fact and Conclusions of Law**.  The Bankruptcy Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

5.    **Approval**.

a.    **The Xuanzhu Sale Agreement and the Sale**.  The Xuanzhu Sale Agreement (and all ancillary documents related thereto) is hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtor and Buyer are hereby authorized, empowered and directed to fully perform under, consummate, and implement the terms of the Xuanzhu Sale Agreement and the Sale, and to execute, deliver and perform under,

any and all additional instruments and documents that may be reasonably necessary or desirable to implement and **effectuate** the terms of the Xuanzhu Sale Agreement and this Sale Order, including, without limitation, deeds, assignments, patents, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Debtor or Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to Buyer or reducing to possession any or all of the China Purchased Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Xuanzhu Sale Agreement, without any further corporate action or orders of the Bankruptcy Court. Notwithstanding anything set forth in this Sale Order to the contrary, all rights, duties and obligations of Buyer may be assigned to a designee (including an Affiliate) of Buyer in accordance with the Xuanzhu Sale Agreement; *provided*, that Buyer is, and shall remain, primarily and irrevocably responsible for the full performance of Buyer's duties and obligations under the Xuanzhu Sale Agreement notwithstanding any such designation or the terms thereof.

   b. **The Stipulation**. The Stipulation is hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtor, Buyer and Cipla are hereby authorized, empowered and directed to fully perform under, consummate, and implement the terms of the Stipulation and to execute, deliver and perform under, any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Stipulation.

   6. **Good Faith**. Buyer is a good faith purchaser of the China Purchased Assets and is hereby granted and entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if

any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Xuanzhu Sale Agreement or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Sale Order and the Xuanzhu Sale Agreement, as the case may be.

7.    **Section 363(n) of the Bankruptcy Code**.  The Sale approved by this Sale Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) or any other section of the Bankruptcy Code.

8.    **Documentation**.  The Debtor is authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Sale contemplated by the Xuanzhu Sale Agreement, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation, by-laws, or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtor may determine are necessary or appropriate, and all such officials are hereby authorized to accept the foregoing.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

9.    **Cooperation**.   The Debtor is hereby authorized and directed to cooperate with Buyer as reasonably requested by Buyer or as required of the Debtor under the Xuanzhu Sale Agreement, and take all actions and execute all documents which Buyer reasonably and in good faith determines is necessary or desirable to ensure that the Sale related to Buyer is consummated in accordance with the Xuanzhu Sale Agreement, and the Debtor is authorized to make such modifications or supplements reasonably acceptable to the Debtor and Buyer to any bill of sale or other document or instrument executed or to be executed in connection with the Closing to facilitate such consummation as contemplated by the Xuanzhu Sale Agreement.

10.    **Duty to Close**.   Neither the Debtor nor Buyer shall have any obligation to proceed with the Closing until all conditions precedent to their respective obligations to proceed have been met, satisfied or waived in accordance with the terms of the Xuanzhu Sale Agreement; *provided*, the Debtor shall consult in good faith with the DIP Lender and the Committee prior to waiving any conditions precedent with respect thereto.

11.    **Valid Transfer**.   Effective as of the Closing of the Sale, (i) the sale and assignment of the China Purchased Assets by the Debtor to Buyer pursuant to the terms of the Xuanzhu Sale Agreement shall constitute a legal, valid and effective transfer of the China Purchased Assets, notwithstanding any requirement for approval or consent by any person, and shall vest Buyer with all right, title, and interest of the Debtor in and to the China Purchased Assets, free and clear of all Liens, Claims and Excluded Liabilities (other than the Assumed Liabilities, the Stipulation and the Support Agreement) pursuant to section 363(f) of the Bankruptcy Code, and (ii) the assumption of the Assumed Liabilities by Buyer constitutes a legal, valid, and effective assignment and delegation of any and all obligations, liabilities, and claims in respect thereof to Buyer and, other than to the extent expressly provided in this Sale

Order and/or constituting Excluded Liabilities under the Xuanzhu Sale Agreement, divests the Debtor of all right, title and interest in, and all obligations and liability with respect to, the Assumed Liabilities.  Upon the occurrence of the Closing, this Sale Order shall be considered and constitute, for any and all purposes, a full and complete general assignment, conveyance, and transfer of the China Purchased Assets to Buyer pursuant to the Xuanzhu Sale Agreement and/or a bill of sale or assignment transferring indefeasible right, title and interest in the China Purchased Assets and all other rights and interests associated with or appurtenant to the China Purchased Assets, including, without limitation, warranty rights, intellectual property rights (including, without limitation, rights to all associated patents, regulatory approvals, permits, and registrations) and other non-executory contract rights, to Buyer all to the extent set forth in the Xuanzhu Sale Agreement, the Stipulation and the Support Agreement.

