# EXHIBIT B

**Stipulation**

| | |
|---|---|
| In re | Chapter 11 |
| **Achaogen, Inc.**, | Case No. 19-10844 (BLS) |
| Debtor.[1] | |

**STIPULATION
AMENDING THE CIPLA SALE DOCUMENTS**

The (i) debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), (ii) Cipla USA Inc. ("Cipla"), and (iii) Xuanzhu (HK) Biopharmaceutical Limited ("Xuanzhu" and together with the Debtor and Cipla, the "Parties"), by and through their undersigned counsel, hereby enter into this stipulation (this "Stipulation") and stipulate and agree as follows:

**WHEREAS**, on April 15, 2019 (the "Petition Date"), the Debtor filed a motion for court approval of certain bidding procedures (the "Bidding Procedures") designed to maximize the value of substantially all of the Debtor's assets through an expedited sale process [D.I. 30]. By order entered on May 1, 2019 [D.I. 123] (the "Bidding Procedures Order"), the Court approved the Bidding Procedures for the purpose of soliciting the highest and best offers to purchase all or substantially all of the Debtor's assets.

**WHEREAS**, the Debtor learned that certain parties were interested in purchasing the Debtor's rights to ZEMDRI (Plazomicin) in different territories.

**WHEREAS**, in order to allow for a competitive bidding process where multiple parties could bid on different aspects of ZEMDRI (Plazomicin), the Debtor provided potential bidders

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this chapter 11 case is 548 Market Street, #70987, San Francisco, California 94104-5401.

with the option to (i) acquire the Debtor's global rights to ZEMDRI (Plazomicin) or (ii) obtain an exclusive, perpetual, royalty-free license for the rights to ZEMDRI (Plazomicin) in specific territories.

**WHEREAS**, the Debtor commenced an auction (the "Auction") for substantially all of its assets on June 3, 2019. At the conclusion of the Auction, the Debtor designated (i) Cipla as the Successful Bidder[2] for the global rights to ZEMDRI (Plazomicin) and the Debtor's assets related thereto, subject to a license of the China Assets (as defined below) (the "Global Rights") and (ii) Qilu Antibiotics Pharmaceutical Co., Ltd. ("Qilu") as the Successful Bidder for a license of the rights to ZEMDRI (Plazomicin) in the China Territory (as defined in the Cipla APA) and certain of the Debtor's assets related thereto (the "China Assets"). Additionally, the Debtor designated Cipla as the Back-up Bidder for the China Assets.

**WHEREAS**, in order to effectuate the license of the China Assets to Qilu by the Debtor, the Cipla Sale Documents (as defined below) provided that the Debtor, as licensor, would enter into a license agreement with Qilu—or, if requested by the Debtor, another third party—for the China Assets (the "License Agreement"), and that upon the payment by Qilu of a one-time licensing fee to the Debtor and the effectiveness of the License Agreement, the Debtor would immediately assign to Cipla, and Cipla would immediately assume, the rights and only those obligations of the Debtor, as licensor, under the License Agreement.

**WHEREAS**, the Debtor entered into an asset purchase agreement with Cipla dated as of June 20, 2019 (as amended, the "Cipla APA"), for the Global Rights (including the China Purchased Assets (as defined below)), subject to the Debtor's right to license the China Assets.

---

[2] Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Bidding Procedures, Bidding Procedures Order or Cipla Sale Documents (each as defined below), as applicable.

2

**WHEREAS**, on July 23, 2019, the Court entered an order approving the Cipla APA (the "Cipla Sale Order" and together with the Cipla APA, the "Cipla Sale Documents") [D.I. 371].

**WHEREAS**, both the Successful Bidder for the China Assets and the Backup Bidder for the China Assets thereafter failed to close the transactions regarding the sale and license of the China Assets.

**WHEREAS**, as discussed above, the terms of the Cipla Sale Documents provide the Debtor with the right to license the China Assets to a third party if the transactions with the Successful Bidder for the China Assets or Back-up Bidder for the China Assets do not close.

**WHEREAS**, in or about August 2019, Xuanzhu was contacted by the Debtor and advised that the transaction for the China Assets had not closed and that the Debtor was seeking to identify a party that would be interested in acquiring the China Assets if the Cipla transaction could be reversed. Xuanzhu then presented a written proposal to the Debtor to purchase the China Assets (and not to take a license of those assets), which led to the parties' negotiation and execution of a Letter of Intent dated October 15, 2019 ("LOI"); the entry by the Bankruptcy Court of an order on October 31, 2019 [D.I. 516] (the "LOI Order"), which approved certain provisions in the LOI, and the negotiation and entry into an asset purchase agreement (the "Xuanzhu APA") with Xuanzhu dated as of December 29, 2019, for the sale of the China Assets.

