**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br>**Achaogen, Inc.**,<br>     Debtor.[1] | Chapter 11<br><br>Case No. 19-10844 (BLS)<br><br><u>Hearing Date:</u><br>February 12, 2020 at 10:30 a.m. (ET)<br><br><u>Objection Deadline:</u><br>February 4, 2020 at 4:00 p.m. (ET) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER
PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 9019 APPROVING THE SETTLEMENT AGREEMENT
BETWEEN THE DEBTOR AND QILU ANTIBIOTICS PHARMACEUTICAL CO.**

The above-captioned debtor and debtor in possession (the "<u>Debtor</u>") hereby moves (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "<u>Proposed Order</u>"), pursuant to section 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"): (i) approving the Settlement Agreement (the "<u>Settlement Agreement</u>") by and between the Debtor and Qilu Antibiotics Pharmaceutical Co. ("<u>Qilu</u>" and with the Debtor, the "<u>Parties</u>") which is annexed hereto as **Exhibit B**; and (ii) granting the Debtor such other and further relief as the Court deems just and proper. In support of this Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.  The United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 548 Market Street, #70987, San Francisco, CA 94104.

for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

3.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

**A.  General Background**

4.  On April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing this case (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Court").

5.  The Debtor has continued to operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors (the "Committee") was appointed on April 23, 2019. No trustee or examiner has been appointed in this Chapter 11 Case.

6. On the Petition Date, the Debtor filed a motion for court approval of certain bidding procedures (the "Bidding Procedures")[2] designed to maximize the value of substantially all of the Debtor's assets through an expedited sale process [D.I. 30]. By order entered on May 1, 2019 [D.I. 123] (the "Bidding Procedures Order"), the Court approved the Bidding Procedures for the purpose of soliciting the highest and best offers to purchase all or substantially all of the Debtor's assets.

7. Consistent with the terms of the Bidding Procedures Order, the following deadlines were set: (i) submission of bids for all or substantially all of the Debtor's assets by May 29, 2019 (the "Bid Deadline")[3] and (ii) an auction for all or substantially all of the Debtor's assets by no later than June 3, 2019.

8. Prior to the Bid Deadline, the Debtor learned that certain parties were interested in purchasing the Debtor's rights to ZEMDRI (Plazomicin) in different territories. In order to allow for a competitive bidding process where multiple parties could bid on different aspects of ZEMDRI (Plazomicin), the Debtor provided potential bidders with the option to (i) acquire the Debtor's global rights to ZEMDRI (Plazomicin) (the "Global Rights") or (ii) obtain an exclusive, perpetual, royalty-free license for the rights to ZEMDRI (Plazomicin) in specific territories. As such, the Debtor drafted a form asset purchase agreement and form license agreement (collectively, the "Auction Agreements") for interested bidders to review and comment on with the submission of their bids.

---

[2] Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Bidding Procedures, Bidding Procedures Order or Cipla Sale Documents (as defined below), as applicable.

[3] The bid deadline was ultimately extended to May 30, 2019 with the consent of the Debtor, the Committee and Silicon Valley Bank, N.A. (the "DIP Lender").

9. As of the Bid Deadline, the Debtor received nine (9) bids, some of which were for substantially all of its assets, and others for only certain assets. The Debtor, in consultation with the DIP Lender and the Committee, recognized that certain of the potential bids included modifications to the Auction Agreements that were unacceptable to the Debtor. At the same time, however, the Debtor did not wish to chill bidding by not qualifying certain bids as Qualified Bids.

10. Qilu submitted a bid for the Debtor's assets by the Bid Deadline. Qilu's bid included an offer of $1 million dollars for the licensing rights to develop, commercialize and manufacture the compound and the product of ZEMDRI (Plazomicin) in the China Territory[4] under certain intellectual property and technology controlled by the Debtor. In advance of the Auction, the Debtor and Qilu were unable to agree on a mutually acceptable license agreement. Qilu participated in the Auction with the understanding that if its bid was selected as the Successful Bid, Qilu and the Debtor would need to further negotiate a mutually acceptable license agreement.

11. The Debtor commenced the auction (the "<u>Auction</u>") for substantially all of its assets on June 3, 2019. At the conclusion of the Auction, the Debtor designated (i) Cipla USA Inc. ("<u>Cipla</u>") as the Successful Bidder for the Global Rights (and the Debtor's assets related thereto) subject to a license for the China Assets (as defined below) and (ii) Qilu as the Successful Bidder for a license of the rights to ZEMDRI (Plazomicin) in the China Territory and certain of the Debtor's assets related thereto (the "<u>China Assets</u>").

---

[4] The "China Territory" refers to China, Hong Kong, Taiwan, and Macau.

12. On June 20, 2019, the Debtor entered into an asset purchase agreement with Cipla (as amended, the "Cipla APA") for the Global Rights, subject to the Debtor's right to license the China Assets.

13. On July 23, 2019, the Court entered an order approving the Cipla APA (the "Cipla Sale Order" and together with the Cipla APA, the "Cipla Sale Documents") [D.I. 371].

