# **EXHIBIT 1**

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE AGREEMENT

This Settlement Agreement and Release Agreement (the "Settlement Agreement") is made as of January 20, 2020 (the "Effective Date"), by and between Achaogen, Inc. (the "Debtor"), and Qilu Antibiotics Pharmaceutical Co., Ltd. ("Qilu"). The Debtor and Qilu shall collectively be referred to herein as the "Parties."

## RECITALS

**WHEREAS**, on April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court");

**WHEREAS**, on the Petition Date, the Debtor filed *Debtor's Motion for (I) an Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures For the Sale of Substantially All Assets of Debtor; (B) Approving Procedures For the Assumption and Assignment, Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief; (II) An Order (A) Approving the Sale of the Debtor's Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* [Docket No. 30] (the "Bidding Procedures Motion");

**WHEREAS**, on May 1, 2019, the Court entered the *Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures For the Sale of Substantially All Assets of Debtor; (B) Approving Procedures For the Assumption and Assignment, Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief* [Docket No. 123] (the "Bidding Procedures Order");

**WHEREAS**, on June 3, 2019, the Debtor commenced the auction (the "Auction") for substantially all of its assets, which concluded on June 4, 2019. At the conclusion of the Auction, the Debtor designated Qilu as the successful bidder for certain licensing rights in China (the "Greater China Rights");

**WHEREAS**, the Debtor filed a *Notice of Completion of Auction and Selection of Successful Bidders* [Docket No. 266] (the "Auction Notice") on June 13, 2019. Pursuant to the Auction Notice, a hearing to approve the Greater China Rights transaction was scheduled for June 19, 2019;

**WHEREAS**, following the Auction, the Parties engaged in negotiations regarding a licensing agreement to memorialize Qilu's licensing of the Greater China Rights (the "Qilu License Agreement");

**WHEREAS**, the Qilu License Agreement was never finalized; and

**WHEREAS** in full and final satisfaction of any and all claims the Debtor may have against Qilu (if any), and any and all claims that Qilu may have against the Debtor (if any), the Parties have determined that it is in their respective best interests to enter into this Settlement Agreement and to effectuate a compromise and resolution on the terms set forth herein.

**NOW, THEREFORE,** in consideration of the representations, acknowledgements, promises, and covenants contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, each Party, hereby voluntarily, intentionally, and upon the advice and guidance of counsel, executes this Settlement Agreement and agrees as follows:

### TERMS OF AGREEMENT

1. <u>Recitals</u>. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. <u>Effectiveness</u>. This Settlement Agreement shall be effective and enforceable upon the Effective Date.

3. <u>Payment</u>. No later than fifteen (15) calendar days after entry of a final, non-appealable order by the Court approving the Settlement Agreement (the "<u>Payment Date</u>"), Qilu shall pay $625,000 to the Debtor by wire transfer (the "<u>Settlement Payment</u>"). For the avoidance of doubt, the Settlement Payment shall not include, and is separate from, the Sale Deposit (as defined below). Unless otherwise notified by the Debtor, the Settlement Payment shall be made by electronic transfer to the following account:

| | |
|---|---|
| Recipient: | Achaogen, Inc. |
| Receiving Bank: | Silicon Valley Bank |
| Address: | 3003 Tasman Drive, Santa Clara, CA 95054 |
| Receiving Bank ABA: | 121140399 |
| Swift Code: | SVBKUS6S |
| Account Name: | Operating |
| Account Number: | 3300374224 |

4. <u>Taxes</u>. Any applicable taxes imposed by the People's Republic of China associated with the Settlement Payment shall be born solely by Qilu. For the avoidance of doubt, any applicable taxes associated with the Settlement Agreement shall be paid directly by Qilu to the People's Republic of China.

5. <u>Good Faith Deposit</u>. Upon the Court's entry of an order approving this Settlement Agreement, in addition to the Settlement Payment, Qilu shall forfeit the $100,000 good faith deposit paid to the Debtor in connection with Qilu's bid for the Greater China Rights (the "<u>Sale Deposit</u>").

6. <u>Cooperation</u>. Upon execution of this Settlement Agreement, Qilu agrees to cooperate with the Debtor in response to the Debtor's reasonable requests for assistance in

2

litigation matters concerning Cipla USA Inc. ("Cipla") in connection with the Debtor's chapter 11 case, which reasonable requests must take into account Qilu's intention to avoid additional involvement, and to avoid incurring additional costs, in any litigation, potential litigation or any internal investigation or administrative, regulatory, judicial or quasi-judicial proceedings.

7. Release.  For good and valuable consideration, the Debtor and each of its subsidiaries, affiliates, and advisors expressly and generally releases, acquits, and discharges Qilu from any and all claims and causes of action whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that such parties (whether individually or collectively) ever had, now has, or may have, based on or relating to, or in any manner arising from, in whole or in part, any claim arising on or before the Payment Date (the "Debtor Release").  Qilu and each of its subsidiaries, affiliates, and advisors expressly and generally releases, acquits, and discharges the Debtor from any and all claims and causes of action whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that such parties (whether individually or collectively) ever had, now has, or may have, based on or relating to, or in any manner arising from, in whole or in part, any claim arising on or before the Payment Date (the "Qilu Release" and with the Debtor Release, the "Releases").

