# **EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Achaogen, Inc., | ) | Case No. 19-10844 (BLS) |
| Debtor. | ) | |

# FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION JOINTLY PROPOSED BY ACHAOGEN, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ACHAOGEN, INC.

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Sally Veghte (DE Bar No. 4762)
919 Market Street, Suite 1000
Wilmington, Delaware 19801-3062

-and-

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Morton Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103

-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Arik Preis (admitted *pro hac vice*)
Mitchell P. Hurley (admitted *pro hac vice*)
One Bryant Park, Bank of America Tower
New York, New York 10036-6745

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Derek C. Abbott (DE Bar No. 3376)
Andrew R. Remming (DE Bar No. 5120)
Matthew O. Talmo (DE Bar No. 6333)
Paige N. Topper (DE Bar No. 6471)
1201 Market Street, 16th Floor
Wilmington, Delaware 19899-1347

-and-

**HOGAN LOVELLS US LLP**
Richard L. Wynne (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

Dated: ~~March 30,~~April 20, 2020

# INTRODUCTION

Achaogen, Inc., the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**") and the Official Committee of Unsecured Creditors of Achaogen, Inc. (the **"Creditors' Committee"**, and together with the Debtor, the **"Plan Proponents"**), hereby jointly propose the following plan of liquidation pursuant to the provisions of chapter 11 of the Bankruptcy Code.

For a discussion of the Debtor's history, businesses, properties, key contracts, and a summary and analysis of the Plan, stakeholders of the Debtor should review the Disclosure Statement filed with the Bankruptcy Court to which the Plan is attached. ALL CLAIMHOLDERS AND INTERESTHOLDERS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

The Plan provides for the wind down of the Debtor's affairs, continued liquidation and conversion of all of the Debtor's remaining assets to Cash and the distribution of the net proceeds realized therefrom, in addition to Cash on hand on the Effective Date of the Plan, to creditors holding Allowed Claims as of the Record Date in accordance with the relative priorities established in the Bankruptcy Code. The Plan does not provide for a distribution to holders of Subordinated Claims or Interests, and their votes are not being solicited. The Plan contemplates the appointment of a Plan Trustee to, among other things, finalize the wind down of the Debtor's affairs, resolve Disputed Claims, pursue any unreleased Causes of Action, implement the terms of the Plan and the Plan Trust Agreement, make Distributions to holders of Allowed Claims and administer the Plan Trust Assets.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a Claimholder until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Claimholders.

The Debtor and Creditors' Committee expressly reserve their respective rights to alter, amend or modify the Plan, one or more times, before its substantial consummation, subject to the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and otherwise set forth in this Plan.

**NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.**

# ARTICLE I

## A. Scope of Definitions

All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Article 1 of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

## B. Definitions

**1.1** **"Administrative Claim"** means a claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the businesses of the Debtor, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, (b) Professional Claims, and (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

**1.2** **"Administrative Tax Claim"** means an Administrative Claim for any tax of any kind specified in section 503(b)(1)(B) and (C) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code.

**1.3** **"Allowed Claim"** means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled in an unknown amount or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan. The amount of an Allowed Claim shall be the lesser of the amount stated in a proof of claim filed for such Claim (if less than the amount Scheduled for such Claim), the amount agreed to in a written settlement, or the amount allowed by a Final Order. All Distributions on account of an Allowed Claim will be made to the Claimholder of record on the Record Date.

**1.4** **"Allowed [ ] Claim"** means an Allowed Claim of the type described.

**1.5** **"Asset Sales"** means the sale of the Debtor's Assets pursuant to the separate orders approving the Heritage Sale Agreement [Docket No. 309], the Unity Sale Agreement [Docket No. 327] and the Cipla Plazomicin Sale Agreement [Docket No. 371] and

any other asset sales that may be approved by the Bankruptcy Court and consummated before the Effective Date.

1.6 **"Assumption Schedule"** means the schedule, attached as an exhibit to the Plan Supplement, listing the executory contracts and unexpired leases that will be assumed or assumed and assigned pursuant to the Plan.

1.7 **"Avoidance Actions"** means, unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, Causes of Action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Avoidance Actions.

1.8 **"Ballot"** means each of the ballot forms that are distributed with the Disclosure Statement to Claimholders with Claims in Classes that are impaired under the Plan and entitled to vote under Article IV hereof in connection with the solicitation of acceptances of the Plan.

1.9 **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

1.10 **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Case.

1.11 **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, (b) the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and (c) the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

1.12 **"Bar Date"** means the date or dates established by the Bankruptcy Court and/or Bankruptcy Rule 3002 by which Proofs of Claim must be filed.

1.13 **"Business Day"** means any day, excluding Saturdays, Sundays and legal holidays, on which commercial banks are open for business in Wilmington, Delaware.

1.14 **"Cash"** means U.S. currency, a certified check, cashier's check or wire transfer of good funds from any source.

1.15 **"Causes of Action"** means, unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights (including rights to legal remedies, equitable remedies, and payment), claims, cross claims, third-party claims, interests, damages, debts, judgments, demands, obligations, liabilities, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known, unknown, foreseen, unforeseen, existing, hereinafter arising, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, suspected, unsuspected, disputed, undisputed, secured, or unsecured, and whether asserted or

assertable directly or derivatively, arising before, on, or after the Petition Date, in contract, tort, law, equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or Chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim. For the avoidance of doubt, all Avoidance Actions and claims against, but not limited to, Cipla USA Inc., Vipragen Biosciences Private Ltd. or any of the foregoing entities' affiliates or subsidiaries are Causes of Action.

**1.16** **"Chapter 11 Case"** means the Debtor's bankruptcy case pending in the Bankruptcy Court as case number 19-10844 (BLS).

**1.17** **"Claim**" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.18** **"Claim Objection Deadline"** means, subject to extension, the date that is the first Business Day that is at least 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**1.19** **"Claims Agent"** means Kurtzman Carson Consultants LLC, the claims and noticing agent of the Debtor.

**1.20** **"Claimholder"** means a holder of a Claim.

**1.21** **"Class"** means a category of Claimholders or Interestholders described in Article II of the Plan.

**1.22** **"Committee Settlement"** means the settlement among Silicon Valley Bank (as DIP Lender and Prepetition Lender), the Committee, and the Debtor as approved and set forth in the DIP Order and as set forth on Exhibit A to the Plan.

**1.23** **"Confirmation Date"** means the date of entry of the Confirmation Order.

**1.24** **"Confirmation Hearing"** means the hearing before the Bankruptcy Court on confirmation of the Plan and related matters under section 1128 of the Bankruptcy Code.

**1.25** **"Confirmation Hearing Notice"** means the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the Confirmation Hearing and the time for filing objections to the confirmation of the Plan.

**1.26** **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming in all respects all of the provisions, terms and conditions of this Plan.

**1.27** **"Creditors' Committee"** means the Official Committee of Unsecured Creditors consisting of the Persons appointed to such Committee in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code and their appointed successors, as amended from time to time.

**1.28** **"Cure"** means with respect to the assumption and assignment of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, (a) the distribution of Cash by the Debtor at or before the closing of the sale pursuant to the Asset Sales, or (b) payment of Cash by the assignee, in an amount equal to all due and payable unpaid monetary obligations, without interest, under such executory contract or unexpired lease, or such other amount as may be agreed upon by the parties to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.29** **"Debtor"** shall have the meaning ascribed thereto in the Introduction.

**1.30** **"Deficiency Claim"** means, as to the DIP Lender or the Prepetition Lender, that portion of such Creditor's Allowed Secured Claim not paid or satisfied from the proceeds of any sale or other disposition of the Debtor's assets or return of such Secured Creditor's collateral; and, as to any other creditor asserting a Claim that is subject to a lien or security interest in property of the Estate, such Claim to the extent it is (a) rendered an unsecured claim by virtue of section 506(a) of the Bankruptcy Code and (b) otherwise determined to be an Allowed Claim.

**1.31** **"Defined Term"** means any capitalized term that is defined in this Section 1.1 of the Plan.

**1.32** **"DIP Facility"** means that senior secured and superpriority debtor-in-possession term loan facility provided pursuant to the DIP Credit Agreement and DIP Order.

**1.33** **"DIP Facility Claim"** means any Claim derived from, or based upon, relating to, or arising from, the DIP Credit Agreement.

**1.34** **"DIP Credit Agreement"** means the Senior Secured Superpriority Debtor-in-Possession Loan and Security Agreement governing the DIP Facility, dated as of April 15, 2019 between the Debtor and the DIP Lender (as amended, restated, supplemented or otherwise modified from time to time), as well as any other documents entered into in connection therewith.

**1.35** **"DIP Lender"** means Silicon Valley Bank as the lender that was a party to the DIP Credit Agreement.

**1.36** **"DIP Lender Cash"** means the Plan Trust Assets that must be distributed to Silicon Valley Bank, as DIP Lender and Prepetition Lender, in accordance with, and subject to, the terms of the Committee Settlement and Proceeds Stipulation.

**1.37** **"DIP Obligations"** all obligations owed by the Debtor to the DIP Lender on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Credit Agreement.

**1.38** **"DIP Order"** means the *Final Order (i) Authorizing Achaogen, Inc. to Obtain Postpetition Secured Financing, (ii) Granting Liens and Providing Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, and (vi) Granting Related Relief* [Docket No. 478] entered on September 24, 2019.

