# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ACHAOGEN, INC.<br>        Debtor. | Chapter 11<br><br>Case No. 19-10844 (BLS) |
| EDWARD E. NEIGER, as Trustee of the Achaogen Plan Trust,<br>        Plaintiff,<br><br>      v.<br><br>CIPLA USA, INC.<br>        Defendant. | Adv. Proc. No. 21-50479 (BLS)<br><br>**Re: Adv. Docket Nos. 9, 10, 19 and 21** |

Justin R. Alberto, Esquire
Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

Joseph L. Steinfeld, Jr., Esquire
Nicholas C. Brown, Esquire
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121

*Counsel to Plaintiff Edward E. Neiger, in his capacity as Plan Trustee of the Achaogen Plan Trust*

Jeremy W. Ryan, Esquire
Jesse L. Noa, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

*Counsel to Defendant Cipla USA, Inc.*

## MEMORANDUM OPINION[1]

---

[1] This Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. § 157 and § 1334(b). The Bankruptcy Court also has the power to enter an order on a motion to dismiss even if the matter is non-core or the Court has no authority to enter a final order on the merits. *Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.)*, 2014 WL 1320145, *2 (Bankr. D. Del. Apr. 2, 2014) (citing *In re Trinsum Grp., Inc.*, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After *Stern v. Marshall*, the ability of bankruptcy judges to enter interlocutory orders in proceedings . . . has been reaffirmed . . . .")).

1

The matter before the Court is defendant Cipla USA, Inc's ("Cipla") motion to dismiss (the "Motion")[2] Counts IV, V, VI, VIII, IX and X of the Complaint in this adversary proceeding. The Motion is opposed by plaintiff Edward E. Neiger, as Trustee of the Achaogen Plan Trust (the "Plaintiff"). In broad brush, the Complaint alleges that Cipla willingly participated in a court-approved sale process. The Plaintiff claims that Cipla acted unreasonably and without justification when it backed out of its obligations both as the back-up bidder for the China Assets and successful bidder for C-Scape. The Complaint further alleges that, as a result of Cipla's deliberate efforts to frustrate the sale process, the Debtor has lost substantial value. For the reasons that follow, the Motion will be granted in part, and denied in part.

## BACKGROUND[3]

Achaogen, Inc. (the "Debtor" or "Achaogen") was a pharmaceutical company that developed and commercialized drugs to fight drug-resistant bacterial infections, known as "superbugs." By April 2019, the Debtor had developed two anti-infective drugs: Plazomicin, which received approval in June 2018 by the Food and Drug Administration ("FDA"), and C-Scape, which was in the FDA Phase I approval process as of April 2019. These two drugs were the Debtor's primary anticipated source of revenue while the company was operational.

The Debtor invested significant efforts and financial resources into the development of Plazomicin.[4] After the FDA approved Plazomicin for commercial use, the Debtor's business failed to generate anticipated sales volume, leading to a liquidity crisis.

---

[2] Adv. Docket No. 10.
[3] Pursuant to Fed. R. Civ. P. 52 (made applicable here through Fed. R. Bankr. P. 7052), the Court does not make findings of fact for purposes of a decision on a Fed. R. Civ. P. 12 motion. Factual allegations set forth herein are derived from the Plaintiff's Complaint.
[4] *See* Declaration of Blake Wise in Support of First Day Relief [Docket No. 3].

On April 15, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The stated purpose of the bankruptcy filing was to sell the Debtor's assets pursuant to Bankruptcy Code § 363.[5] On May 1, 2019, the Court entered a bidding procedures order[6] authorizing the Debtor to market its assets and to solicit bids for the purchase of both Plazomicin and C-Scape.

On June 3, 2019, the Debtor commenced an auction (the "June 3 Auction") for the Plazomicin asset.[7] The Plazomicin asset was split into two separate components for bidding purposes: (1) the rights to Plazomicin in the greater China region (the "China Assets") and the global rights to Plazomicin in the rest of the world, excluding China (the "Global Rights").[8] The Global Rights to Plazomicin included related patents, trademarks, domain names, contracts, government approvals and certain other related assets and to assume certain liabilities of Achaogen. The Complaint alleges that all parties to the auction understood that the buyer of the Global Assets would be expected to enter into a licensing arrangement with the buyer of the China Assets.