12.    **Free and Clear**.  Except to the extent specifically provided in the Xuanzhu Sale Agreement or this Sale Order, upon the occurrence of the Closing, the Debtor shall be, and hereby is, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell, assign, convey, and transfer the China Purchased Assets under the Xuanzhu Sale Agreement to Buyer.  Except, and solely, to the extent specifically provided in the Xuanzhu Sale Agreement, the Stipulation, the Support Agreement or this Sale Order, the sale and assignment of the China Purchased Assets pursuant to the Xuanzhu Sale Agreement vests Buyer with all right, title and interest of the Debtor in and to the China Purchased Assets, free and clear of any and all Liens, Claims, Excluded Liabilities, and other liabilities of any kind or nature whatsoever (except for Assumed Liabilities, the Stipulation and the Support Agreement), whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated,

whether imposed by agreement, understanding, law, equity, or otherwise, with all such Liens, Claims and Excluded Liabilities to attach only to the proceeds of the sale and assignment of the China Purchased Assets with the same priority, validity, force, and effect as they now have in or against the China Purchased Assets, subject to paragraph 27 of this Sale order; *provided*, that the Debtor will cause the proceeds of the Sale to be remitted pursuant to paragraph 27 of this Sale Order.  The Sale Motion shall be deemed to have provided sufficient notice as to the sale and assignment of the China Purchased Assets free and clear of all Liens, Claims and Excluded Liabilities in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Following a Closing, no holder of any Lien or Claim on any of the China Purchased Assets subject to the Closing (other than with respect to Assumed Liabilities, the Stipulation and the Support Agreement) may interfere with Buyer's enjoyment of the China Purchased Assets, based on or related to such Lien or Claim, or any actions that the Debtor may take or fail to take in its Chapter 11 Case and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale.

13.    The term "Lien" as used in this Sale Order shall include, without limitation, all liens, interests, rights, encumbrances, rights of offset, recoupment rights, reversionary rights, assignment rights, rights to specific performance, restrictions, leases, option rights or claims, obligations, liabilities, indentures, loan agreements, guaranties, demands, contractual commitments or interests in respect of the Debtor or any property of the Debtor, equity interests, licenses, instruments, conditional sale rights or other title retention agreements, rights of first refusal, reversionary rights, consent rights, contract rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, regulatory violations, judgments, decrees of any court or foreign or domestic governmental or quasi-governmental entity, debts arising in any way

in connection with any agreements, acts or failures to act and reclamations rights whether choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected including, without limitation, the following: (i) any "Lien" as such term is defined in the Xuanzhu Sale Agreement; (ii) any employment or labor agreements; (iii) all mortgages, deeds of trust, hypothecations, pledges, security interests or charges of any kind or nature; (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of the Debtor; (v) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitations, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (1974), as amended, (b) the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, as amended, (c) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, (d) the Federal Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, as amended, (e) the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, as amended, (f) the Worker Adjustment and Retraining Act of 1988, 29 U.S.C. §§ 2101 *et seq.*, (g) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, as amended, (h) the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, as amended, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtor or any of its respective predecessors; (vi) any claims that might arise under or pursuant to any bulk sales or similar law; (vii) any claims that might arise under or pursuant to any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (viii) any claims that might arise under or pursuant to theories of successor liability, including any

theories on product liability grounds; and (ix) any environmental or other liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the Closing Date or relating to a period on or prior to the Closing Date, whether arising before or after the Closing Date.

14.     The provisions of this Sale Order authorizing the sale and assignment of the China Purchased Assets free and clear of Liens, Claims and Excluded Liabilities (other than Assumed Liabilities, the Stipulation and the Support Agreement) shall be self-executing and, without limiting the obligations of the Debtor under the Xuanzhu Sale Agreement or hereunder including under paragraph 16 hereof, neither the Debtor nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

15.     With regard to the forms of, timing, and other terms concerning the consideration to be provided by Buyer to the Debtor as set forth in the Xuanzhu Sale Agreement, Buyer is directed to comply with its respective obligations thereunder, and the Debtor, any liquidating trustee appointed in this Chapter 11 Case, and their successors and assigns, are hereby authorized to enforce all such provisions.  As further set forth in paragraph 33 hereof, the Bankruptcy Court shall retain exclusive jurisdiction with regard to any and all issues, disputes, controversies, causes of action, and/or claims with regard to, or arising under, such provisions, including, without limitation, the enforcement thereof.