**WHEREAS,** by further orders entered on November 26, 2019 [D.I. 531] and December 19, 2019 [D.I. 545], the Bankruptcy Court approved an amendment of the LOI to extend the duration of the provisions approved by LOI Order until January 10, 2020.

**WHEREAS**, the Debtor will seek the approval by this Court of the Xuanzhu APA simultaneously with the filing of this Stipulation.

**WHEREAS**, in order to effectuate a sale of the China Assets to Xuanzhu, rather than a license as contemplated under the Cipla Sale Documents, the Parties have stipulated and agreed to amend the Cipla Sale Documents and all other documents, instruments and agreements executed and/or delivered in connection with the foregoing (together with the Cipla Sale Documents, the "Cipla Transaction Documents"), to rescind the transfer of the China Purchased Assets (as defined below) in accordance with the terms and conditions set forth in this Stipulation, and subject to entry of an order of the Court approving this Stipulation.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are incorporated into, and are material terms of, this Stipulation, and the covenants contained herein, the Parties stipulate as follows:

1. **Rescission of the Sale of the China Purchased Assets to Cipla, and Revesting of the China Purchased Assets in the Debtor**. Upon entry of an order approving the Xuanzhu APA (the "Sale Order") and the entry of an order (which may be the Sale Order) approving this Stipulation, and subject to the closing (the "Xuanzhu Closing") of the transactions under the Xuanzhu APA (all of the foregoing, the "Conditions"), then immediately prior to the Xuanzhu Closing the following shall be deemed automatically to have occurred as of that time:

    (a) The sale and transfer of the portion of the Purchased Assets (as defined in the Cipla APA) consisting of (i) the "China Intellectual Property" (including, without limitation, the "Company China IP Registrations", the "Company Owned China Intellectual Property" and the "Company Used China Intellectual Property") (as such terms are defined in the Xuanzhu APA)), and (ii) all other Purchased Assets relating only to the "China Plazomicin Business," other than the Excluded IP (each as defined in the Xuanzhu APA)

(all of the assets in the foregoing clauses (i) and (ii), collectively, the "China Purchased Assets") that occurred under the Cipla APA shall be rescinded in their entirety and shall have no further force or effect (the "China Purchased Assets Rescission").

(b) Notwithstanding anything to the contrary in this Stipulation or elsewhere, China Purchased Assets Rescission shall not include, and Cipla shall retain all rights, title and interest in, all Company Owned Intellectual Property (as defined in Cipla APA) and Company Used Intellectual Property (as defined in Cipla APA) that pertains to (i) only territories outside of the China Territory (as defined in the Xuanzhu APA); and/or (ii) more than one territory when at least one territory is outside the China Territory (as defined in the Xuanzhu APA) and at least one territory is inside the China Territory (as defined in the Xuanzhu APA).

(c) Notwithstanding anything to the contrary in this Stipulation or elsewhere, China Intellectual Property (as defined in the Xuanzhu APA) shall not include any right, title or interest in any Intellectual Property (as defined in Cipla APA) that pertains to (i) only territories outside of the China Territory (as defined in the Xuanzhu APA); and/or (ii) more than one territory when at least one territory is outside the China Territory (as defined in the Xuanzhu APA) and at least one territory is inside the China Territory (as defined in the Xuanzhu APA).

(d) Notwithstanding anything to the contrary in this Stipulation or elsewhere, China Intellectual Property (as defined in the Xuanzhu APA) shall

not include any right, title or interest in any Intellectual Property (as defined in the Cipla APA) that is required for Cipla to Exploit the Product (as such terms are defined in Cipla APA) outside of the China Territory (as defined in the Xuanzhu APA).

(e) To the extent that Cipla retains any Intellectual Property (as defined in the Cipla APA) rights as of the date hereof that are necessary for Xuanzhu to Exploit the Product (as such terms are defined in the Cipla APA) in connection with the China Plazomicin Business (as defined in the Xuanzhu APA) inside the China Territory, including under paragraphs 1(b), 1(c), and 1(d) hereunder, Cipla shall license those rights to Xuanzhu pursuant to the License and Mutual Support Agreement that will be executed by and between Cipla and Xuanzhu, and substantially in the form that was already agreed upon by such parties (the "Support Agreement"), which shall be a royalty-free, fully-paid, irrevocable, perpetual, and exclusive (even as to Cipla) license within the China Territory, subject to the provisions of the Support Agreement relating to transferability and sub-licensing as set forth therein.