14. On July 29, 2019, Qilu informed the Debtor that it would not consummate the transaction for the China Assets. A few days later, the Back-up Bidder also informed the Debtor that it would not consummate a transaction for the China Assets.[5]

**B.    The Settlement Agreement**

15. The terms of the settlement between the Parties are embodied in the Settlement Agreement. Under the Settlement Agreement, which was the result of extensive, active, good-faith discussions and arms' length bargaining among the Parties, the Parties will be providing one another with mutual releases with respect to any and all existing and/or potential claims relating to or arising under Qilu's Successful Bid, the Auction, the Bidding Procedures, the Bidding Procedures Order, the Cipla Sale Documents and any other documents related thereto in exchange for certain consideration that is confidential. Accordingly, the Debtor is contemporaneously herewith filing a motion to file portions of the Settlement Agreement under seal. The Debtor, however, has shared the Settlement Agreement with professionals for the

---

[5] The Debtor designated Cipla as the Back-up Bidder for the China Assets. The Debtor expressly reserves all of the respective claims, rights at law and/or equity, entitlements, remedies, causes of action and/or defenses that it has or may have against Cipla with respect to, among other things, the Auction, Cipla Sale Documents, the License Agreement, and/or actions or inactions that Cipla has taken, may take or will seek to take in the future with respect to the Debtor or its assets during the course of this Chapter 11 Case.

Committee and DIP Lender, as well as the United State Trustee for the District of Delaware (the "U.S. Trustee").

## RELIEF REQUESTED

16. By this Motion, the Debtor respectfully requests entry of the Proposed Order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019: (a) approving the Settlement Agreement; and (b) granting the Debtor such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

17. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides:

> On motion of the trustee, after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

18. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). Courts in this District also have recognized that the approval of a proposed compromise

and settlement is committed to the sound discretion of the bankruptcy court. *See, e.g., In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

19. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. *In re Coram Healthcare Corp.*, 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." *Travelers Cas. & Sur. Co. v. Future Claimants Representative*, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing *Matter of Jasmine, Ltd.*, 258 B.R. 119 (D.N.J. 2000)); *see also In re Coram Healthcare Corp.*, 315 B.R. at 330.

20. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393.

21. A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350–51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of

the Bankruptcy Code.  *See id.*; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").  Courts normally defer to the debtor's business judgment so long as there is a legitimate business justification.  *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (holding that the trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

22. The Debtor respectfully submits that the Settlement Agreement satisfies the requirements of Bankruptcy Rule 9019.  The Settlement Agreement provides the Debtor, whose liquidity is limited, with funds for, among other things, the payment of its creditors, professionals and administrative expenses.  As the Court is aware, the Debtor has operated with liquidity restraints during the Chapter 11 Case.  Therefore, receiving the consideration under the Settlement Agreement will facilitate the Debtor's continued administration of the Chapter 11 Case.

23. Further, there is no certainty of a positive result when engaging in litigation.  Additionally, the Debtor has concerns about collection efforts if it were to receive a successful judgment against Qilu.  Therefore, taking into consideration the time, cost, expense and complexity of litigation, the Debtor has determined that entry into the Settlement Agreement will help avoid costs and delay, and bring finality and certainty to the present situation.

24. Moreover, the Debtor's entry into the Settlement Agreement is in the best interests of its creditors.  The funds that will become available to the Debtor upon this Court's approval of the Settlement Agreement will facilitate the administration of the Debtor's

bankruptcy case. Further, the Debtor will be able to obtain such funds on an expedited basis with the approval of the Settlement Agreement. Thus, the Debtor has determined that entry into the Settlement Agreement is beneficial to its estate.

25. Additionally, the Debtor submits that entry into the Settlement Agreement is a sound exercise of the Debtor's business judgement and the Settlement Agreement is fair, reasonable, and appropriate, and approval by the Court under section 363 of the Bankruptcy Code is warranted.

26. For the foregoing reasons, the Debtor respectfully requests entry of the Proposed Order approving the Settlement Agreement, which in the Debtor's business judgment is in the best interests of the Debtor, its estate, its creditors and other parties in interest.

## NOTICE

27. Notice of this Motion shall be provided to: (i) U.S. Trustee; (ii) counsel to Qilu; (iii) counsel to the Committee; (iv) counsel to the DIP Lender; and (v) any persons who have filed a request for notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

28. No prior request for the relief sought herein has been made by the Debtor to this Court or any other court.

WHEREFORE, for the reasons set forth above, the Debtor respectfully requests that the Court (i) enter an order substantially in the form of **Exhibit A** approving the Settlement Agreement, and (ii) grant the Debtor such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| January 21, 2020<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Matthew O. Talmo (No. 6333)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Tel.: (302) 658-9200<br>Fax: (302) 658-3989<br>dabbott@mnat.com<br>aremming@mnat.com<br>mtalmo@mnat.com<br>ptopper@mnat.com<br><br>- and -<br><br>Richard L. Wynne (CA 120349)<br>*Pro hac vice* admission pending<br>Erin N. Brady (CA 215038)<br>*Pro hac vice* admission pending<br>**HOGAN LOVELLS US LLP**<br>1999 Avenue of the Stars, Suite 1400<br>Los Angeles, California 90067<br>Telephone: (310) 785-4600<br>Facsimile: (310) 785-4601<br>richard.wynne@hoganlovells.com<br>erin.brady@hoganlovells.com<br><br>- and -<br><br>Christopher R. Bryant (NY 3934973)<br>*Pro hac vice* admission pending<br>John D. Beck (NY 4956280)<br>*Pro hac vice* admission pending<br>**HOGAN LOVELLS US LLP**<br>875 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 918-3000<br>Facsimile: (212) 918-3100<br>chris.bryant@hoganlovells.com<br>john.beck@hoganlovells.com<br><br>*Counsel for Debtor and Debtor in Possession* |