8. Confidentiality.  The Parties acknowledge and agree that the Settlement Payment, forfeiture of the Sale Deposit, and the Releases (collectively, the "Confidential Material") were agreed to in strict confidence and must remain confidential.  The Parties further acknowledge and agree that Silicon Valley Bank, N.A., the Official Committee of Unsecured Creditors and the U.S. Trustee for the District of Delaware (the "U.S. Trustee") (collectively, the "Consultation Parties") participated in the negotiation of this Settlement Agreement (or, in the case of the U.S. Trustee, is aware of such negotiations) between the Parties and are already aware of the Confidential Material.  The Parties, on behalf of themselves, their employees, agents, and attorneys, except as specifically permitted by this Settlement Agreement, shall keep the Confidential Material confidential and shall not admit, discuss, or announce the Confidential Material, whether in writing or orally, to any other person or entity directly or indirectly, unless compelled to do so by law or except as necessary to effectuate the terms of this Settlement Agreement; provided, that, prior disclosure of the Confidential Material to the Consultation Parties shall not be a breach of this paragraph 6 or this Settlement Agreement.  Notwithstanding the foregoing, each of the Parties may disclose generally that they have entered into an agreement settling any alleged claims and, further, may disclose terms of this Settlement Agreement upon any of the following: (i) the express written consent of each of the Parties to this Settlement Agreement; (ii) as required by an order of a court of competent jurisdiction; or (iii) to the extent disclosure is customary for the purposes of tax or regulatory reporting, for the purposes of obtaining or maintaining insurance coverage, or for the purpose of enforcing or remedying a breach of any term or provision of this Settlement Agreement. The representations and covenants in this paragraph are material to the Parties to this Settlement Agreement.  If either of the Parties are ever compelled, or sought to be compelled, to disclose the terms of this Settlement Agreement to any third parties other than those excepted above, such Party agrees to provide sufficient notice to the other Party immediately by electronic mail and overnight delivery to all counsel of record for the Parties, in order to permit any Party entitled to receive notice

under this Settlement Agreement the opportunity to object and, if necessary, to seek court protection to preserve the confidentiality of the Confidential Material.

9. **Court Approval**. The Debtor shall promptly file a motion with the Court, approved by Qilu in both form and substance, seeking a Court order approving this Settlement Agreement as well as a motion to seal the Confidential Material, and shall seek a prompt hearing on such motions upon regular notice at the next omnibus hearing after execution of this Settlement Agreement or other date as ordered by the Court. The Debtor shall use commercially reasonably efforts to ensure that (a) the Court enters an order approving the Settlement Agreement and (b) such order becomes a final, non-appealable order.

10. **Expenses**. Each Party shall be solely responsible for its own respective attorney's fees, costs, and expenses incurred in connection with this Settlement Agreement, as applicable.

11. **Entire Agreement**. This Settlement Agreement is the entire agreement among the Parties in respect of the subject matter hereof and shall not be modified, altered, amended, or vacated without the prior written consent of all Parties hereto. Oral modifications are not permitted. No statement made or action taken in the negotiation of this Settlement Agreement may be used by any Party for any purpose whatsoever.

12. **Bankruptcy Court Jurisdiction**. Each of the Parties agrees to submit to the exclusive jurisdiction of the Court for any action to enforce or interpret this Settlement Agreement.

13. **Representations and Warranties**. Each of the Parties specifically warrants and represents to the other Party that it has full authority to act for and to enter into this Settlement Agreement, and such Settlement Agreement constitutes a legal, valid, and binding obligation of the Parties. The Debtor specifically warrants and represents to Qilu that (i) the Debtor is the owner and holder of the alleged claims (if any); and (ii) the Debtor has not sold, assigned, or otherwise transferred the claims or any portion thereof or rights relating thereto to any third party. Qilu specifically warrants and represents to the Debtor that (i) Qilu is the owner and holder of the alleged claim (if any); and (ii) Qilu has not sold, assigned, or otherwise transferred the claim or any portion thereof or rights relating thereto to any third party. Each of the Parties specifically warrants and represents that it has been fully informed of its terms, contents, conditions, and effects regarding the same, that it has had a full and complete opportunity to discuss this Settlement Agreement, including the Settlement Payment and Releases, with its attorney or attorneys, that it is not relying in any respect on any statement or representation made by the other Party, and that no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

14. **No Admissions**. Neither this Settlement Agreement nor any discussions or proceedings relating to the Settlement Agreement is to be considered, interpreted or construed as an admission or acknowledgement by any Party of liability or fault by any Party to this Settlement Agreement or the liability or fault of any other party not a party to this Settlement Agreement. The Parties further acknowledge that this has been a contested negotiation in all respects and that the Settlement Agreement has been agreed to based primarily upon economic considerations and the desire to avoid further substantial expense and the inconvenience of

4

prospective litigation, is the result of a compromise and shall never at any time for any purpose be construed as an admission or acknowledgement by the Parties or others released herein of any liability or responsibility to any other Party to this Settlement Agreement, or an admission or acknowledgment related to the claims any Party may have against any other person. The Parties specifically disclaim any liability or responsibility to anyone based on the claims released herein.