**1.39** **"Disallowed Claim"** means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order or (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date has been established, but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**1.40** **"Disclosure Statement"** means the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

**1.41** **"Disclosure Statement Approval Order"** means a Final Order approving, among other things, the Disclosure Statement.

**1.42** **"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, a Claim that (a) has not been Scheduled or is Scheduled by the Debtor as unknown or as contingent, unliquidated or disputed for which a proof of claim has been filed or (b) is the subject of an objection filed with the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

**1.43** **"Distribution"** means any distribution provided for in this Plan to holders of Allowed Claims in full or partial satisfaction of such Allowed Claims.

**1.44** **"Distribution Dates"** means collectively, the First Distribution Date, any Subsequent Distribution Date and the Final Distribution Date.

**1.45** **"Distribution Record Date"** or **"Record Date"** means the date that is two (2) Business Days after the entry of an order by the Bankruptcy Court approving the Disclosure Statement.

**1.46** **"Distribution Reserve"** means Cash from the Plan Trust in an amount equal to the Distribution or Distributions under applicable classes of Claims that the Plan Trustee shall be entitled to establish on account of Disputed Claims, which Cash will be held by the Plan Trustee pending allowance of Disputed Claims, and then distributed on account of Allowed Claims in accordance with Section 8.7(a) of the Plan. Notwithstanding anything to the contrary

herein, the DIP Lender Cash shall be paid to the Silicon Valley Bank, as DIP Lender and Prepetition Lender, within five (5) business days of receipt and shall not be subject to, or held in, the Distribution Reserve.

**1.47** **"Effective Date"** means the first Business Day on which the conditions precedent set forth in Sections 10.2 of this Plan have been satisfied or waived as provided in Section 10.3 of this Plan.

**1.48** **"Escrow Account"** means that certain account held with U.S. Bank National Association pursuant to an escrow agreement by and between the Debtor and U.S. Bank National Association dated as of May 24, 2019.

**1.49** **"Estate Assets"** means all of the right, title and interest of the Debtor in and to property of whatever type or nature (real, personal, mixed, tangible or intangible), including property of the Debtor's Estate.

**1.50** **"Estate"** means the bankruptcy estate of the Debtor arising pursuant to section 541 of the Bankruptcy Code.

**1.51** **"Exculpated Claim** means any Claim related to any act or omission in connection with, derived from, based upon, related to or arising from any Exculpated Parties' prepetition sale and restructuring efforts, postpetition sale and restructuring efforts, the Chapter 11 Case, including the negotiation, formulation, preparation or performance of the DIP Loan Facility, the Asset Sales, the sale and liquidation of assets, formulation, preparation, dissemination, negotiation, filing, confirmation, approval, implementation or administration of the Disclosure Statement, the Plan, the property to be distributed under the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation and consummation of the Plan and the administration and implementation of the Plan, or the Distribution of property under the Plan or any other related agreement.

**1.52** **"Exculpated Party"** means each of: (a) the Debtor, (b) the Debtor's Estate, and (c~~) the Plan Trustee, (d~~) the Creditors' Committee, and its members in their capacity as such, ~~and (e) Silicon Valley Bank in its capacity as Prepetition Lender and DIP Lender,~~ and with respect to clauses (a) through (~~e~~c) such entities' predecessors, participants, successors and assigns, subsidiaries, affiliates, beneficial owners, managed accounts or funds, current and former officers, directors, managers, principals, shareholders, direct and indirect equity holders, members, partners (general and limited), employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals.

**1.53** **"Exhibit"** means an exhibit annexed to the Plan.

**1.54** **"Face Amount"** means (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the Claimholder in any proof of claim filed with the Bankruptcy Court, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**1.55** **"Final Decree"** means the order entered pursuant to section 350, of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Case.

**1.56** **"Final Distribution Date"** means the date(s) on which a final Distribution is made to holders of Allowed Claims entitled to Distributions therefrom. The Final Distribution Date(s) shall be one or more dates, as determined by the Plan Trustee, which is after the liquidation into Cash of all Plan Trust Assets (other than those assets abandoned by the Debtor or the Plan Trustee, as applicable) and the collection of other sums due or otherwise remitted or returned to the Estate or Plan Trust.

**1.57** **"Final Order"** means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**1.58** **"First Distribution Date"** means with respect to a Claim that is Allowed as of the Effective Date, the Effective Date or the date that is as soon as reasonably practicable after the Effective Date.

**1.59** **"Future Cash Proceeds"** means all amounts as defined in the Committee Settlement created and maintained by the Debtor pursuant to the DIP Order until the Effective Date of the Plan, including the proceeds from the Debtor's sale of assets and the settlement with Qilu, as set forth in the Proceeds Stipulation, at which point all amounts of such Future Cash Proceeds and all Future Cash Proceeds received after the Effective Date shall be transferred to the Plan Trust (and applicable segregated accounts) and then distributed in accordance with the terms of the Committee Settlement, the Proceeds Stipulation and the Plan Trust Agreement.

**1.60** **"General Unsecured Claim"** means a Claim that is not an Administrative Claim, Priority Claim, or Secured Claim, but which, for the avoidance of doubt, excludes any Deficiency Claim of the DIP Lender and any Deficiency Claim of the Prepetition Lender.

**1.61** **"GUC Cash"** means those Plan Trust Assets, including those amounts in the GUC Reserve, that shall be distributed for the benefit of holders of General Unsecured Claims in accordance with, and subject to, the terms of the Committee Settlement, the Proceeds Stipulation and this Plan.

**1.62** **"GUC Reserve"** has the meaning given to it in the Committee Settlement.

**1.63** **"Identified Causes of Action"** means all Causes of Action and Third Party Claims identified in an exhibit to the Plan Supplement.

**1.64** **"Impaired"** refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

       **1.65**     **"Interest"** means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person or Entity in the Debtor, including all Restricted Stock Units, capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock or other ownership interests whether or not certificated, transferable, voting or denominated stock or a similar security.

       **1.66**     **"Interestholder"** means a holder of an Interest.

       **1.67**     **"Internal Revenue Code"** means the Internal Revenue Code of 1986, as amended.

       **1.68**     **"LC Collateral"** means all amounts held by the DIP Lender as collateral for the Debtor's reimbursement obligations arising from any letter of credit issued by Silicon Valley Bank in accordance with the terms thereof.

       **1.69**     **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

       **1.70**     **"Petition Date"** means April 15, 2019, which is the date on which the Debtor filed its petition commencing its Chapter 11 Case.

       **1.71**     **"Plan"** means the plan which is herein jointly proposed by the Debtor and Creditors' Committee, for the resolution of outstanding Claims and Interests in the Chapter 11 Case, as such plan may be amended or modified from time to time in accordance with the Bankruptcy Code and with the consent Creditors' Committee and the DIP Lender.

       **1.72**     **"Plan Supplement"** means the compilation of documents and forms of documents, schedules and Exhibits to the Plan to be filed on or before seven (7) days prior to the earlier of (a) the deadline for submission of ballots to vote to accept or reject a plan, or (b) the deadline to object to confirmation of the plan, unless otherwise ordered by the Court, which shall include (i) the Plan Trust Agreement, (ii) the Assumption Schedule and (iii) the Identified Causes of Action. The Plan Supplement shall be filed jointly by the Creditors' Committee and the Debtor with the consent of the DIP Lender, on notice to parties in interest, and with additional documents filed before the Effective Date as supplements or amendments to the Plan Supplement (all with the consent of the DIP Lender). Upon mutual agreement of the Debtor and Creditors' Committee, the documents contained in, and Exhibits to, the Plan Supplement may be amended through the Effective Date with the consent of the DIP Lender. Notwithstanding the foregoing,

the Plan Trust Agreement shall be in the form and substance acceptable to the Creditors' Committee and the DIP Lender.

**1.73** **"Plan Trust"** means the trust established for the benefit of the Plan Trust Beneficiaries on the Effective Date in accordance with the terms of the Plan and the Plan Trust Agreement which shall be a grantor, liquidating trust within the meaning of Treasury Regulation 301.7701-4(d).

**1.74** **"Plan Trust Agreement"** means the agreement substantially in the form Filed in the Plan Supplement establishing and delineating the terms and conditions of the Plan Trust.

**1.75** **"Plan Trust Assets"** means collectively and to the extent not otherwise paid in accordance with the Committee Settlement and the Proceeds Stipulation prior to the Effective Date, the Wind Down Reserve, the GUC Reserve, the Future Cash Proceeds, all Estate Assets as of the Effective Date, including Cash on hand of the Debtor, all Causes of Action, including Third Party Claims, and all other Estate Assets, together with all Proceeds of the liquidation of the Plan Trust Assets from any source.

**1.76** **"Plan Trust Beneficiaries"** means the holders of Plan Trust Interests.

**1.77** **"Plan Trust Expenses"** means, as further set forth in the Plan Trust Agreement, all reasonable and documented fees, expenses, and costs incurred by the Plan Trustee in connection with carrying out the obligations of the Plan Trust, including the maintenance or disposition of the Plan Trust Assets (including Plan Trustee fees, indemnity reserves, attorneys' fees, the fees of other professionals, and other Persons retained by the Plan Trustee, personnel-related expenses, and any taxes imposed on the Plan Trust or in respect of the Plan Trust Assets), and any other expenses incurred in accordance with the Plan Trust Agreement.