At the conclusion of the June 3 Auction, Cipla was declared the successful bidder for the Global Rights, and Qilu Antibiotics Pharmaceutical Co. Ltd. ("Qilu") was declared the successful bidder for the China Assets. Additionally, Cipla was designated the back-up bidder for the China Assets. Shortly thereafter, Cipla and Achaogen entered into an asset purchase agreement for the Global Rights, subject to the Debtor's right and obligation to license the China Assets to Qilu (the "Cipla Plazomicin Sale Agreement").[9]

---

[5] *Id.*
[6] Docket No. 123.
[7] Complaint, ¶ 24.
[8] *Id.* at ¶¶ 24-28. The Plaintiff's claims do not arise from the Global Rights.
[9] By order dated July 23, 2019 [Docket No. 371], the Court approved the Cipla Plazomicin Sale Agreement (the "Cipla Sale Order").

On June 12, 2019, the Debtor conducted a separate auction for the C-Scape asset (the "June 12 Auction"). At the conclusion of that auction, Cipla was declared the successful bidder for C-Scape. Ultimately, the Debtor entered into the following agreements with Cipla: (a) the Cipla Plazomicin Sale Agreement, and (b) an asset purchase agreement dated June 20, 2019 for the C-Scape asset (the "Cipla C-Scape Sale Agreement," and collectively with the Cipla Plazomicin Sale Agreement, the "Cipla Sale Agreements").[10]

The Complaint alleges that the Debtor, Cipla and Qilu attempted to negotiate the terms of the license for the China Assets. The Debtor served as a facilitator of discussions between Cipla and Qilu regarding a license agreement for Qilu, with the goal of closing both the Cipla Sale Agreements and Qilu License Agreement at or about the same time.[11] After a draft of the license agreement was circulated to Cipla, the Plaintiff alleges that Cipla did not provide comments or otherwise engage in a timely manner.[12] Cipla ultimately provided extensive changes to the draft that, according to the Plaintiff, "greatly deviated from the draft provided by [the Debtor] and have drastically taken back what was offered for sale by the [Debtor]."[13]

Several weeks after the auctions, Qilu informed the Debtor of its decision to end negotiations and walk away from its bid for the China Assets due to the difficulties Cipla was creating in the negotiations over the Qilu License Agreement.[14] The Complaint alleges that Qilu reported to the Debtor that it believed Cipla had not been acting in good faith, and Qilu identified

---

[10] Complaint, ¶ 45; see Plaintiff's Ex. G.
[11] Id. at ¶ 36.
[12] Id. at ¶ 37.
[13] Id. at ¶ 39.
[14] Id. at ¶ 65  In January 2020, Achaogen reached a settlement with Qilu over Achaogen's claim related to Qilu's repudiation of its bid for the China Assets. The settlement was approved by the Court on February 12, 2020 [Docket No. 603].

its incurred and anticipated costs in connection with the negotiations as the primary factors for abandoning its obligation to purchase the China Assets.[15]

After learning of Qilu's decision to walk away, the Debtor informed Cipla that it would have to consummate the purchase of the China Assets based on its designation as the back-up bidder at the June 3 Auction.[16] As the back-up bidder, the Bidding Procedures and the Cipla Sale Order required Cipla to step into Qilu's shoes after Qilu elected not to follow through on its bid.[17]

On July 31, 2019, Cipla informed the Debtor that it would not be fulfilling its obligation to purchase the China Assets as the back-up bidder.[18] The Complaint alleges that Cipla delayed negotiations with Qilu to search for a buyer willing to pay an amount above Cipla's bid and, after causing Qilu to withdraw its bid, the Plaintiff alleges that Cipla intended to sell the China Assets to a third-party at a profit.[19] However, the Complaint claims that Cipla's search did not yield the intended result.[20]

The Plaintiff alleges that by late July 2019, the Debtor started to receive mixed signals from Cipla regarding its willingness to close the C-Scape transaction.[21] In addition to the delays in negotiating the language of a proposed sale order for Plazomicin, Cipla failed to consummate the C-Scape Sale Agreement as the successful bidder.[22]

After both Qilu and Cipla failed to fulfill their obligations to purchase C-Scape and the China Assets, the Debtor undertook efforts to find an alternate purchaser.[23] Prior to