16.     **Authorization to Creditors**.  On and immediately after the Closing Date, each of the Debtor's applicable creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Liens, if any, in the China Purchased Assets

subject to the Sale, as such Liens may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens* or other documents, instruments, notices or agreements evidencing any Lien against or in the China Purchased Assets shall not have delivered to the Debtor before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the China Purchased Assets subject to the Sale, then with regard to such China Purchased Assets, (i) each of the Debtor and Buyer is authorized and directed to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to the China Purchased Assets and (ii) each of the Debtor or Buyer, as applicable, is authorized and directed to file, register or otherwise record a certified copy of this Sale Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the China Purchased Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

17.    **Authorization to Government Agencies**.    Each and every Governmental Authority, filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the China Purchased Assets, is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Xuanzhu Sale Agreement or this Sale Order.  All such entities described above in this

paragraph are authorized to strike all recorded Liens against the China Purchased Assets from their records, official and otherwise.

18.      **Direction to Surrender Possession or Control**.  All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the China Purchased Assets subject to the Sale, are directed to surrender possession or control of such China Purchased Assets to Buyer on the Closing Date or at such time thereafter as Buyer may request.

19.      **Licenses and Permits**.  To the extent provided in the Xuanzhu Sale Agreement and available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any Governmental Authorization, rights granted in respect of IP agreements, if any, or other Intellectual Property, constituting part of the China Purchased Assets, any other license, permit, registration, and any other governmental approval of the Debtor with respect to the China Purchased Assets and all such licenses, permits, registrations, and Governmental Authorizations, Intellectual Property, and any other approvals are deemed to have been, and hereby are, directed to be transferred to Buyer as of the Closing Date.  To the extent any license or permit necessary for the operation of the business of the Debtor is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date and the Debtor is hereby authorized and directed to use commercially reasonable efforts to cooperate with Buyer in connection with any such application as Buyer deems reasonably necessary or desirable, subject to the provisions of the Xuanzhu Sale Agreement.

20.      To the extent provided by section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any Governmental Authorization or other approval, permit or license relating to the operation of the China Purchased Assets sold, transferred, or conveyed to

Buyer on account of the filing or pendency of this Chapter 11 Case or the consummation of the Sale.

21.     **No Successor Liability**. Buyer and its affiliates, predecessors, successors, assigns, members, partners, directors, officers, employees, principals and shareholders (or equivalent) are not and shall not be (i) deemed a "successor" in any respect to the Debtor or its estate as a result of the consummation of the Sale contemplated by the Xuanzhu Sale Agreement or any other event occurring in the Chapter 11 Case under any theory of law or equity (other than with respect to Assumed Liabilities assumed by Buyer pursuant to the Xuanzhu Sale Agreement, the Stipulation and the Support Agreement), (ii) deemed to have, de facto or otherwise, merged, or consolidated with or into the Debtor or its estate, (iii) deemed to have a common identity with the Debtor, (iv) deemed to have a continuity of enterprise with the Debtor, or (v) deemed to be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor.  Except for the Assumed Liabilities, the transfer of the China Purchased Assets to Buyer under the Xuanzhu Sale Agreement shall not result in Buyer or its affiliates, predecessors, successors, assigns, members, partners, directors, officers, employees, or principals and shareholders (or equivalent) (i) having any liability or responsibility for any claim against the Debtor or against an insider of the Debtor (including, without limitation, for any Excluded Liabilities), (ii) having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Lien or Excluded Liability, or (iii) having any liability or responsibility to the Debtor except as is expressly set forth in the Xuanzhu Sale Agreement.  Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation described in the foregoing sentence (other than with respect to Assumed Liabilities, the Stipulation and the Support Agreement), and the Sale Motion

shall be deemed to have provided sufficient notice of the Sale and assignment of the China Purchased Assets free and clear of all such liabilities and obligations in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