(f) All legal and equitable right, title and interest in respect of the China Purchased Assets, and all proceeds and products thereof, shall vest in the Debtor free and clear of all Liens, Claims and Liabilities (as such terms are defined in the Cipla APA).

(g) Cipla shall have no further right, title or interest in or to the China Purchased Assets and the proceeds and products thereof.

2. **Effect of Stipulation**. Subject to the satisfaction of the Conditions, the Cipla Transaction Documents shall be deemed appropriately amended or otherwise modified to reflect the provisions and to effectuate the terms of this Stipulation, including, without limitation, the China Purchased Assets Rescission. Except as expressly provided in this Stipulation, the terms and provisions of the Cipla Transaction Documents shall remain in full force and effect. Except with respect to Sections 1(b)-1(e), in the event of any conflict between the terms of this Stipulation and the Support Agreement, the Support Agreement shall control.

3. **Stipulation Self-Executing**. Subject to the satisfaction of the Conditions, the provisions of this Stipulation authorizing the China Purchased Assets Rescission shall be self-executing, and the Debtor and Cipla are authorized but shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Stipulation.

4. **Representations and Covenants of Cipla**.

    (a) Cipla represents and warrants that (i) the transactions under the Cipla APA relating to the "China Purchased Assets" (as defined above) did not close; (ii) other than as expressly set forth in and subject to the Cipla Sale Order, prior to and as of the date of this Stipulation, and prior to and as of the entry of an order of the Bankruptcy Court approving this Stipulation: (x) Cipla held no right, entitlement, power or authority of any nature to use, sell, assign, convey, or transfer such China Purchased Assets or any right, title or interest in the China Purchased Assets, or to cause or suffer to exist any Lien, Claim or Liability (as defined in the Xuanzhu APA) on or in respect of such China Purchased Assets, and (y) did not exercise any right, entitlement, power or

7

authority concerning the China Purchased Assets.. For clarity, the representations and warranties under Paragraph 4(a)(ii) do not include Cipla's ongoing maintenance of Intellectual Property (as defined in the Cipla APA), including prosecution of patents and trademarks, as such maintenance is necessary in the ordinary course of business.

 (b) Cipla covenants and agrees that it shall not: (i) take or fail to take any action that would make any of the representations and warranties set forth in Article III of the Xuanzhu APA inaccurate with respect to the China Purchased Assets (as defined above), and (ii) purport to sell, assign, convey or transfer any right, title or interest in such China Purchased Assets or purport to cause or suffer to exist any Lien, Claim or Liability (as defined in the Xuanzhu APA) on or in respect of such China Purchased Assets.

 (c) Other than the representation and warranties in sections 4(a) and 4(b) above, Cipla makes no other representations and warranties on any kind, including with respect to the China Purchased Assets.

5. **Further Assurances**. Upon the request of the Debtor or Xuanzhu, Cipla will execute such documents, instruments and agreements as the requesting party may reasonably require for carrying out the intent of this Stipulation and the transactions contemplated hereby. At the Xuanzhu Closing, Cipla will execute and deliver an assignment of intellectual property agreement in a form substantially similar to Exhibit A attached hereto.

6. **Reservation of Rights**. Notwithstanding anything in this Stipulation, each of the Debtor, Cipla and Xuanzhu expressly reserves all of the respective claims, rights at law and/or equity, entitlements, remedies, causes of action and/or defenses that it has or may have with

respect to the Auction, the Cipla Sale Documents, the License Agreement, and/or actions or inactions that any of the other Parties have taken, may take or will seek to take in the future with respect to the Debtor or its assets during the course of this chapter 11 case.

7. **Amendments**.  This Stipulation may not be amended or modified other than by a signed writing executed by all of the Parties or by further order of the Court.

8. **Effectiveness**.  This Stipulation is subject to entry of an order of the Court approving this Stipulation and shall be effective immediately upon entry of such an order.

9. **Governing Law**.  This Stipulation shall be governed by, construed and enforced in accordance with the laws of the state of Delaware, without regard to conflicts of law principles thereof.