15. Independent Legal Advice. Each Party acknowledges, represents, and warrants that (a) each Party hereto is of equal bargaining strength; (b) each Party has had the opportunity to obtain the advice of independent counsel and is signing the Settlement Agreement pursuant to the advice thereof; (c) each Party has actively participated in the drafting, preparation, and negotiation of this Settlement Agreement and this Settlement Agreement has been negotiated at arms' length by and among the Parties to this Settlement Agreement; (d) each Party has not relied upon the representations or advice of any other Party, or any attorney not its own; (e) each Party has received a copy of this Settlement Agreement, reviewed it, and understands the legal consequences of executing this Settlement Agreement; and (f) any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement, any portion hereof, or any amendments thereto, as each Party's counsel has cooperated in the drafting and preparation of this Settlement Agreement.

16. Non-Disparagement. The Parties, on behalf of themselves and each of their respective affiliates and representatives, agree that they will not make, publish, or communicate (or cause to be made, published or communicated) to any person or entity any public or private statement, whether in a pleading filed with the Court, a press release, a comment, or remark which in any way criticizes or otherwise disparages the other Party or their respective affiliates and representatives, the business, or the other Party's reputation, operations, products, or services; provided, however, that this covenant is not intended to restrict the Parties from truthfully cooperating in any governmental investigation. For the avoidance of doubt, the foregoing is also not intended to prevent the Debtor from publicly filing court papers that describe Qilu's role or participation in transactions involving Cipla.

17. Survival of Representations. The representations set forth herein shall survive the completion of all actions contemplated herein. Other provisions hereof which require action after the execution of the Settlement Agreement shall survive the execution hereof.

18. Governing Law. This Settlement Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware except with respect to any choice of law provision thereof that would require the application of the laws of any other state or jurisdiction.

19. Headings. The headings in this Settlement Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Settlement Agreement.

20. <u>Materiality</u>.  The statements, representations, and acknowledgments in this Settlement Agreement are not mere recitations; rather, they are understood and relied upon as part of this Settlement Agreement by the Parties and are material hereto.

21. <u>No Oral Agreements</u>.  This Settlement Agreement represents the final agreement between the Parties with respect to the subject matter contained herein and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements between the Parties.  This Settlement Agreement merges and supersedes all prior discussions, oral or written agreements, and understandings of every kind and nature among and between the Parties regarding the subject matter contained herein.

22. <u>Successors and Assigns</u>.  This Settlement Agreement shall be binding upon all successors and assigns of each of the Parties hereto, including, without limitation, any and all subsequently appointed bankruptcy trustees, receivers or fiduciaries of the Debtor of any kind.

23. <u>Signatures</u>.  Facsimile or other electronic copies of signatures on this Settlement Agreement are acceptable, and a facsimile or other electronic copy of a signature on this Settlement Agreement is deemed an original.

24. <u>Notice</u>.

If to Qilu:

> Qilu Antibiotics Pharmaceutical Co., Ltd.
> Attn: Yitian Yang, Legal Manager
> Email: yitian.yang@qilu-pharma.com
>
> *With a copy to*:
> Kirkland & Ellis International LLP
> Attention: Tiana Zhang
> E-mail address: tiana.zhang@kirkland.com
>
> - and -
>
> Kirkland & Ellis LLP
> Attention: Michael F. Williams, P.C., Anthony R. Grossi, and Alexander J. Nicas
> E-mail address: michael.williams@kirkland.com, anthony.grossi@kirkland.com, and alexander.nicas@kirkland.com

If to the Debtor:

> Achaogen, Inc.
> Attention: Nick Campbell, Chief Restructuring Officer
> E-mail:  nick@wearemeru.com
>
> *With copy to*:

6

Hogan Lovells US LLP
Attention: Erin N. Brady and John D. Beck
Email: erin.brady@hoganlovells.com, john.beck@hoganlovells.com

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized representatives effective as of the Effective Date.

**QILU ANTIBIOTICS PHARMACEUTICAL CO., LTD.**

Signature: _____王勇进_____ (signed)

Printed Name: __王勇进__ Yongjin Wang

Title: __总经理__ General Manager

Date: __2020.01.14__

**ACHAOGEN, INC.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

[*Signature Page to the Settlement Agreement*]

QL

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized representatives effective as of the Effective Date.

**QILU ANTIBIOTICS PHARMACEUTICAL CO., LTD.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**ACHAOGEN, INC.**

Signature: _____*/s/ Nicholas K Campbell*_____

Printed Name: __Nicholas K Campbell__

Title: __CRO__

Date: __1/12/20__

[*Signature Page to the Settlement Agreement*]