**1.78** **"Plan Trust Indemnified Parties"** means the Plan Trustee and its consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their respective capacity as such, and any of such Person's successors and assigns.

**1.79** **"Plan Trust Interests"** means the non-transferable, beneficial interests in the Plan Trust held by the Plan Trust Beneficiaries that shall entitle the holder thereof to receive distributions from the Plan Trust in accordance with the Committee Settlement.

**1.80** **"Plan Trustee"** means Person designated in the Plan Supplement by the Creditors' Committee and the DIP Lender for such position ~~in the Plan Supplement~~ or such other Person subsequently appointed as trustee for the Plan Trust in accordance with the Plan Trust Agreement.

**1.81** **"Prepetition Lender"** means Silicon Valley Bank, in its capacity as the lender under the Prepetition Term Loan Agreement, together with its successors and assigns.

**1.82 "Prepetition Term Loan Agreement"** means the Loan and Security Agreement by and between the Debtor and the Prepetition Lender, dated as of February 26, 2018 (as amended, restated, supplemented or otherwise modified from time to time).

**1.83 "Prepetition Term Loan Secured Claim"** means any and all amounts that are or were due and owing to the Prepetition Lender pursuant to the Prepetition Term Loan Agreement.

**1.84 "Priority Non-Tax Claim"** means any Claim other than an Administrative Claim or Priority Tax Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.85 "Priority Tax Claim"** means any Claim of a governmental unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code, and any secured tax claim arising under section 506(a) or 506(b) of the Bankruptcy Code.

**1.86 "Pro Rata"** means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

**1.87 "Proceeds"** means the proceeds of the liquidation of the Plan Trust Assets.

**1.88 "Proceeds Stipulation"** means the *Stipulation Modifying The Final DIP Order Regarding Distribution Of Certain Proceeds* [Docket No. 633-2] entered on March 23, 2020. A copy of the Proceeds Stipulation is attached hereto as **Exhibit B**.

**1.89 "Professional"** means a professional retained in the Chapter 11 Case pursuant to sections 327, 328 and 1103 of the Bankruptcy Code, or otherwise.

**1.90 "Professional Fee Claim"** means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date.

**1.91 "Professional Fee Claim Bar Date"** shall have the meaning set forth in Section 4.2(a) of the Plan.

**1.92 "Professional Fee Claim Escrow"** means an escrow account, consisting of the remainder of the Supplemental Carve-Out, as provided for in the Proceeds Order, funded by the Debtor or by the Plan Trustee, on the Effective Date, or as soon thereafter as possible and maintained by the Plan Trustee to pay unpaid Allowed Professional Fee Claims.

**1.93 "Professional Fee Order"** means an order or orders establishing procedures for the interim compensation for Professionals that has been or may be entered by the Bankruptcy Court.

**1.94** **"Record Date"** or "**Distribution Record Date**" means the date that is two (2) Business Days after the entry of an order by the Bankruptcy Court approving the Disclosure Statement.

**1.95** **"Related Parties"** means, with respect to any Person or Entity, such Person's or Entity's current and former members, managers, subsidiaries, affiliates, directors, officers, employees, agents, consultants, designees, attorneys, financial advisors, investment bankers, accountants, and other professionals or representatives, each in their capacity as such.

**1.96** **"Released Parties"** means, collectively, the following Entities, each in their capacity as such (a) the Debtor; (b) the Debtor's Estate; (c) the Creditors' Committee; (d) each member of the Creditors' Committee; (e) the Prepetition Lender; (f) the DIP Lender; and (g) the Related Parties of each of the foregoing. Notwithstanding anything to the contrary herein, none of Cipla USA Inc., Vipragen Biosciences Private Ltd., or any of the foregoing entities' affiliates or subsidiaries shall be Released Parties, and all claims the Debtor and its Estate may have against these entities are expressly preserved.

**1.97** **"Releasing Parties"** means, collectively, the following entities, each in their capacity as such (a) the Prepetition Lender; (b) the DIP Lender; (c) the Creditors' Committee; (d) Plan Trustee; (e) all holders of Claims that vote to accept or are deemed to accept the Plan; (f) all holders of Claims that abstain from voting on the Plan; (g) all holders of Claims that vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (h) all Released Parties; and (i) with respect to the Debtor, and each of the foregoing entities in clauses (a) through (h), such Entity and the Related Parties.

**1.98** **"Scheduled"** means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Schedules.

**1.99** **"Schedules"** means the schedules of assets and liabilities filed in the Bankruptcy Court by the Debtor, as such schedules have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.100** **"Section 503 Deadline"** shall have the meaning ascribed thereto in Section 4.3 of the Plan.

**1.101** **"Secured Claim"** means a Claim secured by a properly perfected and unavoidable security interest in or lien upon property of the Estate to the extent of the value of such security interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Claimholder.

**1.102** **"Secured Creditor"** means any Creditor that holds a Secured Claim.

**1.103** **"Subordinated Claim"** means, collectively, any Non-Compensatory Penalty Claim and any other Claim that is subordinated to General Unsecured Claims pursuant to Section 510 of the Bankruptcy Code.

**1.104** **"Subsequent Distribution Date"** means any date, as determined by the Plan Trustee which is after the First Distribution Date and prior to the Final Distribution Date, on which the Plan Trustee commences a Distribution to holders of Allowed Claims pursuant to the Plan.

**1.105** **"Supplemental DIP Order"** means the *Order Authorizing The Debtor's Entry Into The Stipulation Modifying the Final DIP Order Regarding Distribution of Certain Proceeds* [Docket No. 634] entered on March 23, 2020.

**1.106** **"Tax Refunds"** means the Claim of the Debtor for a refund of state or federal income taxes other than any refund of state income taxes received by a Debtor prior to the Petition Date.

**1.107** **"Third Party Claim"** means a claim that is an Avoidance Action or other Cause of Action of the Debtor as of the Effective Date against any Person not otherwise released under a prior Order of the Bankruptcy Court or under the Plan.

**1.108** **"Trust Budget"** has the meaning given to it in the Committee Settlement.

**1.109** **"Unimpaired"** refers to any Claim or Interest which is not Impaired.

**1.110** **"U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

**1.111** **"Wind Down Reserve"** has the meaning given to it in the Committee Settlement. The Wind Down Reserve will be maintained by the Debtor pursuant to the DIP Order until the Effective Date of the Plan, at which point the Wind Down Reserve shall be transferred to the Plan Trust and held in accordance with the terms of the Committee Settlement, the Proceeds Stipulation, the Plan and the Plan Trust Agreement.

**1.112** "**Wind Down Reserve Amount**" means the amount deposited into the Wind Down Reserve in accordance with the Committee Settlement and the Proceeds Stipulation. For the avoidance of doubt, the Wind Down Reserve Amount does not include the GUC Cash or any assets or cash in the GUC Reserve.

## C. Rules of Interpretation: Application of Definitions, Rules of Construction, and Computation of Time

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means

that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Schedules, and Exhibits are references to sections, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan. The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars. Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**D. Exhibits**

All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and as may be filed with the Plan Supplement.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtor. A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Professional Fee Claims have not been classified and their treatment is set forth in Article IV below.

All Allowed Claims and Interests are consolidated into the Classes set forth below.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING STATUS |
|---|---|---|---|
| Unclassified | Administrative Claims | Unimpaired | Not entitled to vote (presumed to accept) |
| Unclassified | Professional Fee Claims | Unimpaired | Not entitled to vote |
| Class 1 | DIP Facility Claim / Prepetition Term Loan Secured Claim | Impaired | Entitled to Vote |
| Class 2 | Priority Tax Claims | Unimpaired | Not entitled to vote (presumed to accept) |
| Class 3 | Priority Non-Tax Claims | Unimpaired | Not entitled to vote |

| | | | |
|---|---|---|---|
| | | | (presumed to accept) |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Equity and Other Interests | Impaired | Not entitled to vote (deemed to reject) |

## ARTICLE III
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

**3.1** ***Impaired Classes of Claims Entitled to Vote***. Class 1 DIP Facility Claims / Prepetition Term Loan Secured Claims and Class 4 General Unsecured Claims are Impaired under the Plan and are entitled to vote on the Plan.

**3.2** ***Unimpaired Classes of Claims Deemed to Have Accepted the Plan***. Class 2 Priority Tax Claims and Class 3 Priority Non-Tax Claims are Unimpaired under the Plan and are deemed to have accepted the Plan.

**3.3** ***Impaired Classes of Claims and Interests Deemed to Have Rejected the Plan.*** Class 5 Equity and Other Interests are Impaired under the Plan, shall receive no Distributions under the Plan on account of their Interests and are deemed to have rejected the Plan.

## ARTICLE IV
## PROVISIONS FOR TREATMENT OF ADMINISTRATIVE CLAIMS

**4.1** ***DIP Facility Claim (Class 1).*** To the extent not earlier paid, any outstanding DIP Obligations under the DIP Facility shall be paid from DIP Lender Cash in accordance with the Committee Settlement, the Supplemental DIP Order and Section 5.1 of the Plan; provided, notwithstanding anything to the contrary contained herein, the Plan Trustee shall pay all invoiced fees and expenses of the DIP Lender's professionals in accordance with (and to the extent provided for under) the Proceeds Stipulation.