---

[15] *Id*. at ¶ 65.
[16] *Id*. at ¶ 67; *see* Plaintiff's Ex. L.
[17] *Id*. at ¶ 68.
[18] *Id*. at ¶ 72.
[19] *Id*. at ¶ 73.
[20] *Id*.
[21] *Id*. at ¶ 55.
[22] *Id*. at ¶¶ 57, 58.
[23] *Id*. at ¶ 76.

confirmation, the Debtor was able to find an alternate buyer for the China Assets for an amount far less than the consideration offered by Cipla as the back-up bidder.[24] That sale closed on January 9, 2020. The Debtor has been unable to find a buyer for C-Scape and the Complaint alleges that the value of C-Scape has plummeted.[25]

On May 29, 2020, the Court approved and entered an order (the "Confirmation Order") [Docket No. 697] confirming the Debtor's first amended joint plan of liquidation (the "Plan") [Docket No. 656]. Pursuant to the Plan and Confirmation Order, the assets of the Debtor immediately vested in the Achaogen Plan Trust and the Plaintiff was appointed as Plan Trustee.

The Plaintiff has commenced this adversary proceeding against Cipla to recover losses it claims resulted from Cipla's wrongful conduct in the sale process. The ten-count Complaint alleges the following claims: (Count I) breach of contract; (Count II) breach of oral contract; (Count III) breach of contract- bad faith; (Count IV) tortious interference with contract; (Count V) tortious interference with business relations; (Count VI) tortious interference with prospective economic advantage; (Count VII) breach of contract; (Count VIII) promissory estoppel; (Count IX) breach of implied covenant of good faith and fair dealing; and (Count X) contempt for willful violation of court orders.

Cipla filed its Motion to dismiss Counts IV, V, VI, VIII, IX, and X pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) in their entirety and with prejudice.  The Plaintiff has responded, and the matter is ripe for disposition.

## LEGAL STANDARDS

Fed. R. Civ. P. 12(b)(6) (made applicable here through Bankr. R. 7012) governs a motion to dismiss for failure to state a claim upon which relief can be granted. "The purpose of a motion

---

[24] *Id*. at ¶ 78, 80.
[25] *Id*. at ¶¶ 80,81.

6

to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."[26] When reviewing a motion to dismiss, the Court will construe the complaint "in the light most favorable to the plaintiff."[27]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."[29]

The court must also determine whether the factual allegations "are sufficient to show the plaintiff has a 'plausible claim for relief.'"[30] Federal Rule of Civil Procedure 8(a)(2), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7008(a), requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[31] The Supreme Court has recognized that the purpose of Rule 8 is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[32] The Supreme Court and the Third Circuit have both stated that "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."[33] Thus "it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[34]

---

[26] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 407 (D. Del 2007).
[27] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011).
[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
[29] *Twombly*, 550 U.S. at 555 (internal citations omitted).
[30] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211.
[31] FED. R. CIV. P. 8(a)(2).
[32] *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted).
[33] *Id.* at 555 n.3; *Fowler*, 578 F.3d at 211 (citations omitted).
[34] *Fowler*, 578 F.3d at 210.

## DISCUSSION

Counts IV, V and VI:  The Tortious Interference Claims

The Complaint alleges three related claims for tortious interference against Cipla: Counts IV, V, and VI (collectively, the "Tortious Interference Claims"). These claims allege that Cipla acted intentionally to disrupt efforts made by the Debtor and Qilu to finalize a sale of the China Assets, so that Cipla could profit from the transaction itself. The Plaintiff asserts that the factual allegations in the Complaint underlying these claims are sufficient to demonstrate that each element of the Tortious Interference Claims is met and that Cipla will be found liable.[35]

    a.    <u>Tortious Interference with Contract.</u>

The Court turns first to the Plaintiff's claim for tortious interference with contract (Count IV) regarding the China Assets. To establish this claim under Delaware law, a plaintiff must demonstrate that a defendant interfered with "(1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury."[36]

Count IV is predicated on Cipla's alleged interference with the sale of the China Assets. The Complaint alleges that Cipla intentionally delayed and disrupted the negotiations concerning the Qilu License transaction, which ultimately caused the deal to collapse. The Complaint alleges that Cipla's wrongful and obstructive conduct during the negotiations was a significant factor contributing to Qilu's ultimate refusal to consummate the Qilu License Agreement and the repudiation of its bid for the China Assets. The Complaint further alleges that Cipla's tortious interference resulted in Achaogen's inability to finalize an agreement on those deals.