22.     **Examples of No Successor Liability**. Without limiting the generality, effect or scope of the foregoing, as a result of and following the Closing of the Sale, Buyer and its affiliates, predecessors, successors, assigns, members, partners, directors, officers, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, transferee liability, continuity of enterprise, mere continuation, labor law, bulk sales law, employment or benefits law, alter ego, veil piercing, escheat, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtor or any obligations of the Debtor relating to the period prior to the Closing Date whether arising before or after the Closing Date, including, without limitation, United States or foreign pension liabilities or liabilities on account of any federal, state or other taxes arising, accruing or payable under, out of, in connection with, or in any way relating to or calculated or determined with respect to or based in whole or in any part upon the operation of the China Purchased Assets on or prior to the Closing Date or any taxes in connection with, or in any way related to, the cancellation of debt of the Debtor or its Affiliates.  The consideration given by Buyer shall constitute valid and valuable consideration for the release of any potential claims of successor liability against Buyer which releases shall be deemed to have been given in favor of Buyer by

all holders of Liens, Claims and Excluded Liabilities (other than Assumed Liabilities, the Stipulation and the Support Agreement) against the Debtor or the China Purchased Assets.

23.     **Injunction**. Subject to paragraph 30, and except to the extent expressly included in the Assumed Liabilities, all persons and entities, including, but not limited to, the Debtor, employees, former employees, all debt security holders, equity holders, licensors, administrative agencies, governmental units (as defined in section 101(27) of the Bankruptcy Code), tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, other parties in possession of any of the China Purchased Assets at any time, trade creditors and all other creditors holding any Liens, Claims or Excluded Liabilities of any kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the China Purchased Assets (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtor, the China Purchased Assets, the operation of the Debtor's business, on or prior to the Closing Date, the Sale (other than Buyer's obligations under the Xuanzhu Sale Agreement, and all other ancillary agreements, documents or instruments entered into in connection with the Xuanzhu Sale Agreement, including, without limitation, the Stipulation and the Support Agreement), or the transfer of the China Purchased Assets to Buyer shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against Buyer or any of its affiliates, predecessors, successors, or assigns or any of its current and former members, officers, directors, employees, managed funds, investment advisors, attorneys,

employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the China Purchased Assets. In connection with the foregoing, actions that are barred hereby include, without limitation: (i) the commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment, collection, or recovery of any judgment, award, decree or order, (iii) the creation, perfection, or enforcement of any Lien, Claim, interest, or encumbrance, (iv) the assertion of any right of setoff, subrogation, recoupment, reversion, assignment or specific performance of any kind, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Sale Order, any actions contemplated or taken in respect hereof, or the Xuanzhu Sale Agreement, and (vi) the revocation, termination or failure or refusal to renew any Governmental Authorization or other license, permit, registration, or governmental authorization or approval to operate any of the China Purchased Assets or conduct the businesses associated with the China Purchased Assets. Following the Closing Date, no Person that was the holder of a Lien on, in or against any of the China Purchased Assets prior to the Closing Date shall interfere with Buyer's title to, license of, or use and enjoyment of the China Purchased Assets based on or related to such Lien, or any actions that the Debtor may take in the Debtor's case.

24.    **No Bulk Sales; No Brokers**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale or the other transactions contemplated under the Xuanzhu Sale Agreement or this Sale Order. Other than Cassel, no broker, finder, or financial advisor was involved in consummating the Sale or the other transactions, and, other than any commissions to which Cassel may be entitled under the order of this Court approving Cassel's engagement (the "Cassel Order"), no commissions are due to any person or entity in

connection with the Sale or the other such transactions.  Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale or the other transactions based upon any arrangement made by or on behalf of the Debtor; *provided*, that, to the extent applicable, the Debtor is authorized to apply proceeds of the Sale to the fees and expenses of Cassel in accordance with the Cassel Order including, without limitation, any provisions in such order regarding determination of the value of any consideration received by the Debtor.

25.    **Fees and Expenses; Indemnity**.    Any amounts payable or otherwise reimbursable by the Debtor under the Xuanzhu Sale Agreement or any of the documents delivered by the Debtor in connection with the Xuanzhu Sale Agreement shall be paid under the terms of and in the manner provided in the Xuanzhu Sale Agreement without further order of the Bankruptcy Court, as an allowed administrative claim in an amount equal to such payment in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall not be discharged, modified, or otherwise affected by any reorganization plan for the Debtor, except by written agreement with Buyer or its successors or assigns (such agreement to be provided in Buyer's or its successor's or assign's respective sole discretion).