10. **Jurisdiction**.  The Court shall retain jurisdiction to hear and determine all matters arising from or related to the construction, performance, enforcement or implementation of the terms of this Stipulation.

11. **Counterparts**.  The Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  A signature transmitted by facsimile or email pdf shall be deemed an original signature for purposes of this Stipulation.

*[remainder of page left intentionally blank]*

**IN WITNESS WHEREOF** and in agreement herewith, subject to approval by the Court, the Parties, by and through their undersigned counsel, have executed and delivered this Stipulation as of the date first set forth below.

Dated: December 29, 2019

| | |
|---|---|
| **MORRIS, NICHOLS, ARSHT & TUNNELL LLP** | **KELLEY DRYE & WARREN LLP** |
| | |
| *Paige N. Topper* | *Benjamin D. Feder* |
| Derek C. Abbott (No. 3376) | James S. Carr |
| Andrew R. Remming (No. 5120) | Benjamin D. Feder |
| Matthew O. Talmo (No. 6333) | 101 Park Avenue |
| Paige N. Topper (No. 6470) | New York, NY 10178 |
| 1201 N. Market Street, 16th Floor | Telephone: (212) 808-7800 |
| P.O. Box 1347 | Facsimile: (212) 808-7897 |
| Wilmington, Delaware 19899-1347 | Email: JCarr@kelleydrye.com |
| Telephone: (302) 658-9200 | bfeder@kelleydrye.com |
| Facsimile: (302) 658-3989 | |
| Email: dabbott@mnat.com | *Counsel to Cipla USA Inc.* |
| aremming@mnat.com | |
| mtalmo@mnat.com | |
| ptopper@mnat.com | |
| | **PRYOR CASHMAN LLP** |
| - and - | |
| | *Richard Levy, Jr.* |
| **HOGAN LOVELLS US LLP** | Richard Levy, Jr. |
| Richard L. Wynne | 7 Times Square |
| Erin N. Brady | New York, NY 10036 |
| Christopher R. Bryant | Telephone: (212) 421-4100 |
| John D. Beck | Facsimile: (212) 3126-0806 |
| 1999 Avenue of the Stars, Suite 1400 | Email: rlevy@pryorcashman.com |
| Los Angeles, California 10017 | |
| Telephone: (310) 785-4600 | *Counsel to Xuanzhu (HK)* |
| Facsimile: (310) 785-4601 | *Biopharmaceutical Limited* |
| Email:richard.wynne@hoganlovells.com | |
| erin.brady@hoganlovells.com | |
| chris.bryant@hoganlovells.com | |
| john.beck@hoganlovells.com | |
| | |
| *Counsel to the Debtor and Debtor in Possession* | |

**EXHIBIT A**

# INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

**THIS INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT** (this "Assignment"), effective as of _____, 2020 (the "Effective Date"), is by and between Achaogen, Inc., a Delaware corporation ("Assignee") and Cipla USA Inc., a Delaware corporation ("Assignor" and with the Assignee, the "Parties").

**W I T N E S S E T H:**

WHEREAS, pursuant to the terms and subject to the conditions of the asset purchase agreement, dated June 20, 2019, as amended (the "Cipla APA"), between Assignee and Assignor, Assignee sold to Assignor the Purchased Assets (as defined in the Cipla APA), including the China Purchased Assets (as such term is defined in the Rescission Stipulation referred to below);

WHEREAS, the Parties and Xuanzhu (HK) Biopharmaceutical Limited ("Xuanzhu") entered into the *Stipulation and Agreed Order Amending the Cipla Sale Documents* (the "Rescission Stipulation") before the United States Bankruptcy Court for the District of Delaware which provides for the rescission of the sale of China Purchased Assets under the Cipla APA and related Sale Order, subject to the satisfaction of the Conditions (as defined in the Rescission Stipulation);

WHEREAS, in accordance of the terms of the Rescission Stipulation, Assignor agrees to assign, convey, deliver and transfer, free from all encumbrances except those encumbrances that already existed at the time Assignee sold to Assignor the Purchased Assets (as such term is defined in the Cipla APA), the entire right, title and interest in, to and under all of the China Intellectual Property (as defined in the Xuanzhu APA) included in the China Purchased Assets, including the China Intellectual Property set forth on Exhibit A hereto (the "China Assigned IP"), to Assignee and Assignee desires to acquire the entire right, title and interest in, to and under such China Assigned IP. For the avoidance of doubt, China Assigned IP includes the patent and trademark applications listed on Exhibit A as well as any application(s) for patent(s) or trademark(s) of the China Territory (as defined in the Rescission Stipulation) claiming priority to, and/or the benefit of, these applications, including any substitute application(s), division(s), continuation(s), continuation(s)-in-part, national or regional phase applications, and any patent(s) or trademark(s) of the China Territory that may be granted for or on any application for patent(s) or trademark(s), including any reissue(s), reexamination(s), revival(s), renewal(s) and extension(s) of said patent(s) or trademark(s), but only to the extent such applications relate only to the China Territory.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and subject to the terms and conditions therein, the parties hereto, intending to be legally bound, hereby agree as follows:

1. Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to such terms in the Rescission Stipulation, as applicable.

2. Notwithstanding anything to the contrary in this Assignment, China Assigned IP shall not include any rights associated with the trademark to, copyright to, or symbol associated with the word "ZEMDRI" in any fashion outside the China Territory.

3. Assignor hereby irrevocably assigns, conveys, delivers and transfers to Assignee the entire right, title and interest in, to and under, free from all encumbrances except those encumbrances that already existed at the time Assignee sold to Assignor the Purchased Assets (as defined in the Cipla APA), (i) the China Assigned IP, together with all goodwill associated therewith, in each case to be held and enjoyed by Assignee for its own use and enjoyment as fully and entirely as the same would have been held and enjoyed by Assignor if this assignment had not been made, including the right to file applications for patent(s) or trademark(s) of the China Territory (ii) all rights to sue, claim and recover for past, present and future infringement, misappropriation, dilution or other violation of any China Assigned IP, and (iii) all income, royalties, damages and payments now or hereafter due or payable with respect to any of the foregoing.

4. Concurrent with the execution of this Assignment, Assignor shall transfer any and all domain names and social media accounts, as well as any trade dress, copyrights in artwork, labels, packaging, and patient information leaflets, included in the China Assigned IP from Assignor's account to Assignee's account (such that Assignee will be listed as the registrant and/or owner of such domain names and social media accounts in the applicable registrar) and shall deliver to Assignee all necessary Auth-Info codes and all other required passwords necessary to unlock and control such domain names and social media accounts.

5. Upon the reasonable request by Assignee, Assignor shall execute all documents and take all actions as may be necessary or desirable to enable Assignee (or its Affiliate(s), as applicable) to prosecute, perfect, enforce, defend, register and/or record its right, title and interest in, to and under the China Assigned IP, in each case, without further compensation but at the expense of Assignee.

6. Assignor hereby authorizes and requests the officials of any intellectual property registration office in the China Territory to record and register Assignee (or its Affiliate(s), as applicable) as assignee and owner of the entire right, title and interest in, to and under the China Assigned IP.

7. As soon as practicable after execution of this Assignment, Assignor shall, at the cost and expense of the Assignee, use diligent efforts to support transition of the assigned intellectual property from Assignor to Assignee. Assignor shall also use diligent efforts to instruct any inventors and other employees who are under control of the Assignor to cooperate with the Assignee in furtherance of the activities contemplated in this Assignment, including as appropriate any signatures, oaths, or declarations Assignee may request to file, prosecute, record, or transfer of the China Assigned IP and to cooperate with and assist the Assignee in any litigation or other legal proceedings involving the China Assigned IP.

8. This Assignment shall be governed by, and construed in accordance with, the laws of the State of Delaware without regard to the choice of law principles thereof. This Assignment is binding upon, and inures to the benefit of, the parties hereto and their respective

legal representatives, successors and assigns.  No waiver, modification or change of any provision of this Assignment shall be valid unless in writing and signed by the party against whom such claimed waiver, modification or change is sought to be enforced.

9. This Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Assignment delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Assignment.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto, through their authorized representatives, have caused this Assignment to be duly executed and delivered as of the Effective Date.

**AS ASSIGNEE:**

**ACHAOGEN, INC.**

By: _____
Name:
Title:

STATE OF _____ )
                            ) ss
COUNTY OF _____ )

On the ____ day of _____, ____, before me personally came _____, who is personally known to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and did depose and say to me that he or she executed the same in his or her capacity as _____ of _____, the entity described in and which executed the foregoing instrument, and that he or she executed and delivered said instrument pursuant to authority given by the board of directors of such entity (or other applicable authority of such entity).