**4.2** ***Administrative Claims - Professional Claims.***

(a) Final Professional Fee Applications. All final requests for payment of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code must be made by application Filed with the Bankruptcy Court and served on counsel to the Debtor, counsel to the DIP Lender, counsel to the Creditors' Committee, counsel to the Plan Trustee, and counsel to the U.S. Trustee no later than forty-five (45) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court (the "**Professional Fee Claim Bar Date**"). Objections to such applications must be filed and served on counsel to

the Debtor, counsel to the DIP Lender, counsel to the Plan Trustee, counsel to the Creditors' Committee, counsel to the U.S. Trustee, and the requesting Professional on or before the date that is fifteen (15) calendar days after the date on which the application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional).

(b) Payment of Interim Amounts. The provisions of the Professional Fee Order shall remain in effect as to amounts owing to Professionals prior to the Effective Date.

(c) Payment of Professional Fee Claims. All Allowed Professional Fee Claims shall be paid solely from the Professional Fee Claim Escrow pursuant to the terms of the Proceeds Stipulation. On the Effective Date, or as soon thereafter as practicable, the Debtor or the Plan Trustee, as applicable, shall fund the Professional Fee Claim Escrow in an amount that is permitted under the terms of the Proceeds Stipulation; provided, notwithstanding anything to the contrary herein, and except as may be provided in the Proceeds Stipulation, the Professional Fee Claim Escrow shall not be funded from DIP Lender Cash without the consent of the DIP Lender or from the GUC Cash or the GUC Reserve. All Allowed Professional Fee Claims that have not previously been paid, otherwise satisfied, or withdrawn shall be paid from the Professional Fee Claim Escrow. Any excess funds in the Professional Fee Claim Escrow after the satisfaction of all Allowed Professional Fee Claims shall be deemed Future Cash Proceeds and distributed in accordance with the Committee Settlement, the Proceeds Stipulation and this Plan. For the avoidance of doubt, all deposit funds currently held in the Escrow Account shall be deemed Additional Future Proceeds as defined in the Proceeds Stipulation.

(d) Post-Effective Date Services. After the Effective Date, any requirement that Professionals comply with the Professional Fee Order or sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. The Plan Trustee shall pay any Professionals from the Wind Down Reserve for Post-Effective Date services requested by the Plan Trustee.

**4.3** ***Administrative Claims - Substantial Contribution Compensation and Expenses Bar Date.*** Any person or entity who requests compensation or expense reimbursement for making a substantial contribution ("**Substantial Contribution Claim**") in the Chapter 11 Case pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code, for a claim that arose from the Petition Date through July 1, 2019, was required to file an application with the clerk of the Bankruptcy Court on or before July 22, 2019, or be forever barred from seeking such compensation or expense reimbursement. Any person or entity who requests compensation or expense reimbursement for a Substantial Contribution Claim in the Chapter 11 Case pursuant to sections 503(b)(3), (4) or (5) of the Bankruptcy Code, for a claim that arose from July 1, 2019 through the Effective Date, must file an application with the clerk of the Bankruptcy Court on or before a date that is thirty (30) days subsequent to the Effective Date (the "**Section 503 Deadline**") and serve such application on counsel for the Debtor and on all other parties as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Section 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement. All Allowed Substantial Contribution Claims shall be paid by the Plan Trustee from the Wind Down Reserve within thirty (30) days of allowance by the Bankruptcy Court.

**4.4** ***Administrative Claims – Allowed Section 503(b)(9) Claims.*** Allowed Section 503(b)(9) Claims shall be paid in full in Cash by the Plan Trustee from the Wind Down Reserve as soon as reasonably practicable after the Effective Date.

**4.5** ***Administrative Claims – Allowed Administrative Tax Claims.*** Allowed Administrative Tax Claims shall be paid in full in Cash by the Plan Trustee from the Wind Down Reserve as soon as reasonably practicable after the Effective Date.

**4.6** ***Other Administrative Claims Bar Date.*** All requests for payment of an Administrative Claim, other than Professional Fee Claims, DIP Facility Claims, and Administrative Tax Claims, incurred after July 1, 2019 must be filed with the Bankruptcy Court and served on counsel to the Debtor, counsel to the DIP Lender, counsel to the Committee and counsel to the Plan Trustee no later than thirty (30) days after the Effective Date. Unless the Plan Trustee objects to an Administrative Claim on or prior to the Claims Objection Deadline (subject to extension by consent or court order) such Administrative Claim shall be deemed an Allowed Administrative Claim in the amount requested. All such Allowed Administrative Claims shall be paid in full in Cash by the Plan Trustee from the Wind Down Reserve as soon as reasonably practicable after the Effective Date.

## ARTICLE V
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**5.1** ***Class 1 (DIP Facility Claim / Prepetition Term Loan Secured Claim).*** The holder of the Prepetition Term Loan Secured Claim was indefeasibly paid $15,000,000 on account of the Prepetition Term Loan Secured Claim pursuant to the DIP Order from the proceeds of the DIP Facility. To the extent not earlier paid, any outstanding amounts due and owing to the holder of the Prepetition Term Loan Secured Claim shall be paid in an amount equal to the amount of the DIP Lender Cash in accordance with the Committee Settlement, the Supplemental DIP Order and Section 5.1 of the Plan; provided, notwithstanding anything to the contrary contained herein, the Plan Trustee shall pay all invoiced fees and expenses of the DIP Lender's professionals in accordance with (and to the extent provided for under) the Proceeds Stipulation.

**5.2** ***Class 2 (Priority Tax Claims).*** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each holder of such Allowed Priority Tax Claim shall be paid in full in Cash from the Wind Down Reserve. Allowed Priority Tax Claims shall be paid as soon as reasonably practicable after the Effective Date and after the reconciliation of all Disputed Priority Tax Claims, unless the Plan Trustee, in his, her or its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan.

**5.3** ***Class 3 (Priority Non-Tax Claims).*** Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash from the Wind Down Reserve. Allowed Priority Non-Tax Claims shall be paid as soon as reasonably practicable after the Effective Date and after the reconciliation of all Disputed Priority Non-Tax Claims, unless the Plan Trustee, in his, her or its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan.

**5.4** ***Class 4 (General Unsecured Claims).*** Except to the extent that a holder of an Allowed Class 4 General Unsecured Claim agrees to a less favorable treatment, on or as soon as practicable after, the Effective Date, each holder of an Allowed Class 4 General Unsecured Claim shall receive its Pro Rata share of the GUC Cash.

**5.5** ***Class 5 (Equity or Other Interests).*** The holders of Allowed Class 5 Equity and Other Interest Claims shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan, on account of such Equity or Other Interest Claims.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

After the Effective Date, the Plan will be implemented by, among other things, the establishment of the Plan Trust, and the making of Distributions by the Plan Trustee in accordance with the Plan.

**6.1** ***The Plan Trust.***

(a)    Creation and Governance of the Plan Trust.  On the Effective Date, the Debtor and the Plan Trustee shall execute the Plan Trust Agreement and shall take all steps necessary to establish the Plan Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the Plan Trust Beneficiaries.  Additionally, on the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Plan Trust all rights, title, and interest in and to all of the Estate Assets and Plan Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Estate Assets and Plan Trust Assets shall automatically vest in the Plan Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Plan Trust Interests, as provided for in the Plan Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.  The Plan Trustee shall be the exclusive trustee of the Plan Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Plan Trust Assets.  The Plan Trust shall be governed by the Plan Trust Agreement and administered by the Plan Trustee.  The powers, rights, and responsibilities of the Plan Trustee shall be specified in the Plan Trust Agreement. The Plan Trust shall hold and distribute the Plan Trust Assets in accordance with the provisions of the Plan and the Plan Trust Agreement.  Other rights and duties of the Plan Trustee and the Plan Trust Beneficiaries shall be as set forth in the Plan Trust Agreement.  After the Effective Date, the Debtor shall have no interest in the Plan Trust Assets.