---

[35] Adv. Docket No. 19 at p. 5.
[36] *Colbert v. Goodville Mut. Cas. Co.*, 2011 WL 441363, at *1 (Del. Super. Jan. 21, 2011).

Cipla responds that there was no valid enforceable contract with which Cipla could tortiously interfere, and therefore the Complaint fails to state a claim under Rule 12(b)(6). Specifically, while the Complaint alleges that Qilu was the winning bidder at the auction for the China Assets, it acknowledges that a final form of asset purchase agreement was never executed by the parties, and the Court never entered an Order approving the sale and authorizing the parties to consummate the transaction. Cipla is correct and, as discussed below, there was not a valid, enforceable contract between the Debtor and Qilu with which it could have interfered.

The Debtor offers case law for the proposition that a bid accepted at auction gives rise to an enforceable, binding contract at that moment. *Camden v. Mayhew*, 129 U.S. 73, 83, 9 S.Ct. 246, 248, 32 L.Ed. 608 (1889); *Freehill v. Greenfeld*, 204 F.2d 907, 908-09 (2d Cir. 1953) ("an accepted bid at a judicial sale, subject to confirmation, binds the bidder, though it does not bind the court. It is to be considered as a contract concluded between the parties, but subject to the consent of a third person; indeed, it would otherwise be difficult to conduct judicial sales at all."); *Matter of Fairfield General Corp.*, 75 N.J. 398, 411, 383 A.2d 98, 105 (Sup. Ct. N.J. 1978) (pointing to "overwhelming authority supports the proposition that once the purchaser makes a bid which is agreed to by the seller, or he signs an agreement to purchase, he is bound to complete the purchase and to pay the agreed consideration unless the court, in refusing to confirm the sale, relieves him of his bid").

Cipla responds that the majority of courts have concluded that the winning bidder at a bankruptcy auction has not entered into a binding, contractual relationship until the bankruptcy court has approved the sale. *In re Susquehana Chemical Corp.*, 92 F. Supp. 917, 919 (M.D. Pa. 1950) (noting that "[t]o hold that an enforceable contract exists between trustee and bidder ***prior to the court's approval*** would prove inimical to the interests of creditors who are entitled to

9

receive the highest attainable values for the Debtor assets.") (emphasis added).  *See also In re Realty Found.*, 75 F.2d 286, 288 (2d Cir. 1935) ("A contract with the bidder **only arises after** his bid has been accepted and the sale to him confirmed.") (emphasis added).  *See also In re Klein's Rapid Shoe Repair Co.,* 54 F.2d 495, 496 (2d Cir. 1931) ("Until confirmation, even an accepted bid makes no more than the one whose proposal has been recommended."); *In re Welch*, 92 F. Supp. 510, 515 (W.D. Ky. 1950) (same); *Coppola v. Superior Court*, 259 Cal.Rptr. 811, 824 (Cal.App. 2 Dist. 1989) ("In a judicial **sale an accepted bid at the sale has no legal significance** until the sale is confirmed by the bankruptcy court.") (emphasis added).

      Count IV requires that the Plaintiff allege the existence of a valid, enforceable contract. Applying these principles to the particular facts alleged, the Court finds that in the absence of a court order, the acceptance of a winning bid at auction does not result in an enforceable contract for purposes of establishing a requisite element of tortious interference with a contract.  As discussed more fully below in the context of Count VIII, however, principles of promissory estoppel may operate to ensure that parties aggrieved – either buyer or sellers – by conduct at or after an auction are not without some remedy.  As pled, the Complaint does not satisfy this element and Count IV must therefore be dismissed.  The Plaintiff will be afforded leave to replead.

      b.   <u>Tortious Interference with Business Relations and with Prospective Economic Advantage</u>.