26.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Xuanzhu Sale Agreement, the Stipulation or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtor and Buyer that the Xuanzhu Sale Agreement, the Stipulation and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order.  Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

27.     **No Waiver of Rights Under the DIP Loan Documents and Prepetition Loan Documents**.  Nothing in this Sale Order shall be deemed to waive, release, extinguish, or estop the Debtor, its estate or its creditors from asserting, or impairing or diminishing such rights to assert, any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Excluded Asset or other assets of the Debtor remaining after the completion of the Closing.  Notwithstanding the requirement in paragraph 46(b) of the order of the Bankruptcy Court approving the Debtor's post-petition financing (the "DIP Order") that proceeds be distributed within five (5) business days, all proceeds from the consummation of the Sale shall be put into an escrow account until the distribution of such Sale proceeds is determined among the DIP Lender, Committee and Debtor or upon further order of the Court.  Subject to the agreement of the foregoing parties, any distribution may be made to the DIP Lender and/or to the GUC Reserve (as defined in the DIP Order) without further order of the Court.  Nothing in this Sale Order shall (i) be deemed a waiver of the rights and remedies of the DIP Lender under the DIP Credit Agreement, any documents relating thereto, or the DIP Order; (ii) affect in any way the validity, perfection, priority or enforcement of the liens and claims granted to the DIP Lender under or pursuant to the DIP Credit Agreement and DIP Order; or (iii) affect or limit in any way the validity, perfection, priority or enforcement of the Prepetition Loan Liens, the Prepetition Loan Obligations, the Prepetition Loan Collateral (each as defined in the DIP Order), or the Adequate Protection Liens, Adequate Protection Obligations, Adequate Protection Claims, (each as defined in the DIP Order) or any other rights and protections granted to the Prepetition Lender under the Prepetition Loan Agreement (as defined in the DIP Order) and the DIP Order, all of which shall attach to the proceeds of the Sale.  Notwithstanding anything to the contrary in the Bidding Procedures, Bidding Procedures Order, DIP Loan

Agreement, or DIP Order, the Sale approved pursuant to this Sale Order must be closed by no later than January 10, 2020.

28.   **Certain Actions and Claims**.   Notwithstanding anything to the contrary contained in the Xuanzhu Sale Agreement, Buyer shall not receive any claims and/or causes of actions under chapter 5 of the Bankruptcy Code that may be related to the China Purchased Assets, the Debtor's Professionals retained in the Chapter 11 Case, the DIP Lender or Prepetition Lender (each, as defined in the DIP Order), or otherwise, nor shall Buyer receive any claims and/or causes of action relating to the Debtor's prior efforts to sell the China Purchased Assets in this Chapter 11 Case.

29.   **Reservation of Rights**.   Notwithstanding anything to the contrary in this Sale Order or the Stipulation, each of the Debtor, Cipla and Xuanzhu expressly reserves all of the respective claims, rights at law and/or equity, entitlements, remedies, causes of action and/or defenses that it has or may have with respect to the Auction, the Cipla Sale Documents, the License Agreement, and/or actions or inactions that any of the other parties have taken, may take or will seek to take in the future with respect to the Debtor or its assets during the course of this Chapter 11 Case.

30.   **Binding Order**.   This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtor, Buyer, and, as it relates to the Stipulation, Cipla, and their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's estate or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of the Debtor (whether known or unknown), all Governmental Authorities, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state, and

local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the China Purchased Assets. The Xuanzhu Sale Agreement, the Stipulation and the Sale shall not be subject to rejection or avoidance under any circumstances. This Sale Order, the Stipulation and the Xuanzhu Sale Agreement shall inure to the benefit of the Debtor, its estates, its creditors, Buyer and their respective successors and assigns.

31. **No Stay of Order**. The provisions of Bankruptcy Rules 6004 and 6006, and to the extent applicable under Bankruptcy Rules, Rules 54(b) and 62(a) of the Federal Rules of Civil Procedure, staying the effectiveness of this Sale Order for fourteen (14) days after the date of its entry, are hereby waived, and this Sale Order shall be fully effective and enforceable immediately upon entry and its provisions shall be self-executing. Any party desiring to appeal this Sale Order must exercise due diligence in filing an appeal, pursuing a stay and obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

32. **Lift of Automatic Stay**. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Bankruptcy Court, to allow Buyer to deliver any notice provided for in the Xuanzhu Sale Agreement and allow Buyer to take any and all actions permitted under the Xuanzhu Sale Agreement.