                                                         _____
                                                         Notary Public

(PLACE STAMP AND SEAL ABOVE)

*[Signature Page to Intellectual Property Assignment-China Purchased Assets]*

IN WITNESS WHEREOF, the parties hereto, through their authorized representatives, have caused this Assignment to be duly executed and delivered as of the Effective Date.

**AS ASSIGNOR:**

**CIPLA USA INC.**

By:
_____
Name:
Title:

| | |
|---|---|
| STATE OF _____ | ) |
|  | ) ss |
| COUNTY OF _____ | ) |

On the ____ day of _____, ____, before me personally came _____, who is personally known to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and did depose and say to me that he or she executed the same in his or her capacity as _____ of _____, the entity described in and which executed the foregoing instrument, and that he or she executed and delivered said instrument pursuant to authority given by the board of directors of such entity (or other applicable authority of such entity).

_____
Notary Public

(PLACE STAMP AND SEAL ABOVE)

*[Signature Page to Intellectual Property Assignment-China Purchased Assets]*

**EXHIBIT A**

**CHINA ASSIGNED IP**

## I. **PATENTS**

| Country | Application No./Filing Date | Publication No. | Registration No./Issue Date | Title/Mark | Assignee | Case Status |
|---|---|---|---|---|---|---|
| China | 200880117193.1 11/21/2008 | 101868472A | ZL 200880117193.1 05/29/2013 | ANTIBACTERIAL AMINOGLYCOSIDE ANALOGS | Achaogen, Inc. | Registered |
| Hong Kong | 11101563.2 11/21/2008 | 1147499 | HK1147499 01/26/2018 | ANTIBACTERIAL AMINOGLYCOSIDE ANALOGS | Achaogen, Inc. | Registered (via EP) |
| Taiwan | 097145246 11/21/2008 | 200927146 | I425947 02/11/2014 | ANTIBACTERIAL AMINOGLYCOSIDE ANALOGS | Achaogen, Inc. | Registered |
| China | 201310142186.X 11/21/2008 | 103360440A | ZL 201310142186.X 08/31/2016 | ANTIBACTERIAL AMINOGLYCOSIDE ANALOGS | Achaogen, Inc. | Registered |
| China | 201080031078.X 05/14/2010 | 102481307A | ZL 201080031078.X 08/24/2016 | TREATMENT OF KLEBSIELLA PNEUMONIAE INFECTIONS WITH ANTIBACTERIAL AMINOGLYCOSIDE COMPOUNDS | Achaogen, Inc. | Registered |
| Hong Kong | 12111406.1 05/14/2010 | 1170663 | 1170663 11/17/2017 | TREATMENT OF KLEBSIELLA PNEUMONIAE INFECTIONS WITH ANTIBACTERIAL AMINOGLYCOSIDE COMPOUNDS | Achaogen, Inc. | Registered |
| Macau | J/002404(132) 05/14/2010 | | J/002404 01/24/2017 | TREATMENT OF KLEBSIELLA PNEUMONIAE INFECTIONS WITH ANTIBACTERIAL AMINOGLYCOSIDE COMPOUNDS | Achaogen, Inc. | Registered |
| China | 201610573991.1 05/14/2010 | 106188175A | | TREATMENT OF KLEBSIELLA PNEUMONIAE INFECTIONS WITH ANTIBACTERIAL AMINOGLYCOSIDE COMPOUNDS | Achaogen, Inc. | Pending |
| Hong Kong | 17105427.3 05/14/2010 | 1231886A | | TREATMENT OF | Achaogen, Inc. | Pending |

| Country | Application No./Filing Date | Publication No. | Registration No./Issue Date | Title/Mark | Assignee | Case Status |
|---|---|---|---|---|---|---|
| Taiwan | 107136676 10/18/2018 | 201922233 6/16/2019 | | KLEBSIELLA PNEUMONIAE INFECTIONS WITH ANTIBACTERIAL AMINOGLYCOSIDE COMPOUNDS SYNTHESIS OF ANTIBACTERIAL AMINOGLYCOSIDE ANALOGS | Achaogen, Inc. | Pending |
| Taiwan | 106126088 8/2/2017 | 201815826 5/1/2018 | | PLAZOMICIN ANTIBODIES AND METHODS OF USE | | Filed |

II. **TRADEMARKS**

No trademarks.

III. **COPYRIGHTS**

No registered copyrights.

IV. **REGISTERED DOMAINS**

| Domain Name |
|---|
| enrezovi.tw |
| zemdri.tw |
| enrezovi.cn |
| xemdro.cn |
| xemdro.tw |
| zemdri.cn |