(b)    Purpose of the Plan Trust.  The Plan Trust shall be established for the purpose of pursuing or liquidating the Plan Trust Assets, winding down the remaining affairs of the Debtor (including, to the extent not already terminated, the 401K and other employee health and benefit plans of the Debtor), dissolving the Debtor, reconciling and objecting to Claims, prosecuting Causes of Action, including Third Party Claims and making Distributions to holders of Allowed Claims, including Allowed Professional Fee Claims, in accordance with Treasury Regulation

section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c)    Authority. The Plan Trustee shall have the sole authority and right on behalf of the Debtor, and its Estate, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including to:

(i)    review, reconcile, compromise, settle, or object to Administrative Claims, and Claims in Class 1, Class 2, Class 3, Class 4 and Class 5, and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(ii)    calculate the amount of Distributions to be made to holders of Allowed Administrative Claims, and Allowed Claims in Class 1, Class 2, Class 3, Class 4 and Class 5 in accordance with the Plan, and to make such Distributions to the holders of such Allowed Claims in accordance with the Plan, the Committee Settlement and the Proceeds Stipulation;

(iii)    review, reconcile, enforce, collect, compromise, settle, or elect not to pursue any or all Causes of Action, including Third Party Claims or similar actions, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(iv)    maintain, conserve, supervise, prosecute, collect, and protect the Plan Trust Assets (subject to the limitations described herein);

(v)    wind down of the remaining affairs of the Debtor (including, to the extent not already terminated, the 401K and other employee health and benefit plans of the Debtor);

(vi)    prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtor that are required under the Plan, by any governmental unit, or by applicable law;

(vii)    file any and all tax returns for the Debtor and the Estate, as applicable, provided however, the Plan Trustee shall have no personal liability for the signing or accuracy of the Debtor's tax returns that are due to be filed after the Effective Date or for any tax liability related thereto, which shall be limited solely to the Plan Trust Assets;

(viii)    take such actions as are necessary or appropriate to close or dismiss the Chapter 11 Case and dissolve the Debtor;

(ix)    execute any and all documents and instruments necessary to effectuate the provisions of the Plan;

(x)    hold the Plan Trust Assets for the benefit of the Plan Trust Beneficiaries and act in the best interests of the Plan Trust Beneficiaries;

(xi)    market, sell, lease, settle, abandon or otherwise dispose of or realize the value of material Plan Trust Assets; and

(xii) abandon or otherwise dispose of immaterial Plan Trust Assets; provided, that (A) the Plan Trustee may not take any actions set forth in (iii) and (xi) of this subparagraph (c) without consent of the DIP Lender or further order of the Court and (B) the Plan Trustee shall consult with Silicon Valley Bank before taking any other actions that could have a foreseeable material impact on the distributions to Silicon Valley Bank under this Plan.

(d) Powers of the Plan Trustee. The Plan Trustee shall be deemed to be a judicial substitute for the Debtor as the party-in-interest in this Bankruptcy Case solely with respect to the purposes of the Plan Trust set forth in Section 6.1(b), the authority of the Plan Trustee set forth in Section 6.1(c) of the Plan, under the Plan or in any judicial proceeding or appeal to which the Debtor is a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code and section 303 of the Delaware General Corporation Law, and is appointed as the representative of the Estate solely for the purposes set forth herein. Solely with respect to the purposes of the Plan Trust set forth herein, the Plan Trustee may exercise all power and authority that may be exercised by any officer, director or holder of an Interest in the Debtor with like effect as if authorized, exercised and taken by unanimous consent of such officers, directors or holders of Interests.

(e) Employment, Indemnification and Other Agreements. The Plan Trustee may enter into employment, indemnification and other agreements with individuals who may be required to assist the Plan Trustee after the Effective Date. Such agreements, in addition to director and officer liability policies and other insurance policies, shall remain in place after the Effective Date until such time as the Plan Trustee shall determine to either terminate or amend such agreements.

(f) Plan Trustee and Plan Trust Agreement.

(I) The Plan Trust Agreement generally will provide for, among other things:

(i) the distribution of Plan Trust Assets in accordance with the terms of the Committee Settlement and Proceeds Stipulation;

(ii) the payment of the Plan Trust Expenses from the Trust Budget;

(iii) the payment of other reasonable expenses of the Plan Trust from the Trust Budget;

(iv) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation without Bankruptcy Court approval in accordance with the terms of the Committee Settlement and Proceeds Stipulation;

(v) the investment of Cash by the Plan Trustee within certain limitations, including those specified in the Plan;

(vi) the orderly collection and liquidation of the Plan Trust Assets;

(vii) litigation of any Causes of Action, including Third Party Claims, which may include the pursuit, commencement, prosecution, settlement, release, waiver, abandonment, or dismissal of any such Causes of Action, including Third Party Claims;

(viii) the making of Distributions under this Plan and under the Plan Trust Agreement to holders of Allowed Claims;

(ix) the pursuit of objections to, and estimations and settlements of Administrative Claims (other than Professional Fee Claims) and Claims in Class 2, Class 3, Class 4 and Class 5; and

(x) the abandonment, in any commercially reasonable manner, of any Plan Trust Assets that, in the Plan Trustee's reasonable judgment, cannot be sold in a commercially reasonable manner or that the Plan Trustee believes in good faith have inconsequential value.

(II) The Plan Trustee shall in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the Plan Trust Expenses to the extent of the Trust Budget. The Plan Trust Expenses shall be payable solely from the Trust Budget, in accordance with the Plan and Plan Trust Agreement. The Plan Trustee may, but shall not be obligated to, physically segregate and maintain separate accounts or sub-accounts for Plan Trust Expenses. Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Plan Trustee to determine reserves and amounts to be paid to holders of Allowed Claims.

(III) The Plan Trustee, on behalf of the Plan Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Creditors' Committee) to assist in carrying out its duties hereunder and under the Plan Trust Agreement and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the Trust Budget in accordance with the Plan and the Plan Trust Agreement at the rates agreed upon by and between the Plan Trustee and his/her/its retained professionals.

(IV) The Plan Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Plan Trust in favor of the Plan Trustee. Any such indemnification shall be the sole responsibility of the Plan Trust and payable solely from the Trust Budget.

(g) Liquidation of Assets. The Plan Trustee shall pursue recovery of Plan Trust Assets under the Plan and Plan Trust in a commercially reasonable manner.

(h) Disbursing Agent. The Plan Trustee shall serve as or may select an alternative disbursing agent for Allowed Claims (other than Professional Fee Claims) under the Plan.

(i)      Execution of Documents.   The Debtor (or the Plan Trustee on behalf of the Debtor) may execute any and all documents and instruments necessary to effectuate the purposes of the Plan Trust set forth in Section 6.1(b) of the Plan.

(k)      Limitation of Liability.   Neither the Plan Trustee, nor its firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Plan or Plan Trust Agreement, other than for specific actions or omissions resulting from its willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.   The Plan Trustee shall enjoy all of the rights, powers, immunities, and privileges applicable to a chapter 7 trustee.   The Plan Trustee may, in connection with the performance of his, her or its functions, in the Plan Trustee's sole and absolute discretion, consult with his, her or its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing.   Notwithstanding such authority, the Plan Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the Plan Trustee or its members unless such determination is based on willful misconduct, gross negligence, or fraud.   Persons dealing with the Plan Trustee shall look only to the Plan Trust Assets to satisfy any liability incurred by the Plan Trustee to such person in carrying out the terms of the Plan or the Plan Trust Agreement, and the Plan Trustee shall have no personal obligation to satisfy such liability.

(l)      Indemnification.   The Plan Trust shall indemnify the Plan Trust Indemnified Parties for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Plan Trust Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Plan Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Plan Trust Agreement, as applicable.   An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.   In addition, the Plan Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Plan Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Plan Trust or the implementation or administration of the Plan if the Plan Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Plan Trust.   To the extent the Plan Trust indemnifies and holds harmless any Plan Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Plan Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Plan Trust Expenses.   The costs and expenses incurred in

enforcing the right of indemnification in this Section shall be paid as Plan Trust Expenses. This provision shall survive the termination of the Plan Trust Agreement and the death, dissolution, liquidation, resignation, replacement, or removal of the Plan Trustee.

(m)    Insurance. The Plan Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Plan Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Plan Trustee, which insurance coverage may, at the sole option of the Plan Trustee, be extended for a reasonable period after the termination of the Plan Trust Agreement.

(n)    United States Federal Income Tax Treatment of the Plan Trust. For all United States federal income tax purposes, the parties shall treat the transfer of the Plan Trust Assets to the Plan Trust as: (a) a transfer of the Plan Trust Assets directly to the applicable holders of Plan Trust Interests, followed by (b) the transfer by the holders of such Plan Trust Interests to the Plan Trust of such Plan Trust Assets in exchange for the Plan Trust Interests; provided, however, that the Plan Trust Assets will be subject to any post-Effective-Date obligations incurred by the Plan Trust relating to the pursuit of Plan Trust Assets. Accordingly, the applicable Plan Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Plan Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(o)    Tax Reporting.

(I)    The Plan Trustee shall file any and all tax returns for the Debtor and Plan Trust, as applicable.

(II)    The Plan Trustee shall be responsible for payment, out of the Plan Trust Assets, of any taxes imposed on the Plan Trust or Plan Trust Assets to the extent such payment is consistent with the Bankruptcy Code, this Plan and any applicable order of the Bankruptcy Court including, but not limited to, any order establishing a Bar Date.

(III)    The Plan Trustee shall file tax returns for the Plan Trust treating the Plan Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(IV)    The Plan Trustee shall be responsible for payment, solely from the Plan Trust Assets, of all taxes (if any) imposed on the Plan Trust or its assets.

(V)    The Plan Trustee shall distribute such tax-related notices to the applicable Plan Trust Beneficiaries as the Plan Trustee determines are necessary or desirable.

(p)    Cash Investments. The Plan Trustee may invest Cash (including any earnings thereon or proceeds therefrom); provided, however, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

(q) Dissolution of the Debtor. At any time after the Effective Date, the Plan Trustee shall be authorized to dissolve the Debtor upon filing a notice of such dissolution with the Court, notwithstanding any requirements of applicable state law, without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith.

(r) Dissolution of the Debtor's Subsidiaries. As of the Effective Date, or as soon as reasonably practicable thereafter, the Plan Trustee shall be authorized to dissolve the Debtor's subsidiaries, notwithstanding any requirements of applicable nonbankruptcy law, without the need for any further notice to, or action or approval by, the Bankruptcy Court.