Next, the Court addresses collectively the Plaintiff's claims for tortious interference with business relations (Count V) and tortious interference with prospective economic advantage (Count VI). To state a claim for tortious interference with prospective economic advantage, a plaintiff must plead (1) the existence of a reasonably probable business opportunity, (2) intentional interference by the defendant with that opportunity, (3) proximate causation, and (4)

<a></a><p></p>

damages."[37] The elements of a claim for tortious interference with business relations are nearly identical.[38] To plead the first element (a reasonably probable business opportunity), a plaintiff "must identify a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant."[39]

As noted above, the Complaint alleges that Cipla wrongfully and deliberately interfered with the Debtor's business relations with Qilu, and but for that interference, Qilu and the Debtor would have closed the transaction for the China Assets. Plaintiff has pled allegations sufficient to survive Cipla's motion. The Motion to Dismiss will be denied as to Counts V and VI.

Count VIII:  Promissory Estoppel

The Plaintiff asserts a promissory estoppel claim due to Cipla's alleged failure to close on the Cipla C-Scape Sale Agreement.[40] To state a claim for promissory estoppel, a plaintiff must plausibly allege the following: (1) a promise was made; (2) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (3) the promisee reasonably relied on the promise and took action to his detriment; and (4) such a promise is binding because injustice will be avoided only by the enforcement of the promise.[41]

The Complaint alleges that "Cipla unequivocally stated to Achaogen that it would proceed with the Cipla C-Scape Sale Agreement."[42] The Complaint alleges that Cipla knew or should have known that its statements of intent to follow through on its agreement to purchase C-

---

[37] *See Axogen Corp. v. Integra LifeSciences Corp.*, 2021 WL 5903306, at *3 (Del. Super. Ct. Dec. 13, 2021). *See also Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017).
[38] "Under Delaware law, the elements of tortious interference with business relations are: (1) reasonable probability of business opportunity; (2) intentional interference by defendant with that business opportunity; (3) proximate causation; and (4) damages." *See Preston Hollow Capital LLC v. Nuveen LLC*, 2020 WL 1814756, at *12 (Del. Ch. Apr. 9, 2020).
[39] *Organovo Holdings*, 162 A.3d at 122.
[40] *See* Compl., ¶¶ 174, 178.
[41] *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003).
[42] *See* Compl., ¶ 175.

Scape would cause Achaogen not to take steps to find another buyer.[43] The Complaint alleges that Achaogen detrimentally relied on Cipla's statement that it would close the Cipla C-Scape Sale Agreement.[44] The Complaint further alleges that as a result of Cipla's failure to consummate the deal, Achaogen lost government funding for C-Scape, C-Scape's value deteriorated, and Achaogen was unable to properly monetize C-Scape through the bankruptcy process.[45]

The Plaintiff's promissory estoppel claim is pled in the alternative to the breach of contract claim. Cipla acknowledges that a claim of promissory estoppel can be pled in the alternative. The Complaint provides sufficient allegations to overcome the Motion to Dismiss. Accordingly, the Court will deny the Motion as to the promissory estoppel claim.

Count IX: Breach of Implied Covenant of Good Faith

The implied covenant of good faith and fair dealing "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."[46] "The implied covenant cannot be used when the contract already speaks to the obligation at issue."[47] "[T]he [implied] covenant of good faith is a limited and extraordinary legal remedy."[48] To successfully "plead a claim for breach of the implied covenant 'a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages.'"[49]

---

[43] *Id*. at ¶ 177.
[44] *Id*. at ¶ 178.
[45] *Id*. at ¶¶ 179-181.
[46] *Truinject Corp. v. Nestlé Skin Health, S.A.,* 2020 WL 70981, at *13 (D. Del. Jan. 7, 2020) (quoting *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015) (internal quotations omitted)).
[47] *Id*.
[48] *Id*. See also *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010)).
[49] *Truinject*, 2020 WL 70981, at *14 (quoting *Fortis Advisors*, 2015 WL 401371, at *3).

Cipla argues that the covenant of good faith and fair dealing cannot be alleged when the contract grants explicit termination rights to Cipla and the question, as asserted in the breach of contract claims, is whether Cipla was justified in exercising those rights. Cipla claims there is no gap to be filled by the implied covenant. Cipla further argues that certain allegations in the Complaint (claiming that Cipla delayed negotiations on the Qilu license agreement to cause Qilu to withdraw its bid and provide Cipla with an opportunity to sell the asset) are speculative and without factual support.

In response, the Plaintiff argues that termination rights in the Plazomicin Sale Agreement do not address the claims in Count IX. Instead, the Plaintiff asserts that the Complaint plausibly alleges that Cipla acted unreasonably and arbitrarily regarding the overarching purpose of the agreement when interfering with the Qilu license agreement negotiations, in failing to close as back-up bidder on the China Assets, or by intentionally delaying and making false promises regarding the C-Scape purchase agreement.