33. **Retention of Jurisdiction**. The Bankruptcy Court shall retain exclusive jurisdiction to (i) interpret, implement and enforce the terms and provisions of this Sale Order, the Xuanzhu Sale Agreement and the Stipulation, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in

all respects, (ii) decide any disputes concerning this Sale Order, the Xuanzhu Sale Agreement, the Stipulation or the rights and duties of the parties hereunder or thereunder or any issues relating to the Xuanzhu Sale Agreement, Stipulation and this Sale Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the China Purchased Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, and (iii) enforce the injunctions set forth herein.

34.    **Subsequent Plan Provisions**.   Unless otherwise provided herein, nothing contained in any chapter 11 plan confirmed in the Debtor's case or any order confirming any such plan or any other order in the Debtor's case (including any order entered after any conversion of this case into a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Xuanzhu Sale Agreement or this Sale Order and, to the extent of any such conflict, subject to paragraph 37, the terms of this Sale Order and the Xuanzhu Sale Agreement shall control.

35.    **Further Assurances**.  From time to time, as and when requested by the other, the Debtor and Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in Buyer its right, title and interest in and to the China Purchased Assets, subject to the provisions of the Xuanzhu Sale Agreement.

36.    **Provisions Related to Governmental Authorities**.  To the extent applicable, nothing contained in this Sale Order, the Xuanzhu Sale Agreement, the Stipulation and any other

documents implementing the Sale (collectively, the "Documents") shall: (i) authorize the sale, assignment or other transfer to Buyer of any agreements, grants, grant funds, licenses, permits, authorizations, contracts, leases, or other interests of the federal government (collectively, "Federal Interests"), without compliance by the Debtor and/or Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (ii) be interpreted to set cure amounts or require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (iii) affect the government's rights to offset or recoup any amounts due under, or relating to, the Federal Interests, or the rights of the Debtor or Buyer to assert all available defenses thereto, including, without limitation, that any or all such rights are barred under applicable non-bankruptcy law, each of which rights of the government, the Debtor and Buyer are hereby preserved; or (iv) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code).  In addition, nothing in the Documents (i) releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order or (ii) divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.  Notwithstanding the foregoing, nothing in this paragraph 36 shall be interpreted to require Buyer to assume any contracts, agreements or licenses that the Debtor had entered into with any Governmental Authority, including but not limited to the United States.  Without limiting the foregoing and for the avoidance of doubt, the Debtor's ownership rights to Intellectual Property developed under U.S. federally-funded grants and contracts are subject to the United States' rights under

applicable statutes, regulations and/or contracts governing the terms of such federal funding.  As used in this paragraph 36, the term "Intellectual Property" shall have the meaning ascribed to it in the Xuanzhu Sale Agreement; and the term "Inventory" shall mean any inventory of the Debtor, including, without limitation, finished goods, raw materials or work in process.  The term "Intellectual Property" shall also include "Subject Inventions" as defined under 48 C.F.R. § 27.301 and "Data" as defined under 48 C.F.R. § 27.401.  Such rights of the United States include, but are not limited to, nonexclusive, nontransferable, irrevocable, paid up licenses to practice, or have practiced for or on its behalf, the Intellectual Property throughout the world, as provided by contracts between the United States and the Debtor.  Such rights of the United States shall also include licenses to data developed and/or funded by the United States under federally-funded contracts between the United States and the Debtor.  To the extent that the contracts between the United States and the Debtor granted the United States any property rights in any of the Debtor's Inventory pursuant to F.A.R. 52.245-1, such rights are expressly preserved.  Additionally, the United States has rights to Intellectual Property developed by the Debtor under the Bayh-Dole Act, 35 U.S.C. §§ 200-212, as implemented by 37 C.F.R. Part 401.  Nothing in the Documents shall waive, alter, or otherwise limit the United States' rights to the Intellectual Property and Inventory referenced in this paragraph.

37.  **Governing Terms**.  Unless otherwise provided herein, to the extent this Sale Order is inconsistent with any prior order or pleading in this Chapter 11 Case, or the terms of the Xuanzhu Sale Agreement (including all ancillary documents executed in connection with the Xuanzhu Sale Agreement), this Sale Order shall govern.

38.    **Headings**.  The headings in this Sale Order are for purposes of reference only and shall not limit or otherwise affect the meaning of the Sale Order.

Wilmington, Delaware

**Dated: January 9th, 2020 Wilmington, Delaware**                    **BRENDAN L. SHANNON UNITED STATES BANKRUPTCY JUDGE**