(s) Dissolution of the Plan Trust. The Plan Trustee and the Plan Trust shall be discharged or dissolved, as the case may be, at such time as: (a) the Plan Trustee determines that the pursuit of additional Causes of Action, including Third Party Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, including Third Party Claims, (b) all objections to Disputed Claims are fully resolved, and (c) all Distributions required to be made by the Plan Trustee to the Plan Trust Beneficiaries under the Plan and the Plan Trust Agreement have been made, but in no event shall the Plan Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Plan Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Plan Trust Assets. Upon dissolution of the Plan Trust or at such earlier time as determined by the Plan Trustee in his, her or its sole discretion, any remaining Plan Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the Plan Trustee to a charitable organization that the Plan Trustee shall designate by the Effective Date.

(t) Control Provisions. To the extent there is any inconsistency between the Plan as it relates to the Plan Trust and the Plan Trust Agreement, the Plan shall control.

**6.2** ***Transfer Taxes.*** Any transfer of the Plan Trust Assets or any portion(s) of the Plan Trust Assets pursuant to the Plan shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar Taxes.

**6.3** ***Causes of Action; Third Party Claims.*** Except as otherwise expressly provided in this Plan or the Plan Trust Agreement, the Plan Trustee may pursue any Causes of Action, including Third Party Claims by informal demand and/or by the commencement of litigation, but is not required to do so. The Proceeds of such Causes of Action, including Third Party Claims, will be added to the Plan Trust Assets and shall be distributed in accordance with this Plan, the Committee Settlement, the Proceeds Stipulation and the Plan Trust Agreement.

**6.4** ***Effective Date.*** On the Effective Date, the Plan Trustee shall have the rights and powers set forth in Section 6.1 (c) and (d) of the Plan in order to carry out and implement the purposes and intent of the Plan.

**6.5** ***Records.*** The Plan Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtor necessary for the disposition of Plan Trust Assets and objections to Disputed Claims.

**6.6** ***Substantial Consummation.*** The Plan shall be deemed to be substantially consummated on the first date Distributions are made in accordance with the terms of this Plan to any holders of Allowed Claims of any Class.

## ARTICLE VII
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**7.1** ***Contracts and Leases.*** On the Effective Date, all Pre-Petition Date executory contracts, employment agreements and unexpired leases other than those leases and contracts that are identified on the Assumption Schedule or were previously assumed or rejected, shall be deemed automatically rejected as of that date or such earlier date as the Debtor may have unequivocally terminated such lease or contract. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code.

**7.2** ***Payments Related to Assumption of Executory Contracts and Unexpired Leases.*** To the extent not already paid prior to plan confirmation, any monetary amounts by which each executory contract and unexpired lease that is identified on the Assumption Schedule may be in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by Cure. In the event of a dispute regarding (a) the nature or the amount of any Cure, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption and assignment. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or assumption and assignment, as applicable, of the executory contracts and unexpired leases identified on the Assumption Schedule pursuant to section 365 of the Bankruptcy Code.

**7.3** ***Rejection Damages Bar Date.*** If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, the Plan Trustee or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Plan Trustee within twenty-one (21) days after entry of an Order authorizing the Debtor to reject an executory contract or unexpired lease; provided, however, that notwithstanding the foregoing, in the case of an executory contract or unexpired lease "deemed rejected" pursuant to Section 7.1 of this Plan which results in a Claim, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Plan Trustee or the

properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Plan Trustee within thirty (30) days after the Effective Date.

**7.4** ***Objections to Rejection Damage Claims.*** Objections to proofs of Claim for damages resulting from rejected executory contracts or unexpired leases shall be filed by the Plan Trustee with the Bankruptcy Court any time on or prior to the Claim Objection Deadline. Said objections shall be served upon the holder of the Claim to which such objection is made (or holder's counsel, when applicable) and any Rejection Claim that is Allowed shall be treated as an Allowed Class 4 General Unsecured Claim in accordance with this Plan.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1** ***Time of Distributions.*** Except as otherwise provided for herein, ordered by the Bankruptcy Court, or otherwise, Distributions under the Plan shall be made in accordance with the Committee Settlement and the Proceeds Stipulation or otherwise as soon as is reasonably practicable on the later to occur of (a) the Effective Date, (b) the date a Claim becomes an Allowed Claim, or (c) the date that Cash becomes available for Distribution to a particular Class pursuant to the treatment of such Class under the Plan. The Plan Trustee may make additional Distributions of Cash and property received after the initial Distributions. Such additional Distributions must be made in accordance with the timing set forth in the Committee Settlement and the Proceeds Stipulation.

**8.2** ***Interest on Claims.*** Unless otherwise specifically provided for in the Plan or Confirmation Order, or as required by section 506 of the Bankruptcy Code, postpetition Date interest shall not accrue or be paid on Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**8.3** ***Claims Administration Responsibility.*** The Plan Trustee shall retain sole responsibility for administering, disputing, objecting to, compromising or otherwise resolving issues related to Distributions to holders of all Claims.

**8.4** ***Tax Identification Forms from Holders of Claims.*** The Plan Trustee may require each holder of Allowed Claims to provide a current executed Form W-9, Form W-8 or similar tax form as a prerequisite to receiving a Distribution under the Plan and Plan Trust Agreement by mailing a request for such forms to all holders of Allowed Claims potentially entitled to Distribution to either (i) the address set forth on the proof(s) of claim filed by such Claimholder, (ii) the address reflected in the Schedules if no proof of claim has been filed or (iii) the address set forth in any written notice of change of address delivered to the Plan Trustee and filed with the Bankruptcy Court. Any holder of Allowed Claims failing to return a completed Form W-9 (or, if applicable, Form W-8) to the Plan Trustee within 60 days of the Plan Trustee's request (or within any further time period expressly agreed to in writing between the Plan Trustee and such holder of Allowed Claims), shall be deemed to have forfeited their respective rights to any current, reserved or future Distributions provided for under the Plan and such Allowed Claim shall be expunged without further order of the Bankruptcy Court. Any such forfeited

Distribution shall be deemed to have reverted back to the Plan Trust for all purposes, including for Distributions to other holders of Allowed Claims, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

**8.5** ***Withholding, Payment and Reporting Requirements Regarding Distributions.*** All Distributions under the Plan and Plan Trust Agreement shall, to the extent applicable, comply with all tax withholding, payment and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment and reporting requirements. The Plan Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements including requiring each Claimholder to provide a completed Form W-9 (or, if applicable, Form W-8) as set forth in Section 8.4 of this Plan. Notwithstanding any other provision of the Plan, (i) each Claimholder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by a governmental unit, including income, withholding and other tax obligations on account of such Distribution, and including, in the case of a holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Debtor or Plan Trust, as applicable, in connection with such Distribution, and (ii) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements reasonably satisfactory to the Plan Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**8.6** ***Distribution to General Unsecured Creditors.*** The Plan Trustee shall make Distributions to Allowed Class 4 General Unsecured Claims from the GUC Cash on or as soon as reasonably practicable after the Effective Date; subject to the Plan Trustee's establishment, if any, of a Distribution Reserve on account of such Disputed General Unsecured Claims pursuant to the terms of the Plan Trust Agreement.

**8.7** ***Procedures for Treating and Resolving Disputed Claims. No Distributions Pending Allowance***. Except as set forth in Section 8.7(a) of this Plan, no payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim. All objections to Disputed Claims shall be filed by the Plan Trustee on or before the Claim Objection Deadline, unless such time period is extended by the Bankruptcy Court.

(a) Distribution Reserve. The Plan Trustee will withhold the Distribution Reserve from the property to be distributed under the Plan to Claimholders. The Plan Trustee may request estimation for any Disputed Claim that is contingent or unliquidated, and the Plan Trustee will withhold the Distribution Reserve based upon the estimated amount of each such Claim as determined by the Bankruptcy Court. If the Plan Trustee elects not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is contingent or unliquidated, the Plan Trustee will withhold the Distribution Reserve based upon the appropriate Pro Rata percentage Distribution of the Face Amount of such Claim. Notwithstanding anything to the contrary herein, the Plan Trustee may not withhold any

distributions of DIP Lender Cash to the DIP Lender that are required to be made under the terms of the Committee Settlement or the Proceeds Stipulation.

(b) Distributions After Allowance. Payments and Distributions from the Distribution Reserve on account of a Disputed Claim, to the extent that such Disputed Claim ultimately becomes an Allowed Claim, will be made in accordance with provisions of the Plan that govern the Class in which such Claim is classified. As soon as reasonably practicable after the date when the order or judgment of the Bankruptcy Court allowing all or part of such Claim becomes a Final Order, the Plan Trustee shall distribute to the holder of such Claim any Cash allocated to such Claim in the Distribution Reserve that would have been distributed on the dates Distributions were previously made on account of Allowed Claims had such Claim been an Allowed Claim on such dates. All Distributions made under this Section of the Plan on account of an Allowed Claim shall be made as if such Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed Claims.

**8.8** ***Delivery of Distributions.*** Distributions to holders of Allowed Claims, other than Professional Fee Claims, shall be delivered by the Plan Trustee (a) to the addresses set forth on the proofs of claim filed by such Claimholders (or the address reflected in the Schedules if no proof of claim is filed), (b) to the addresses set forth in any written notices of address changes delivered to the Plan Trustee and filed with the Bankruptcy Court after the date of any related proof of claim, or (c) in the case of a Claimholder whose Claim is governed by an agreement and is administered by an agent or servicer, to the agent or servicer which shall then be responsible for making delivery of the Distribution to such Claimholder.