As noted above, in the context of a Rule 12(b)(6) Motion, the Court must take the Plaintiff's allegations as true. The Court concludes that the Plaintiff's factual allegations for Count IX are sufficient at this stage to raise the right to relief above the speculative level.[50] Accordingly, the Court will deny the Motion as to Count IX.

Count X:  Contempt for Willful Violation of Court Orders

The Third Circuit Court of Appeals recognizes a cause of action for contempt where a plaintiff proves the following elements by clear and convincing evidence: (1) a valid order of the

---

[50] *Twombly*, 550 U.S. at 555.

court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order.[51]

The Complaint alleges that Cipla was aware of the Bidding Procedures Order when it participated in the June 3 Auction. The Complaint alleges that at the conclusion of the June 3 Auction, Cipla's bid for the China Assets was designated as the back-up bidder, which was later memorialized in Cipla Sale Order. The Complaint alleges that the Debtor incurred significant expenses and lost sale proceeds as a result of Cipla's breach and willful failure to honor its obligations under the Bidding Procedures Order and the Cipla Sale Order.  As a result, the Plaintiff seeks compensatory damages and an award of exemplary or punitive damages for willfully violating the Court orders.

Cipla argues that Count X should be dismissed, arguing that the Third Circuit has held that Bankruptcy Code § 105 does not create a private cause of action for civil contempt.[52] Cipla argues that the proper mechanism for a contempt claim is through a contempt proceeding in the underlying bankruptcy case, not as a private cause of action in an adversary proceeding.

In *Joubert,* however, the discharged debtor initiated a putative class action in the District Court seeking damages and injunctive relief to address an alleged "widespread practice by mortgagees of assessing, without notice to mortgagors, post-petition, pre-confirmation attorney fees" in violation of Bankruptcy Code § 506(b)'s requirement that bankruptcy courts first adjudge such fees as "reasonable."[53]  The Third Circuit determined that § 105(a) does not afford

---

[51] *Clean Harbors, Inc. v. Arkema, Inc. (In re Safety-Kleen)*, 331 B.R. 605, 608 (Bankr. D. Del. 2005) (quoting *Roe v. Operational Rescue*, 54 F.3d 133, 137 (3d Cir. 1995)).
[52] *In re Joubert*, 411 F.3d 452 (3d Cir. 2005) (holding that § 105 does not afford debtors a private cause of action to remedy violations of § 506(b);the debtor's remedy was a contempt proceeding in bankruptcy court).
[53] *Joubert*, 411 F.3d at 453.

a private cause of action in district court to redress an alleged §506(b) violation; instead, "Jourbert's lone remedy is a contempt proceeding pursuant to § 105(a) in bankruptcy court."[54]

The Plaintiffs contend that other bankruptcy courts in this district have considered civil contempt claims in adversary proceedings.[55] The Court agrees that a contempt claim may be pursued before the bankruptcy court in an adversary proceeding. Accordingly, the Motion to Dismiss Count X is denied.

## CONCLUSION

For the reasons set forth above, Cipla's Motion is GRANTED, in part, with respect to Count IV, which will be dismissed without prejudice, and Cipla's Motion is DENIED with respect to Count V, VI, VIII, IX and X. An appropriate Order follows.

Dated: January 30, 2023

Brendan Linehan Shannon
United States Bankruptcy Judge

---

[54] *Id.* at 455. The Supreme Court has recognized bankruptcy court may impose civil contempt sanctions under Bankruptcy Code sections 524 and 105(a) for violation of a discharge order "when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801, 204 L.Ed.2d 129 (2019).

[55] *WCI Communities, Inc. v. Espinal (In re WCI Communities, Inc.)*, 2012 WL 1981713, *8 (Bankr. D. Del. June 1, 2012); *Clean Harbors, Inc. v. Arkema, Inc. (In re Safety-Kleen)*, 331 B.R. 605 (Bankr. D. Del. 2005); *Hechinger Inv. Co. of Del., Inc. v. Allfirst Bank (In re Hechinger Inv. Co. of Del., Inc.)*, 282 B.R. 149, 158 (Bankr. D. Del. 2002).