**8.9** ***Uncashed Checks.*** Cash payments in the form of checks shall be null and void if not cashed within one hundred-eighty (180) calendar days after the date of issuance. Distributions in respect of such voided checks shall be treated as unclaimed or undeliverable Distributions as provided in Section 8.10 of the Plan. Requests for reissuance of any check must be made in writing to the Plan Trustee by the Claimholder that originally was issued such check, which request shall be made within sixty (60) calendar days after the date of issuance thereof.

**8.10** ***Unclaimed or Undeliverable Distributions.*** If the Distribution of any Claimholder, other than Professional Fee Claims, is returned as undeliverable, no further Distributions to such Claimholder shall be made unless and until the Plan Trustee, as applicable, is notified of such Claimholder's then-current address, *provided*, *however*, that unless a Claimholder asserts a claim for an undeliverable Distribution within 60 days after such Distribution is returned as undeliverable, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and all title to and beneficial interest in such undeliverable Distribution shall revert to and/or remain in the Plan Trust automatically and without any need for further order by the Bankruptcy Court for all purposes, including for redistribution to other holders of Allowed Claims, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary; *provided*, *further*, that that the additional 60-day period after Distributions are returned as undeliverable does not apply to checks that are not cashed within 180 days after issuance thereof. If a Claimholder timely provides the Plan Trustee the necessary information within the period specified herein, all missed Distributions shall be made to the Claimholder as soon as is practicable, without interest.

**8.11** ***Minimum Distribution***. Notwithstanding any other provision of the Plan, the Plan Trustee, or other disbursing agent will not be required to make Distributions of Cash less than $50.00 in value.

**8.12** ***Manner of Payment Under this Plan***. The Cash Distributions made pursuant to this Plan shall be made by checks drawn on domestic banks selected by the Plan Trustee, or in the Plan Trustee's sole discretion, by wire transfer from a domestic bank selected by the Plan Trustee.

**8.13** ***Post-Final Distribution Assets***. Any amounts in the Trust Budget held by the Plan Trustee after the final Distribution is made shall be distributed to the DIP Lender and holders of Allowed Class 4 General Unsecured Claims in accordance with the Committee Settlement and the Proceeds Stipulation; provided, that if the Plan Trustee determines, in his, her or its reasonable discretion, that the remaining amounts in the Trust Budget are insufficient or it is otherwise impracticable to make any further or supplemental Distribution to holders of Allowed Class 4 Claims, then such amount shall be distributed to the DIP Lender.

**ARTICLE IX**
**SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS**

**9.1** ***Compromise and Settlement of Claims, Interests and Controversies.*** ~~-Pursuant to section 363 of~~To the extent provided for by the Bankruptcy Code~~ and Bankruptcy Rule 9019,~~ and in consideration for the ~~Distributions~~classification, distributions, releases, and other benefits provided ~~pursuant to~~under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good -faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies ~~relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made on account of such Allowed Claim. The~~released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. To the extent provided for by the Bankruptcy Code, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of ~~the~~such compromise ~~or~~and settlement~~ of all such Claims, Interests and controversies~~, as well as a finding by the Bankruptcy Court that such ~~compromise or~~ settlement ~~is~~and compromise is fair, equitable, reasonable, and in the best interests of the Debtor~~,~~, and its Estate~~ and holders, and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Trustee may compromise and settle Claims against the Debtor and Causes of Action, including Third Party Claims against other Entities.~~. Subject to Article VIII hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

**9.2** ***Release of Liens.*** Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security

interests against any property of the Estate shall be fully released, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the relevant Estate and its successors and assigns.

**9.3** ***Releases by the Debtor*****. EFFECTIVE AS OF THE EFFECTIVE DATE OF THE PLAN, PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED AND ACQUITTED BY THE DEBTOR AND THE DEBTOR'S ESTATE FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR OR THE DEBTOR'S ESTATE, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT THE DEBTOR OR THE DEBTOR'S ESTATE OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S LIQUIDATION, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, INCLUDING THE NEGOTIATION, FORMULATION, PREPARATION, OR PERFORMANCE OF THE DIP FACILITY, THE ASSET SALES, THE PLAN, THE DISCLOSURE STATEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATING TO THE DEBTOR OR THE DEBTOR'S ESTATE, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.**

**9.4** ***Releases by Holders*****. AS OF THE EFFECTIVE DATE OF THE PLAN, EACH AND ALL OF THE RELEASING PARTIES SHALL BE DEEMED TO CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY, RELEASE AND ACQUIT EACH AND ALL OF THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE AGAINST OR ON BEHALF OF ANY OR ALL OF THE RELEASED PARTIES, WHETHER KNOWN OR UNKNOWN, FORESEEN**

**OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT SUCH RELEASING PARTY (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S ESTATE, THE DEBTOR'S LIQUIDATION, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASE, INCLUDING THE NEGOTIATION, FORMULATION, PREPARATION OR PERFORMANCE OF THE DIP FACILITY, THE ASSET SALES, THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATING TO THE DEBTOR OR THE DEBTOR'S ESTATE, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.**

**9.5** ***Liabilities to, and Rights of, Governmental Units.*** Nothing in the Plan or Confirmation Order shall release, or preclude: (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Effective Date; (3) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtor or Plan Trustee; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability. Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence. The injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Effective Date, pursuing any police or regulatory action.

**9.6** ***Exculpation*****. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY EXCULPATED CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY EXCULPATED CLAIM, EXCEPT FOR FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO RAISE ANY AFFIRMATIVE DEFENSES, INCLUDING REASONABLE RELIANCE UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE DEBTOR AND THE COMMITTEE (AND EACH OF ITS AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS AND ATTORNEYS) HAVE PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS AND PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF VOTES AND TRANSFER OF ESTATE ASSETS TO THE PLAN TRUST PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON**

**ACCOUNT OF SUCH TRANSFER SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR THE TRANSFER OF ESTATE ASSETS PURSUANT TO THE PLAN.**

**9.7 *Injunction*. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 9.6 OR THAT HAVE BEEN RELEASED UNDER THIS PLAN ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIMS OR INTERESTS OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.**

**9.8 FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE EXCULPATION GRANTED IN THIS ARTICLE IX, THE DEBTOR AND HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY EXCULPATED CLAIM.**

**9.9 THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS OR INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OR INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST**

**ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, OR ESTATE ASSETS. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED.**

**9.10 EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.**

**9.11 ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE CREDITORS' COMMITTEE THE PLAN TRUSTEE, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ON OR AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN A PRIOR ORDER OF THE BANKRUPTCY COURT, A CLAIM MAY NOT BE FILED OR AMENDED WITHOUT THE PRIOR AUTHORIZATION OF THE BANKRUPTCY COURT OR THE CONSENT OF THE PLAN TRUSTEE. ABSENT SUCH AUTHORIZATION OR CONSENT, ANY NEW OR AMENDED CLAIM FILED SHALL BE DEEMED DISALLOWED IN FULL AND EXPUNGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.**

**9.12** ***Term of Injunctions or Stays.*** Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**9.13** ***Compromises and Settlements***. With the consent of the DIP Lender and the Committee, pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various (a) Claims against it, and (b) claims that it has against other Persons. The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle up to and including the Effective Date, Claims against it and claims that it may have against other Persons, subject to the consent of the DIP Lender. After the Effective Date, such right shall pass exclusively to the Plan Trustee to which such claims shall be conveyed pursuant to the Plan, including in accordance with Section 9.1 of the Plan.

**9.14** ***Cancellation of Agreements***. On the Effective Date, except to the extent of a right to receive a Distribution under this Plan and as otherwise provided herein, any note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtor shall be deemed automatically cancelled; *provided, however*, that each agreement that governs the rights of the Claimholder and that is administered by an agent or a servicer, shall continue in effect solely for the purposes of allowing such agent or servicer to make the Distributions to be made on account of such Claims or Interests under the Plan.

**9.15** ***Objections to Claims***. The failure by the Debtor or the Plan Trustee to object to, or examine, any Claim or Interest for purposes of voting shall not be deemed a waiver of any such entities' right to object to (to the extent of any Claim that is not expressly Allowed in the Plan) or reexamine the Claim or Interest in whole or in part for any other purpose, including, but not limited to, distribution of property.

**9.16** ***Setoff***. Notwithstanding anything herein, in no event shall any Claimholder be entitled to setoff any Claim against any claim, right, or cause of action of the Debtor, unless such Claimholder preserves its right to set off by (i) including in a timely-filed proof of claim that it intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise or (ii) filing a motion for authority to effect such setoff on or before the Confirmation Date (regardless of whether such motion is heard prior to or after the Confirmation Date).

## ARTICLE X
## CONDITIONS PRECEDENT

**10.1** ***Conditions to Confirmation***. The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 10.3 of the Plan:

(a) The Plan and Confirmation Order shall be in form and substance reasonably acceptable to the Debtor, the Creditors' Committee and the DIP Lender;

(b) The Plan Supplement shall have been filed (including the Plan Trust Agreement in form and substance reasonably acceptable to the Creditors' Committee, the Debtor and the DIP Lender); and

(c) The Plan Trustee shall have been selected and shall have indicated his or her agreement to serve under the terms of the Plan and the Plan Trust Agreement.

**10.2** ***Conditions to Effective Date***. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 10.3 of the Plan:

(a) The Confirmation Order shall have been entered by the Bankruptcy Court and such Confirmation Order has become a Final Order (unless the Final Order requirement is waived by the Debtor and the Creditors' Committee);

(b) Any amendments, modifications, or supplements to the Plan (including the Plan Supplement) or the Confirmation Order, if any, shall be reasonably acceptable to the DIP Lender and each Plan Proponent;

(c) All professional fees and expenses of the DIP Lender incurred as of such date have been paid in full in Cash;

(d) No stay shall be in effect with respect to the Confirmation Order; and

(e) The Plan Trust Agreement shall be in form and substance reasonably acceptable to the Debtor, the Creditors' Committee and the DIP Lender and shall have been fully executed.

**10.3** ***Waiver of Conditions to Confirmation and Effective Date.*** The conditions set forth in Sections 10.1 and 10.2 of the Plan may be waived by the Debtor and the Creditors' Committee, in each case with the consent of the DIP Lender, without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor, the DIP Lender and the Creditors' Committee regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor and the Creditors' Committee). The failure of the Debtor, the DIP Lender or the Creditors' Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1** Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including, among other things, the following matters:

(a) to hear and determine pending motions for the assumption and assignment of or rejection of executory contracts or unexpired leases to which the Debtor are a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom, including the amount of Cure, if any, required to be paid in connection with such assumption and assignment;

(b) to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan, including, without limitation, any actions to recover any transfers, assets, properties or damages to which the Debtor may be entitled under applicable contract provisions, the provisions of this Plan or under applicable provisions of the Bankruptcy Code or any other federal, state or local laws;

(c) to ensure that Distributions to Allowed Claimholders are accomplished as provided herein;

(d)     to hear and determine any and all objections to the allowance or estimation of Claims filed both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim in whole or in part;

(e)     to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(f)     to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan or regarding the rights of the Plan Trustee;

(h)     to issue orders in aid of execution, implementation or consummation of the Plan;

(i)     to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)     to hear and determine all applications for compensation and reimbursement of Professional Claims under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(k)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(l)     to hear any other matter not inconsistent with the Bankruptcy Code;

(m)     to hear and determine any Claims of or against the Debtor;

(n)     to enforce all orders previously entered by the Bankruptcy Court; and

(o)     to enter a Final Decree closing the Chapter 11 Case.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains exclusive jurisdiction to hear and determine disputes concerning Claims, Interests, Avoidance Actions, Third Party Claims and any motions to compromise or settle such disputes.  Despite the foregoing, if the Bankruptcy Court is determined not to have jurisdiction with respect to the foregoing, or if the Plan Trustee chooses to pursue any Causes of Action or Third Party Claim in another court of competent jurisdiction, the Plan Trustee will have authority to bring such action in any other court of competent jurisdiction.

**ARTICLE XII**
**ACCEPTANCE OR REJECTION OF THE PLAN;**
**EFFECT OF REJECTION BY ONE OR MORE**
**IMPAIRED CLASSES OF CLAIMS OR INTERESTS**

**12.1** ***Impaired Classes of Claims and Interests Entitled to Vote***. Claimholders in Classes 1 and 4 are entitled to vote as a class to accept or reject the Plan. The Claims Agent will tabulate votes on the Plan.

**12.2** ***Acceptance by an Impaired Class***. In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**12.3** ***Class Deemed to Reject Plan***. Holders of Class 5 Equity and Other Interest will not receive any Distribution, are not entitled to vote on the Plan and are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**12.4** ***Non-Consensual Confirmation***. In the event that less than all Classes entitled to vote accept the Plan, the Debtor will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

**12.5** ***Confirmability and Severability of the Plan***. The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied. A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.

**ARTICLE XIII**
**MISCELLANEOUS PROVISIONS**

**13.1** ***Binding Effect***. The Plan shall be binding upon and inure to the benefit of the Debtor, the Plan Trustee, all present and former Claimholders, all present and former Interestholders, other parties in interest and their respective successors and assigns to the fullest extent permitted by section 1141(a) of the Bankruptcy Code.

**13.2** ***Modification and Amendments***. The Debtor or the Creditors' Committee, with the consent of the DIP Lender and such other Plan Proponent, may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to the Effective Date, the Debtor or the Creditors' Committee, with the consent of the DIP Lender and such other Plan Proponent, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Claimholders or Interestholders under the Plan; *provided,*

*however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court. From and after the Effective Date and prior to substantial consummation of the Plan (as defined in section 1101(2) of the Bankruptcy Code), the Plan Trustee may seek non-material modification or amendment of the Plan pursuant to this paragraph.

**13.3** ***Creditors' Committee***. The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code, and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. From and after the Effective Date, the Creditors' Committee shall exist for the sole purposes of: (a) matters relating to any appeals or other challenges or matters with respect to the Confirmation Order; (b) preparing the Creditors' Committee's Professional Claims and reviewing and being heard in connection with all Professional Claims; and (c) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above duties. Upon the conclusion of the foregoing duties, the Creditors' Committee shall automatically dissolve and its members, Professionals and agents shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Case or the Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys and other agents shall terminate. All expenses of Creditors' Committee members and the fees and expenses of their professionals through the Effective Date shall be paid in accordance with the terms and conditions of this Plan and any order of the Bankruptcy Court.

**13.4** ***Third Party Claims/Causes of Action***. Unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, all Causes of Action and Third Party Claims are hereby preserved for prosecution and enforcement by the Plan Trustee. For the avoidance of doubt and without limiting the breadth and generality of the foregoing, the Identified Causes of Action shall be preserved for prosecution by the Plan Trustee. For the avoidance of doubt, neither the Debtor nor the Plan Trustee shall commence, litigate, prosecute and/or settle any Causes of Action against the Exculpated Parties for the Exculpated Claims. The Plan Trustee shall have no obligation to perform an analysis of or pursue any Cause of Action or Third Party Claims.

**13.5** ***Insurance Issues.*** Nothing in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release or requires a part to opt out of any releases) alters the rights and obligations of the Debtor and the Debtor's insurers (or any of their third party administrators) under any insurance policies and any agreements related thereto or modifies the coverage provided thereunder or the terms and conditions thereof except that on and after the Effective Date, the Debtor and the Plan Trust shall become and remain jointly and severally liable for all of the Debtor's obligations under the insurance policies and agreements regardless of whether such obligations arise before or after the Effective Date. Any such rights and obligations shall be determined under the applicable insurance policies and agreements and applicable non-bankruptcy law.

**13.6** ***Revocation, Withdrawal or Non-Consummation Right to Revoke or Withdraw***. The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date with the consent of the Creditors' Committee and the DIP Lender.

**13.7** ***Severability of Plan Provisions***. If prior to Confirmation any term or provision of this Plan which does not govern the treatment of Claims or Interests or the conditions to the Effective Date is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.8** ***U.S. Trustee's Fees.*** All fees due and owing under 28 U.S.C. §1930 shall be paid on the Effective Date and thereafter, as due, until the Case is closed, converted or dismissed and final decreed, from the Trust Budget.

**13.9** ***Notices***. Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the U.S. Trustee's Office, counsel to the Debtor, the Plan Trustee, counsel to the Plan Trustee and all persons on the Debtor's Bankruptcy Rule 2002 service list. With the exception of the Debtor, the Plan Trustee and the United States Trustee, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Plan Trustee within thirty (30) days subsequent to the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list. Any notice required or permitted to be provided to the Debtor, the Plan Trustee under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

If to the Debtor:

Erin N. Brady, Esquire
Hogan Lovells US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

*with a copy to:*

Derek C. Abbott, Esquire
Morris, Nichols, Arsht & Tunnell LLP

1201 Market Street, 16th Floor
Wilmington, DE  19899


If to the Plan Trustee:

[●●●●]
[●●●●]
[●●●●]
[●●●●]

- and -

Klehr Harrison Harvey Branzburg LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801
Attn: Domenic E. Pacitti
E-mail address: dpacitti@klehr.com

- and -

Klehr Harrison Harvey Branzburg LLP
1935 Market Street, Suite 1400
Philadelphia, PA 19103
Attn: Morton R. Branzburg
E-mail address: mbranzburg@klehr.com

If to the DIP Lender:

Todd M. Goren, Esquire
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019

Alexander Rheaume, Esquire
Morrison & Foerster LLP
200 Clarendon Street
Boston, MA 02116

    **13.10**    ***Governing Law***.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware shall govern the construction and implementation of the Plan, any agreements, documents and instruments executed in connection with the Plan, and corporate governance matters.

    **13.11**    ***Waiver and Estoppel***.  Each Claimholder shall be deemed to have waived any right to assert that, by virtue of an agreement made with the Debtor and/or its counsel, the

Creditors' Committee and/or its counsel, or any other party, its Claim or Interest should be allowed in a certain amount, in a certain priority, secured or not subordinated if such agreement was not disclosed in the Plan, the Disclosure Statement or other papers filed with, or orders entered by, the Bankruptcy Court.

Dated: ~~March~~April [●], 2020

Respectfully submitted,

Achaogen, Inc.

By: /s/________________________

The Official Committee of Unsecured Creditors of Achaogen, Inc.

By: /s/________________________